UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:

                                              Chapter 11

    NUOVO CIAO-DI, LLC,            Case No. 23-10068 (JPM)

                              Debtor.    <u>FOR PUBLICATION</u>
------------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

**APPEARANCES:**

**BRONSON LAW OFFICES, P.C.**
*Counsel for Nuovo Ciao-Di LLC*
480 Mamaroneck Avenue
Harrison, NY 10528
By:    H. Bruce Bronson, Esq.

**FRIEDBERG P.C.**
*Counsel for DCC Vigilant, LLC*
10045 Red Run Boulevard, Suite160
Baltimore, MD 21117
By:    Jeremy Friedberg, Esq.

**BODNER LAW PLLC**
*Counsel for 88 Washington Place Condominium*
55 Cherry Lane, Suite 101
Carle Place, NY 11514
By:    Jonathan S. Bodner, Esq.

**SHANNON ANNE SCOTT, ESQ.**
*Office of the United States Trustee*
Alexander Hamilton Custom House
New York, NY 10004

**JOHN P. MASTANDO III**
**UNITED STATES BANKRUPTCY JUDGE**

       This case presents the question of whether two contiguous commercial condominiums located in Greenwich Village—which condominiums have the same owner and are subject to the same mortgage, but have different tenants, different commercial uses, different plans for future

sale and development and are listed as separate lots by the NYC Department of Finance—satisfy the definition of "single asset real estate" under 11 U.S.C. § 101(51B) of the Bankruptcy Code. For the reasons set forth below, the Court finds that these contiguous commercial condominiums do not constitute "single asset real estate."

## BACKGROUND

Creditor DCC Vigilant, LLC ("DCC") filed a motion on February 28, 2023 seeking an order amending the petition of Debtor Nuovo Ciao-Di, LLC (the "Debtor") and designating Debtor as a "single asset real estate" debtor pursuant to 11 U.S.C. § 101(51B) (the "Motion") [Dkt. No. 17]. Debtor filed an objection to the Motion (the "Objection") [Dkt. No. 20] on March 16, 2023.

Debtor commenced its case by filing a petition (the "Petition") [Dkt. No. 1] under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on January 20, 2023. In the Petition, Debtor identified itself as a corporation but did not check the box describing Debtor's business as "Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))." Debtor also filed a declaration (the "Debtor Declaration") [Dkt. No. 7] pursuant to Rule 1007-2 of the Federal Rules of Bankruptcy Procedure. Debtor is the owner and operator of two contiguous commercial condominium units located at 350 Sixth Avenue in Greenwich Village, NY 10011 (the "Properties"). [Debtor Declaration ¶ 3; Motion ¶ 7]. In its Schedules, Debtor lists its real property assets as the Properties, with one unit located on the first floor and one unit on the second floor. [Petition]. Debtor's other listed assets are a defaulted security deposit held by Debtor's parent company Ciao Di Restaurant Corporation in the amount of $75,000.00, $95.00 held in a checking account with J.P. Morgan Chase Bank, N.A., and a claim against Manhattan Kids Club, Inc. for a lease default worth an estimated $600,000.00. [*Id.*].

DCC is the owner by assignment and holder of a note with a principal amount of

2

$15,850,000 and mortgage secured by a first-priority lien on the Properties along with substantially all of Debtor's personal property. [Motion ¶¶ 5–6]. In its Motion, DCC contends that Debtor satisfies the definition of "single asset real estate" under 11 U.S.C. § 101(51B) because Debtor's only business consists of rental income from the Properties. [*Id.* ¶ 14]. DCC asserts that the first-floor unit of the Properties has been vacant since 2018 and that the second-floor unit has been vacant since the departure of a holdover tenant in 2021. [*Id.* ¶ 15].

Additionally, DCC argues that Debtor's units should be considered either a "single property" or a "single project" under 11 U.S.C. § 101(51B). [*Id.*]. First, DCC argues that the units are actually a "single property." DCC avers that the Properties have never had separate owners, that they were transmitted under a single deed and that they are subject to a single mortgage. [*Id.* ¶ 16]. Although DCC concedes that the units are listed as separate parcels by the NYC Department of Finance, DCC states that Debtor has always treated the units as one property. [*Id.*].

Second, DCC argues that, if the Court does not find that the Properties constitute a "single property," the Properties should be considered a "single project." [*Id.* ¶ 17]. DCC states that Debtor's ownership of the units is analogous to the ownership of an office building or shopping mall, where separately rented units are still pieces of the same common plan. [*Id.* ¶ 22]. DCC also argues that the proximity of the units, the single deed and the single mortgage weigh in favor of finding that the Properties constitute a "single project." [*Id.* ¶¶ 23–24]. DCC contends that, as part of its plans for the sale of the Properties, Debtor has contemplated subdividing the first-floor unit and selling part of the unit with the second-floor unit. [*Id.* ¶ 25]. Finally, DCC states that Debtor is unlikely to be able to produce a confirmable plan given the lack of tenants or prospective tenants. [*Id.* ¶ 26].

Debtor's Objection asserts that the Properties are two separate entities that should not be

3

considered a "single property" or "single project." [Objection ¶ 9]. In response to DCC's contention that the units constitute a "single property," Debtor states that the "single project" analysis is more appropriate because the Properties are composed of multiple parcels. [*Id.* at 2]. Debtor also contends that no common plan or purpose exists for the Properties, and, therefore, they are not a "single project." In support of this argument, Debtor argues that it treats the units separately because each unit has unique features—the first-floor unit is subject to an easement owned by MTA and the second-floor unit is designated as a "community facility" by the City of New York. [*Id.* ¶¶ 6, 8]. As further evidence that Debtor treats the units separately, Debtor notes that the units can be valued separately, with the first-floor unit valued at $22,000,000.00 and the second-floor unit valued at $8,550,000.00, and that the Debtor Declaration contemplates the separate sale of the two units. [*Id.* ¶¶ 4–7; Declaration ¶ 12]. Debtor also refers to the Application Authorizing the Retention of Compass as Broker for the Sale of Debtor's Properties and the attached Declaration of Adelaide Polsinelli (the "Polsinelli Declaration") [Dkt. No. 13]. [Objection ¶ 7]. In the Polsinelli Declaration, the broker, Adelaide Polsinelli ("Polsinelli"), contemplates selling the Properties both together and separately. [Polsinelli Declaration]. Furthermore, Polsinelli notes that the second-floor unit requires a specific type of tenant due to the "community facility" designation, which allows the unit to "only be occupied by a tenant who is providing a service to the community." [*Id.*]. Finally, Debtor argues that DCC has not offered a compelling reason to designate Debtor as a "single asset real estate" debtor. [Objection 3]. Debtor did not oppose DCC's contention that Debtor purchased the units under a single deed subject to a single mortgage.

The Court held a hearing on the Motion on March 23, 2023, at which both DCC and Debtor appeared.

4

# DISCUSSION

**A.    Legal Standard**

As part of the Bankruptcy Reform Act of 1994, Congress added 11 U.S.C. § 101(51B) and amended 11 U.S.C. § 362, creating an expedited process for "single asset real estate" cases. Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, 108 Stat. 4128. Although "the legislative history for § 362(d)(3) is 'meager,'" the statute's language reveals that the purpose of this provision is to accelerate the confirmation process for "single asset real estate" debtors and reduce unfairness inherent in "single asset real estate" cases. *See In re Heather Apartments Ltd. P'ship*, 366 B.R. 45, 49–50 (Bankr. D. Minn. 2007) (quoting *In re Archway Apartments, Ltd.*, 206 B.R. 463, 465 (Bankr. M.D. Tenn. 1997)). If a case under § 362(d)(3) does not proceed quickly to confirmation, the mortgagee is to be compensated "in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate." 11 U.S.C. § 362(d)(3)(B); *see id.* Under § 362(d)(3), the court shall terminate the automatic stay unless the "single asset real estate" debtor commences monthly payments or files a plan not later than ninety days after the entry of the order for relief or thirty days after the court determines the debtor is subject to the "single asset real estate" provision. 11 U.S.C. § 362(d)(3).

The Bankruptcy Code defines "single asset real estate" as:

> real property constituting a single property or project, other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor who is not a family farmer and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental thereto.

11 U.S.C. § 101(51B). Whether real property constitutes a "single property or project" is a question of fact. *See In re JJMM Int'l Corp.*, 467 B.R. 275, 277 (Bankr. E.D.N.Y. 2012); *In re 218 Jackson LLC*, 2021 WL 3669371, at *3 (Bankr. M.D. Fla. June 3, 2021); *In re WEBB MTN, LLC*, 2008

WL 656271, at *4–5 (Bankr. E.D. Tenn. Mar. 6, 2008); *In re Vargas Realty Enters. Inc.*, 2009 WL 2929258, at *4 (Bankr. S.D.N.Y. July 23, 2009). The movant bears the burden of establishing that multiple parcels are a "single property or project." *In re 218 Jackson LLC*, 2021 WL 3669371, at *3 (citing *In re TTM MB Park, LLC*, 2012 WL 844499, at *1 (Bankr. S.D. Ala. Mar. 12, 2012)). When the property in question is comprised of multiple parcels, courts usually analyze whether the parcels constitute a "single project." *See In re JJMM Int'l Corp.*, 467 B.R. at 277; *see also In re McGreals*, 201 B.R. 736, 741 (Bankr. E.D. Pa. 1996).

When determining whether multiple properties constitute a single project, "the mere fact of a common ownership, or even a common border, will not suffice." *In re McGreals*, 201 B.R. at 742–43. Instead, "the properties must be linked together . . . in a common plan or scheme involving their use." *Id.* at 742. Courts should not consider the business activities of tenants when determining whether multiple parcels constitute a "single project." *In re JJMM Int'l Corp.*, 467 B.R. at 278. Instead, the predominant consideration is "whether the debtor treats its property as a single project or property by virtue of a common plan or purpose." *See id.* Courts may consider proximity and whether the parcels were conveyed under a single deed subject to a single mortgage to determine whether multiple parcels are a "single project." *See In re 218 Jackson LLC*, 2021 WL 3669371, at *4.

DCC relies on *In re Hassen Imports Partnership*, in which the court utilized a non-exclusive list of four factors to determine whether a "single project," as defined in 11 U.S.C. § 101(51B), exists. [Motion ¶ 21]; *see In re Hassen Imps. P'ship*, 466 B.R. 492, 507 (Bankr. C.D. Cal. 2012). These factors are: "(1) the use of the properties; (2) the circumstances surrounding the acquisition of the properties, including the time of the acquisition and the funds used to acquire the properties; (3) the location of the properties and proximity of the properties to one another; and

(4) any plans for future development, sale or abandonment of the properties." *See id.* Under this test, if the first factor, use of the properties, is not satisfied and the parcels are not used together in a common scheme, then the other factors become irrelevant. *See id.*

B.      **Analysis of the Properties as Single Asset Real Estate**

In the instant case, Debtor conducts no substantial business other than the business of operating the Properties, Debtor is not a family farmer and the Properties are not residential real property under 11 U.S.C. § 101(18) and (51B). Thus, the sole issue for the Court to decide is whether the Properties constitute a "single property or project."

Here, the two units are not a "single property." Although the units are adjacent and were conveyed under a single deed and mortgage, they are still separate parcels with differing lot numbers. *In re JJMM Int'l Corp.*, 467 B.R. at 277. These parcels can be valued, used and sold independently of each other. [Debtor Declaration ¶¶ 3, 12]. The units also each possess unique characteristics, as the first-floor unit is subject to an easement and the second-floor unit is designated as a "community facility." [Polsinelli Declaration, Schedule 2]. Therefore, the Court finds that units do not constitute a "single property." *See In re McGreals*, 201 B.R. at 741.

As the units are not a "single property," the Court must analyze whether the units constitute a "single project." The Court finds that DCC has not satisfied its burden of establishing that the Properties are linked by a common plan or scheme. Although Debtor concedes that it purchased the condominium units under a single deed subject to a single mortgage, Debtor has not demonstrated any plans to combine the properties or use them for a single purpose. *See In re McGreals*, 201 B.R. at 742; [Debtor Declaration ¶¶ 12–14]. As DCC acknowledges in its Motion, Debtor previously rented the second-floor unit separately from the first-floor unit. In addition, the Properties currently lie vacant and the vacancies began at different times. [Motion ¶ 13]. Thus, in

7

contrast to the parcels at issue in *JJMM*, the Properties have not been leased to related entities. *See In re JJMM Int'l Corp.*, 467 B.R. at 278 (holding that three adjacent properties that were leased to three separate businesses all owned by the debtor's principal constituted a "single project"). In addition, the first-floor unit is subject to an easement and the second-floor unit is designated as a "community facility," and the Properties are assigned separate lot numbers by the New York City Department of Finance. Moreover, the Properties have separate values of $8,550,000 and $22,000,000, and Debtor is currently contemplating a potential sale of the second-floor unit. [Objection ¶¶ 2–8; Declaration ¶ 12]. The Court thus finds that DCC has not sufficiently established that the Properties are linked by a common plan or scheme, and therefore the Properties do not constitute a "single project" under 11 U.S.C. § 101(51B).

DCC also contends that the factors of the "single project" test used by the court in *In re Hassen Imports Partnership* are satisfied in this case. *See* 466 B.R. at 507. While the Properties were conveyed to Debtor under a single deed subject to a single mortgage and the Properties are adjacent, these factors are not determinative. *See id.* at 508. Debtor's current use of the Properties does not demonstrate a common scheme, rendering the other factors irrelevant under the *Hassen* test. *See id.* Debtor's plans for future development or sale of the Properties also weigh against finding the units to constitute a "single property," as Debtor is currently attempting to sell one of the Properties and each unit has unique characteristics. *See id.* Since the Properties are neither a "single property" nor a "single project," the Properties do not fall within the definition of "single asset real estate" in 11 U.S.C. § 101(51B).

## **CONCLUSION**

Based on the foregoing, the Motion to designate Debtor as a "single asset real estate" debtor under 11 U.S.C. § 101(51B) is DENIED.

It is so ORDERED.

Dated: May 19, 2023
       New York, New York

                                        /s/John P. Mastando III
                                        HON. JOHN P. MASTANDO III
                                        UNITED STATES BANKRUPTCY JUDGE