UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
 In re:  Chapter 11

 Nuovo Ciao-Di LLC Case No. 23-10068 (JPM)

                          Debtor.
-----------------------------------------------------------------x


## DISCLOSURE STATEMENT WITH RESPECT TO
## PLAN OF LIQUIDATION PROPOSED BY DCC VIGILANT, LLC

### Loc. Bankr. R. 3017-1(b) Disclaimer

**This is not a solicitation of acceptance or rejection of the plan. Acceptances or rejections may not be solicited until a disclosure statement has been approved by the Court. This disclosure statement is being submitted for approval but has not been approved by the Court.**

**DISCLAIMER**

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS INCLUDED HEREIN FOR PURPOSES OF SOLICITING ACCEPTANCES OF THE PLAN OF LIQUIDATION OF NUOVO CIAO-DI LLC PROPOSED BY DCC VIGILANT, LLC AND MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN.  NO PERSON MAY GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS, OTHER THAN THE INFORMATION AND REPRESENTATIONS CONTAINED IN THIS DISCLOSURE STATEMENT, REGARDING THE PLAN OR THE SOLICITATION OF ACCEPTANCES OF THE PLAN.

ALL CREDITORS ARE ADVISED AND ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.  PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN AND THE EXHIBITS AND SCHEDULES ANNEXED TO THE PLAN AND THIS DISCLOSURE STATEMENT.  IN THE EVENT OF ANY INCONSISTENCIES BETWEEN THE PLAN AND THE SUMMARY OF THE PLAN AS SET FORTH IN THE DISCLOSURE STATEMENT, THE TERMS OF THE PLAN SHALL CONTROL. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF, AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER THE DATE HEREOF. THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN OBTAINED BY THE PLAN PROPONENT BASED ON PUBLICALLY AVAILABLE RECORDS OF THE DEBOTR, EXCEPT IN THOSE CIRCUMSTANCES IN WHICH OTHER SOURCES ARE IDENTIFIED.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE UNITED STATES BANKRUPTCY CODE AND RULE 3016(c) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER NON-BANKRUPTCY LAW.  THIS DISCLOSURE STATEMENT HAS BEEN NEITHER APPROVED NOR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION (THE "SEC"), NOR HAS THE SEC PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.  PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING SECURITIES OR CLAIMS OF NUOVO CIAO-DI LLC SHOULD EVALUATE THIS DISCLOSURE STATEMENT AND THE PLAN IN LIGHT OF THE PURPOSE FOR WHICH THEY WERE PREPARED.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS PURSUANT TO RULE 408 OF THE FEDERAL RULES

OF EVIDENCE AND OTHER APPLICABLE EVIDENTIARY RULES.  THIS DISCLOSURE STATEMENT SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES OR OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST, OR EQUITY INTERESTS IN, NUOVO CIAO-DI LLC.

## OVERVIEW OF THE CHAPTER 11 CASE AND THE DEBTOR

This Disclosure Statement contains, among other things, descriptions and summaries of provisions of the Plan of Liquidation of Nuovo Ciao-Di LLC ("Debtor"), dated as of May 23, 2023 (the "Plan").  DCC Vigilant, LLC ("DCC", or the "Plan Proponent") is the proponent of the Plan.

*The following introduction and summary (the "Overview") is a general overview only, which is qualified in its entirety by, and should be read in conjunction with, the more detailed discussions, information and financial statements and notes thereto appearing elsewhere in this Disclosure Statement and the Plan. This Overview is intended solely as a summary of the background of the Debtor's Chapter 11 Case and the distribution provisions of the Plan and is qualified in its entirety by the terms and provisions of the Plan.*

FOR A COMPLETE UNDERSTANDING OF THE PLAN, YOU SHOULD READ THE DISCLOSURE STATEMENT, THE PLAN, AND THE EXHIBITS THERETO IN THEIR ENTIRETY.

All capitalized terms not defined in this Disclosure Statement have the meanings ascribed to such terms in the Plan.  A copy of the Plan is annexed hereto as Appendix A.

### A.      Introductory Note

History of the Debtor and Factors Causing This Chapter 11 filing:

Debtor is owned by Ciao-Di Restaurant Corporation, which is owned by several members of the Rainero family. The Rainero family has been in the real estate management business and restaurant business for many years.  The Rainero family is the beneficial owner of the Debtor as well as other several other properties in the Greenwich Village area of New York City.

Debtor is the owner of certain real property located at 350-354 6th Avenue, New York, New York 10011, known as Commercial Unit 1 a/k/a 1FLR ("1FLR") and Commercial Unit 2 a/k/a 2FLR ("2FLR") (collectively, the "Premises"), in the premises known as 88 Washington Place Condominium (the "Condominium").  The Premises, a two-level, 16,121 SF retail condo, secures a loan having a face amount of $15,850,000, of which $14,600,000 has been advanced to date (the "Loan").  The Loan, initially between Debtor and Argentic Real Estate Investment, LLC ("Argentic"), matured on February 6, 2020 ("Maturity Date").  Debtor defaulted under the Loan by, among other things, not paying the sums owed on the Maturity Date.

DCC is a creditor in this action as it is the owner by assignment from Argentic and holder of a Consolidated, Amended and Restated Promissory Note dated January 25, 2018, with a principal amount of $15,850,000.

In addition, DCC is the owner by assignment of a Consolidated, Amended and Restated Mortgage, Assignment of Leases and Rents and Security Agreement (the "Mortgage"), dated January 25, 2018.  Under the Mortgage, DCC holds a first-priority lien on the entirety of the Premises, together with all of Borrower's personal property.  The Premises serves as security for the Loan.  The Mortgage was executed, acknowledged, and delivered by Debtor, as mortgagor, to Argentic, as mortgagee, and duly filed in the Office of the New York City Register, State of New York, February 2, 2018 as CRFN 2018000041142.

Debtor obtained the Premises by a Bargain and Sale Deed, with Covenant against Grantor's Acts dated January 25, 2018, from Ciao-Di Restaurant Corporation, Debtor's sole

4

member, and an entity related to Debtor by common ownership.

Debtor filed this Chapter 11 bankruptcy case on January 20, 2023 (the "Petition Date"). Debtor remains in possession of its Premises, has no business operations, and the Premises have been vacant for years prior to the Petition Date. The Condominium, including all units and appurtenances, is identified by the street number 350 6th Avenue, Borough of Manhattan, City of New York, County of New York, and State of New York.

The two units are subject to and defined in the declaration establishing the Condominium dated as of January 26, 2007, and recorded in the Office of the Register of the City of New York on March 9, 2007. The first floor is a commercial property designated for retail business. The second floor is designated by New York City for use as a Community Facility. Both units are subject to real property taxes, which Debtor failed to pay for several years prior to the Petition Date.

### B.    Events Leading to Chapter 11

Debtor has had no tenants for 1FLR since 2019. Debtor has not had a paying tenant for the 2FLR since 2020. Debtor has not paid any real property taxes with respect to the Premises since 2018. Argentic and DCC advanced funds to pay property taxes until 2022. Debtor has not paid any Condominium fees or assessments since 2018. DCC advanced funds to pay COA fees and assessments prior to the Petition Date.

Property taxes due pre-petition total approximately $533,000 and constitute a lien against the Premises. Another approximately $525,000 in real property taxes are payable on July 1, 2023.

Prior to the Petition Date, on July 14, 2020, Argentic commenced a Lawsuit against the Debtor and its guarantors seeking to foreclose on the Premises for default under the loan documents with index no. 850102/2020 (the "State Court Action") in the New York County Supreme Court.

Prior to the Petition Date, DCC filed a Motion for Summary Judgment in the State Court Action seeking a foreclosure decree (the "Motion for Summary Judgment"). The Motion for Summary Judgment is fully briefed and awaiting decision. DCC believes that the pending Motion for Summary Judgment precipitated this bankruptcy case.

### C.    Post-Petition Business of the Debtor

The Mortgage held by DCC covers the entirety of the Premises. 1FLR has been vacant since at least 2019, and 2FLR has not had a paying tenant since February 2020. During the time that tenants occupied the two units, the rents from the Mortgaged Premises were Debtor's sole source of income. Debtor conducts no business other than either renting or attempting to sell the Premises.

Since the Petition Date, Debtor has had no income, nor has Debtor made any payments to DCC, the Condominium, or any taxing authority. No post-petition tax reports or payments have been made. Debtor has filed no monthly operating reports. Debtor has not provided proof of insurance to DCC as required by the Loan Documents.

### D.    General Structure of the Plan

The Plan provides for the orderly liquidation of the Business Assets[1] of the Debtor and

---

[1] Undefined capitalized terms in this Disclosure Statement shall have the meaning ascribed to them in the Plan.

the distribution of the proceeds of the liquidation of the Debtor's Business Assets according to the priorities set forth in the Bankruptcy Code.

### E.       Summary of Treatment of Claims and Interests Under the Plan

As noted above, the Plan constitutes a plan of liquidation for the Debtor.

As contemplated by the Bankruptcy Code, Administrative Claims and Priority Tax Claims are not classified under the Plan.  Allowed Administrative Claims are intended to be paid in full on or, as soon as reasonably practicable after, the Distribution Date of the Plan (or thereafter when they become Allowed) or, for ordinary course Administrative Claims, when such Claims become due.  The foregoing shall be paid from cash on hand of the Estate from the Security Deposit.  Priority Tax Claims, if any, are intended to be paid in full in regular installment Cash payments, occurring not less frequently than quarterly over a period not exceeding five (5) years after the Petition Date.

The Plan provides for time periods and procedures with respect to the objections to and allowance of Claims, including (without limitation) Administrative Claims. The time periods and procedures are necessary to permit the Liquidating Trustee an adequate opportunity to review, reconcile and resolve all Administrative Claims filed against the Debtor's Estate.

A Claim, including a 503(b)(9) Claim, is a Disputed Claim unless it has been Allowed pursuant to the Plan.

The table below summarizes the classification and treatment of prepetition Claims and Interests under the Plan. The classification and treatment for all Classes are described in more detail below.

The table below also contains an estimate of the percentage recoveries that the Plan Proponent believes will ultimately be available to each Class of Claims.  These estimates are based upon a number of assumptions, which may or may not prove to be accurate.

**Summary of Claims and Interests Against and In the Debtors**

| **Description and Amount of Claims or Interests** | **Summary of Treatment** |
|---|---|
| **Class 1: Secured Claims of 88 Washington Place Condominium.**<br><br>Class 1 consists of Claim of the Premises, to the extent of the value of the Claimholder's interest in the Estate's interest in such property.<br><br>Estimated Aggregate Amount of Allowed Class 1 Claims:  $525,000 | On, or as soon as reasonably practicable after, the Effective Date, a Holder of the 88 Washington Place Condominium Secured Claim shall receive, in full and final satisfaction, settlement and release of and in exchange for the 88 Washington Place Condominium Secured Claim, (i) Cash equal to the net proceeds of any sale of the Premises by the Liquidating Trustee, to be paid out of the Liquidating Trust from the proceeds of the Premises after payment of the City of New York Secured Claim and the DCC Secured Claim or (ii) such other treatment as to which such Holder and the Liquidating Trustee shall have agreed upon in writing.<br><br>Any Holder of the 88 Washington Place Secured Claim shall retain its Lien in the Premises or the net proceeds of the Premises (to the extent that such Premises is sold by the Liquidating Trustee free and clear of such Lien) to the same extent and with the same priority as such Lien held as of the Petition Date until such time as (a) the Holder of the 88 Washington Place Condominium Secured Claim (i) has been paid Cash equal to the value of amount received by the Liquidating Trustee with respect to the sale of the Premises , or (ii) has been afforded such other treatment as to which such Holder and the Liquidating Trustee shall have agreed upon in writing; or (b) such purported Lien has been determined by an order of the Bankruptcy Court to be invalid or otherwise avoidable.<br><br>**The Class 1 Claim is Impaired and is therefore entitled to vote on the Plan.**<br>Estimated Recovery:  0% |

| Class 2:  Secured Claims of DCC | On, or as soon as reasonably practicable after, the Effective Date, a Holder of the DCC Secured Claim shall receive, in full and final satisfaction, settlement and release of and in exchange for the DCC Secured Claim, (i) Cash equal to the net proceeds of any sale of the Premises by the Liquidating Trustee, to be paid out of the Liquidating Trust from the proceeds of the Premises after payment of the City of New York Secured Claim, or (ii) such other treatment as to which such Holder and the Liquidating Trustee shall have agreed upon in writing. |
|---|---|

Class 2 consists of Claims that are secured by the Premises, to the extent of the value of the Claimholder's interest in the Estate's interest in such property.

Estimated Aggregate Amount of Allowed Class 2 Claims:  $20,174,910.51

Any Holder of the DCC Secured Claim shall retain its Lien in the Premises or the net proceeds of the Premises (to the extent that such Premises is sold by the Liquidating Trustee free and clear of such Lien) to the same extent and with the same priority as such Lien held as of the Petition Date until such time as (a) the Holder of the DCC Secured Claim (i) has been paid Cash equal to the value of amount received by the Liquidating Trustee with respect to the sale of the Premises , or (ii) has been afforded such other treatment as to which such Holder and the Liquidating Trustee shall have agreed upon in writing; or (b) such purported Lien has been determined by an order of the Bankruptcy Court to be invalid or otherwise avoidable.

**The Class 2 Claim is Impaired and is therefore entitled to vote on the Plan.**

Estimated Recovery:  70%

| **Class 3:  Secured Claims of City of New York**<br><br>Class 3 consists of Claims that are secured by the Premises, to the extent of the value of the Claimholder's interest in the Estate's interest in such property.<br><br>Estimated Aggregate Amount of Allowed Class 3 Claims: $533,000 | On, or as soon as reasonably practicable after, the Effective Date, a Holder of the City of New York Secured Claim shall receive, in full and final satisfaction, settlement and release of and in exchange for the City of New York Secured Claim, (i) Cash equal to the net proceeds of any sale of the Premises by the Liquidating Trustee, to be paid out of the Liquidating Trust from the proceeds of the Premises or (ii) such other treatment as to which such Holder and the Liquidating Trustee shall have agreed upon in writing.<br><br>Any Holder of the City of New York Secured Claim shall retain its Lien in the Premises or the net proceeds of the Premises (to the extent that such Premises is sold by the Liquidating Trustee free and clear of such Lien) to the same extent and with the same priority as such Lien held as of the Petition Date until such time as (a) the Holder of the City of New York Secured Claim (i) has been paid Cash equal to the value of amount received by the Liquidating Trustee with respect to the sale of the Premises , or (ii) has been afforded such other treatment as to which such Holder and the Liquidating Trustee shall have agreed upon in writing; or (b) such purported Lien has been determined by an order of the Bankruptcy Court to be invalid or otherwise avoidable.<br><br>**Class 3 Claims are Unimpaired and are therefore not entitled to vote on the Plan.**<br><br>Estimated Recovery:  100% |
|---|---|

| **Class 4:  Non-Tax Priority Claims**<br><br>Class 4 consists of Claims, other than Administrative Claims or Priority Tax Claims, which are entitled to priority in payment pursuant to Bankruptcy Code section 507(a).<br><br>Estimated Aggregate Amount of Allowed Class 4 Claims:  $0 | On, or as soon as reasonably practicable after, the earlier of (a) the Distribution Date immediately following the date a Non-Tax Priority Claim becomes an Allowed Non-Tax Priority Claim or (b) the date that is ninety (90) days after the date on which such Non-Tax Priority Claim becomes an Allowed Non-Tax Priority Claim, a Holder of an Allowed Non-Tax Priority Claim shall receive, to be paid out of the Liquidating Trust, in full and final satisfaction, settlement and release of and in exchange for such Allowed Non-Tax Priority Claim, (i) Cash equal to the unpaid portion of such Allowed Non-Tax Priority Claim or (ii) such other treatment as to which such Holder and the Liquidating Trustee shall have agreed upon in writing.<br><br>Notwithstanding the foregoing, or anything to the contrary in the Plan, no Distributions shall be made to the Holder of any Allowed Non-Tax Priority Claims unless (a) the Liquidating Trust has sufficient Available Cash to pay, or reserve for, as the case may be, the Face Amount of all Administrative Claims; and the Liquidating Trust has sufficient Available Cash to pay, or reserve for, as the case may be, the Face Amount of all Non-Tax Priority Tax Claims.<br><br>**Class 4 Claims are Unimpaired and are therefore not entitled to vote on the Plan.**<br><br>Estimated Recovery:  100% |
|---|---|

| **Class 5: General Unsecured Claims** Class 5 consists of Claims that are not Administrative Claims, Priority Tax Claims, Non-Tax Priority Claims, Miscellaneous Secured Claims and Convenience Claims. Estimated Aggregate Amount of Allowed Class 5 Claims: $23,000. | Provided that the Face Amount of all Administrative Claims, Priority Claims and Miscellaneous Secured Claims have been paid in full or, to the extent not paid in full, funds sufficient to satisfy the Face Amount of all such Claims have been placed in a segregated reserve, and subject to the occurrence of the Effective Date, on, or as soon as reasonably practicable after, the earlier of (a) the Distribution Date immediately following the date a General Unsecured Claim becomes an Allowed General Unsecured Claim or (b) the date that is ninety (90) days after the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive from the Liquidating Trustee, in full and final satisfaction, settlement and release of and in exchange for such Allowed General Unsecured Claim, its Pro Rata share of the Class 8 Distribution Amount, if any, and, on each Periodic Distribution Date, each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of the Class 8 Distribution Amount, if any. **Class 5 Claims are Impaired and are therefore entitled to vote on the Plan.** Estimated Recovery: 0% |
| --- | --- |

| **Class 6: Deficiency Unsecured Claims of 88 Washington Place Condominium and DCC** | Provided that the Face Amount of all Administrative Claims, Priority Claims, General Unsecured Claims and Miscellaneous Secured Claims have been paid in full or, to the extent not paid in full, funds sufficient to satisfy the Face Amount of all such Claims have been placed in a segregated reserve, and subject to the occurrence of the Effective Date, on, or as soon as reasonably practicable after, the Distribution Date the Holder of the Deficiency Unsecured Claims of 88 Washington Place Condominium and DCC shall receive from the Liquidating Trustee, in full and final satisfaction, settlement and release of and in exchange for such Deficiency Unsecured Claims of 88 Washington Place Condominium and DCC its Pro Rata share of the Class 5 Distribution Amount, if any, and, on each Periodic Distribution Date, the Holder of the Deficiency Unsecured Claims of 88 Washington Place Condominium and DCC shall receive its Pro Rata share of the Class 5 Distribution Amount, if any. |
|---|---|
| Class 6 consists of Claims that are not Administrative Claims, Priority Tax Claims, Non-Tax Priority Claims, Miscellaneous Secured Claims Convenience Claims, General Unsecured Claims, Subordinated 510(c) Claims or Debtor. | |
| Estimated Aggregate Amount of Allowed Class 6 Claims:  $5,000,000 | **Class 6 Claims are Impaired and are entitled to vote on the Plan.** |
| | Estimated Recovery: 0% |

| **Class 7:  Subordinated 510(c) Claims** | |
|---|---|
| Class 7 consists of Claims (i) subordinated pursuant to Bankruptcy Code section 510(c); or (ii) for punitive or exemplary damages or for a fine or penalty, to the extent permitted by applicable law.<br><br>Estimated Aggregate Amount of Allowed Class 7 Claims:  unknown | On the Effective Date, all Subordinated 510(c) Claims shall be deemed eliminated, cancelled and/or extinguished and each Holder thereof shall not be entitled to, and shall not receive or retain any property under the Plan on account of such Subordinated 510(c) Claims.<br><br>**Class 7 is deemed to have rejected the Plan and, therefore, is not entitled to vote to on the Plan.**<br><br>Estimated Recovery:  0% |

| **Class 8:  Debtor** | |
| --- | --- |
| Class 8 consists of the legal, equitable, contractual, and other rights of Debtor with respect to property of the Estate. | In full and final satisfaction, settlement and release of and in exchange for any Claim of Debtor against the Estate, all Non-Business assets of the Estate shall revest in Debtor on the Effective Date.<br><br>**Class 8 is Impaired and is entitled to vote on the Plan.**<br><br>Estimated Recovery: Unknown |

**ALTHOUGH THE PLAN PROPONENT BELIEVES THAT THE ESTIMATED PERCENTAGE RECOVERIES ARE REASONABLE AND WITHIN THE RANGE OF ASSUMED RECOVERY, THERE IS NO ASSURANCE THAT THE ACTUAL AMOUNTS OF ALLOWED CLAIMS IN EACH CLASS WILL NOT MATERIALLY EXCEED OR THAT THE ACTUAL PERCENTAGE RECOVERY BY HOLDERS OF ALLOWED CLAIMS WILL NOT BE MATERIALLY LESS THAN THE ESTIMATED AGGREGATE AMOUNTS SHOWN IN THE TABLE ABOVE.**

The actual recoveries under the Plan by the Debtor's Creditors will be dependent upon a variety of factors including, but not limited to, whether, and in what amount and with what priority, Contingent Claims against the Debtor become non-contingent and fixed; and whether, and to what extent, Disputed Claims are resolved in favor of the Debtor. Accordingly, no representation can be or is being made with respect to whether each estimated percentage recovery shown in the table above will be realized by the Holder of an Allowed Claim or Allowed Interest in any particular Class.

**IN THE VIEW OF THE PLAN PROPONENT, THE PLAN PROVIDES THE HOLDERS OF CLAIMS WITH THE BEST RECOVERY POSSIBLE. ACCORDINGLY, THE PLAN PROPONENT BELIEVES THAT THE PLAN IS IN THE BEST INTERESTS OF SUCH HOLDERS AND STRONGLY RECOMMEND THAT ALL SUCH HOLDERS ENTITLED TO VOTE, VOTE TO ACCEPT THE PLAN.**

**DISCLOSURE STATEMENT WITH RESPECT TO PLAN OF LIQUIDATION OF NUOVO CIAO-DI, LLC PROPOSED BY DCC VIGILANT, LLC**

## I.   INTRODUCTION

The Plan Proponent submits this disclosure statement (the "Disclosure Statement") pursuant to Bankruptcy Code section 1125, for use in the solicitation of votes on the Plan. A copy of the Plan is annexed as Appendix A to this Disclosure Statement.

This Disclosure Statement sets forth certain information regarding the Debtor's prepetition operating and financial history, the need to seek Chapter 11 protection, significant events that have occurred during the Chapter 11 Case, and the anticipated liquidation of the Debtor's remaining assets and operations. This Disclosure Statement also describes terms and provisions of the Plan, certain effects of Confirmation of the Plan, and the manner in which Distributions will be made under the Plan. In addition, this Disclosure Statement discusses the confirmation process and the voting procedures that Holders of Claims entitled to vote under the Plan must follow for their votes to be counted.

Except as otherwise provided herein, capitalized terms not otherwise defined in this Disclosure Statement have the meanings ascribed to them in the Plan. Unless otherwise noted herein, all dollar amounts provided in this Disclosure Statement and in the Plan are given in United States dollars.

FOR A DESCRIPTION OF THE PLAN AND VARIOUS RISKS AND OTHER FACTORS PERTAINING TO THE PLAN AS IT RELATES TO CLAIMS AGAINST AND INTERESTS IN THE DEBTOR, PLEASE SEE SECTIONS III AND IV HEREOF.

THIS DISCLOSURE STATEMENT CONTAINS SUMMARIES OF CERTAIN PROVISIONS OF THE PLAN, CERTAIN DOCUMENTS RELATED TO THE PLAN, CERTAIN EVENTS IN THE CHAPTER 11 CASE AND CERTAIN FINANCIAL INFORMATION. ALTHOUGH THE PLAN PROPONENT BELIEVES THAT SUCH SUMMARIES ARE FAIR AND ACCURATE, SUCH SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE FULL TEXT OF SUCH DOCUMENTS. FACTUAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PROVIDED BY THE TRUSTEE, EXCEPT WHERE OTHERWISE SPECIFICALLY NOTED. THE PLAN PROPONENT DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN, INCLUDING FINANCIAL INFORMATION, IS WITHOUT ANY INACCURACY OR OMISSION.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, TO THE EXTENT THAT ANY ENTITY ASSERTS THAT THIS DISCLOSURE STATEMENT CONSTITUTES AN ADMISSION OF ANY FACT OR LIABILITY, THE PLAN PROPONENT DOES NOT BELIEVE THAT THIS DISCLOSURE STATEMENT CONSTITUTES SUCH AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION, OR WAIVER, BUT RATHER IS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS PURSUANT TO RULE 408 OF THE FEDERAL RULES OF EVIDENCE AND OTHER APPLICABLE EVIDENTIARY RULES. THE PLAN PROPONENT RESERVES ITS RIGHTS TO ASSERT IN ANY SUCH CONTESTED

MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS THAT THIS DISCLOSURE STATEMENT IS NOT ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING INVOLVING ANY OF THE DEBTOR OR ANY OTHER PARTY.  THIS DISCLOSURE STATEMENT SHALL NOT BE DEEMED ADVICE ON THE TAX, SECURITIES OR OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS OR INTERESTS.  YOU SHOULD CONSULT YOUR PERSONAL COUNSEL OR TAX ADVISOR ON ANY QUESTIONS OR CONCERNS RESPECTING TAX, SECURITIES, OR OTHER LEGAL CONSEQUENCES OF THE PLAN.

**THE PLAN PROPONENT BELIEVES THAT THE PLAN WILL ENABLE THE DEBTOR TO ACCOMPLISH THE OBJECTIVES OF CHAPTER 11 AND THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTERESTS OF THE DEBTOR AND THE HOLDERS OF ALL CLAIMS.  ACCORDINGLY, THE PLAN PROPONENT URGES HOLDERS OF CLAIMS TO VOTE TO ACCEPT THE PLAN.**

FOR FURTHER INFORMATION AND INSTRUCTION ON VOTING TO ACCEPT OR REJECT THE PLAN, SEE SECTION II AND SECTION VII OF THE DISCLOSURE STATEMENT.

## II.   PLAN VOTING INSTRUCTIONS AND PROCEDURES

### A.   Notice to Holders of Claims and Interests

This Disclosure Statement will be transmitted to Holders of Claims that are entitled to vote on the Plan.  A discussion and listing of those Holders of Claims that are entitled to vote on the Plan and those Holders of Claims that are not entitled to vote on the Plan is provided herein. The primary purpose of this Disclosure Statement is to provide adequate information to enable such Claimholders to make a reasonably informed decision with respect to the Plan prior to exercising their right to vote to accept or reject the Plan.

The Bankruptcy Court has been asked to approve this Disclosure Statement as containing information of a kind and in sufficient and adequate detail to enable such Claimholders to make an informed judgment with respect to acceptance or rejection of the Plan. THE BANKRUPTCY COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT (WHEN SUCH APPROVAL IS OBTAINED) DOES NOT CONSTITUTE EITHER A GUARANTY OF THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN, OR AN ENDORSEMENT OF THE PLAN BY THE BANKRUPTCY COURT.

WHEN AND IF CONFIRMED BY THE BANKRUPTCY COURT, THE PLAN WILL BIND ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTOR, WHETHER OR NOT SUCH HOLDERS ARE ENTITLED TO VOTE OR DID VOTE ON THE PLAN AND WHETHER OR NOT HOLDERS RECEIVE OR RETAIN ANY DISTRIBUTIONS OR PROPERTY UNDER THE PLAN.  THUS, YOU ARE ENCOURAGED TO READ THE PLAN AND THIS DISCLOSURE STATEMENT CAREFULLY.   IN PARTICULAR, ALL HOLDERS OF IMPAIRED CLAIMS WHO ARE ENTITLED TO VOTE ARE ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND ITS EXHIBITS CAREFULLY AND IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.  This Disclosure Statement contains important information about the Plan, the Debtor's businesses and operations, considerations pertinent to acceptance or rejection of the

Plan and developments concerning the Chapter 11 Case.

THIS DISCLOSURE STATEMENT IS THE ONLY DOCUMENT TO BE USED IN CONNECTION WITH THE SOLICITATION OF VOTES ON THE PLAN. No solicitation of votes may be made except after distribution of this Disclosure Statement, and no person has been authorized to distribute any information concerning the Debtor other than the information contained herein.

CERTAIN OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS BY ITS NATURE FORWARD LOOKING AND CONTAINS ESTIMATES AND ASSUMPTIONS THAT MAY BE MATERIALLY DIFFERENT FROM ACTUAL, FUTURE RESULTS. Except as otherwise specifically and expressly stated herein, this Disclosure Statement does not reflect any events that may occur subsequent to the date hereof and that may have a material impact on the information contained in this Disclosure Statement. The Plan Proponent does not anticipate that any amendments or supplements to this Disclosure Statement will be distributed to reflect such occurrences. Accordingly, the delivery of this Disclosure Statement shall not under any circumstance imply that the information herein is correct or complete as of any time *subsequent* to the date hereof.

**THE FINANCIAL INFORMATION CONTAINED HEREIN HAS NOT BEEN AUDITED BY A CERTIFIED PUBLIC ACCOUNTING FIRM AND HAS NOT BEEN PREPARED IN ACCORDANCE WITH GENERALLY ACCEPTED ACCOUNTING PRINCIPLES.**

### B.    Holders of Claims Entitled to Vote

Pursuant to the provisions of the Bankruptcy Code, only holders of allowed claims or equity interests in classes of claims or equity interests that are impaired *and* that are in a class that will receive a distribution under a proposed Chapter 11 plan are entitled to vote to accept or reject a proposed Chapter 11 plan. Classes of claims in which the holders of claims are unimpaired under a Chapter 11 plan are deemed to have accepted the plan and are not entitled to vote to accept or reject the plan. Classes of claims or interests that receive no distribution on account of their claims or interests are deemed to have rejected the plan and are not entitled to vote to accept or reject the plan.

Under Bankruptcy Code section 1124, a class of claims or interests is deemed to be "impaired" under a plan unless (i) the plan leaves unaltered the legal, equitable and contractual rights to which such claim or interest entitled the holder thereof or (ii) notwithstanding any legal right to an accelerated payment of such claim or interest, the plan cures all existing defaults (other than defaults resulting from the occurrence of events of bankruptcy) and reinstates the maturity of such claim or interest as it existed before the default.

In addition, a holder of an impaired claim or interest which is entitled to receive or retain property under the plan may vote to accept or to reject a plan only if the claim or interest is "allowed" for purposes of voting, which means generally that no party in interest has objected to such claim or interest or, if no proof of claim was filed, that such claim or interest has not been scheduled by the Debtor as contingent, unliquidated or disputed.

Thus, the Holder of a Claim against a Debtor that is Impaired under the Plan is entitled to vote to accept or reject the Plan if (i) the Plan provides a Distribution in respect of such Claim, (ii)(a) the Claim has been scheduled by the Debtor (and such claim is not scheduled at zero or as

disputed, contingent or unliquidated) or (b) the Claimholder has filed a Proof of Claim on or before the Bar Date applicable to such Holder, pursuant to Bankruptcy Code sections 502(a) and 1126(a) and Bankruptcy Rules 3003 and 3018, and (iii) (a) no objection to the Claim has been timely filed or any timely objection been withdrawn, dismissed or denied by Final Order, or (b) pursuant to Bankruptcy Rule 3018(a), upon application of the Holder of the Claim with respect to which there has been an objection, the Bankruptcy Court temporarily allows the Claim in an amount that the Bankruptcy Court deems proper for the purpose of accepting or rejecting the Plan, all as further set forth in the Solicitation Procedures Motion.

Under the Plan, Class 3 and Class 4 are Unimpaired and are presumed under Bankruptcy Code section 1126(f) to have accepted the Plan, and their votes to accept or to reject the Plan will not be solicited.  Class 1, Class 2, Class 5, Class 6, and Class 8 are Impaired under the Plan and are entitled to vote on the Plan, subject to the limitations set forth above. Class 7 is Impaired under the Plan and will not receive or retain any distribution or property under the Plan on account of its Claims or Interests and, therefore, is deemed under Bankruptcy Code section 1126(g) to have rejected the Plan and is not entitled to vote to accept or reject the Plan.  Pursuant to Bankruptcy Code section 1123(a)(1), Administrative Claims and Priority Tax Claims are not classified and are not entitled to vote on the Plan.

### C.     Acceptance of the Plan

The Bankruptcy Code defines "acceptance" of a plan by a class of claims as acceptance by creditors in that class that hold at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the claims that cast ballots for acceptance or rejection of the plan.  Acceptance of a plan by a class of interests requires acceptance by at least two-thirds (2/3) of the number of shares in such class that cast ballots for acceptance or rejection of the plan.  For a more detailed description of the requirements for confirmation of the Plan, see Section V of this Disclosure Statement entitled, "Feasibility of the Plan and Best Interests of Creditors".

Bankruptcy Code section 1129(b) permits the confirmation of a plan notwithstanding the non-acceptance of a plan by one or more impaired classes of claims or interests.  Under that section, a plan may be confirmed by a bankruptcy court if it does not "discriminate unfairly" and is "fair and equitable" with respect to each non-accepting class.  For a more detailed description of the requirements for confirmation of a non-consensual plan, see Section V.F. of this Disclosure Statement entitled, "Confirmation Without Acceptance of All Impaired Classes: the 'Cramdown' Alternative."

### D.     Solicitation Package

Accompanying this Disclosure Statement are copies of (1) the Plan; (2) the notice of, among other things, the time for submitting Ballots to accept or reject the Plan, the date, time and place of the hearing to consider confirmation of the Plan and related matters and the time for filing objections to confirmation of the Plan (the "Confirmation Hearing Notice"); and (3) if you are the Holder of Claim(s) entitled to vote on the Plan, one or more Ballots (and return envelopes) to be used by you in voting to accept or reject the Plan.

The Confirmation Hearing Notice sets forth in detail, among other things, procedures governing voting deadlines and objection deadlines with respect to the Plan and confirmation of the Plan.  The Confirmation Hearing Notice and the instructions attached to the Ballot should be read in connection with this section of the Disclosure Statement.

### E.    Voting Procedures, Ballots and Voting Deadline

If you are entitled to vote to accept or reject the Plan, a Ballot is enclosed for the purpose of voting on the Plan.  If you hold Claims in more than one Class and you are entitled to vote Claims in more than one Class, you will receive separate Ballots that must be used for each separate Class of Claims.  After carefully reviewing the Plan, this Disclosure Statement and the detailed instructions accompanying your Ballot, please indicate your acceptance or rejection of the Plan by voting in favor of or against the Plan on the enclosed Ballot.  Each Ballot has been coded to reflect the Class of Claims it represents.  Accordingly, in voting to accept or reject the Plan, you must use only the coded Ballot or Ballots sent to you with this Disclosure Statement. You must complete and sign your original Ballot (copies will not be accepted) and return it in the envelope provided.

IN ORDER FOR YOUR VOTE TO BE COUNTED, YOUR BALLOT MUST BE PROPERLY COMPLETED AS SET FORTH ABOVE AND IN ACCORDANCE WITH THE VOTING INSTRUCTIONS ON THE BALLOT AND <u>RECEIVED</u> NO LATER THAN [DATE] (THE "<u>VOTING DEADLINE</u>") BY COUNSEL TO THE PLAN PROPONENT (THE "<u>VOTING AGENT</u>").

DO NOT RETURN ANY STOCK CERTIFICATES OR DEBT INSTRUMENTS WITH YOUR BALLOT.

If you have any questions about (i) the procedure for voting your Claim or with respect to the packet of materials that you have received or (ii) the amount of your Claim, or if you wish to obtain, at your own expense (unless otherwise specifically required by Bankruptcy Rule 3017(d)) an additional copy of the Plan, this Disclosure Statement, or any appendices or exhibits to such documents, please contact:

> Jeremy S. Friedberg
> Friedberg PC
> 10045 Red Run Blvd., Suite 160
> Baltimore, MD 21117
> Telephone: (410) 581-7401
> E-mail: jeremy@friedberg.legal

### F.    Withdrawal of Ballots; Revocation; Changes to Vote

Any party who has delivered a valid Ballot for the acceptance or rejection of the Plan may withdraw such acceptance or rejection by delivering a written notice of withdrawal to the Voting Agent at any time prior to the Voting Deadline.  To be valid, a notice of withdrawal must (i) contain the description of the Claim(s) to which it relates, including, at a minimum, the claim number from the Claims Agent's claim register and the aggregate principal amount represented by such Claim(s), (ii) be signed by the withdrawing party in the same manner as the Ballot being withdrawn, (iii) contain a certification that the withdrawing party owns the Claim(s) and possesses the right to withdraw the vote sought to be withdrawn and (iv) be received by the Voting Agent in a timely manner at the address set forth above.  The Plan Proponent intends to consult with the Voting Agent to determine whether any withdrawals of Ballots were received and whether the requisite acceptances of the Plan have been received.

Any party who previously submitted a properly completed Ballot to the Voting Agent

prior to the Voting Deadline may revoke such Ballot and change her, his or its vote by submitting to the Voting Agent prior to the Voting Deadline a subsequent properly completed Ballot for acceptance or rejection of the Plan. If more than one timely, properly completed Ballot is received, only the Ballot that bears the latest date will be counted for purposes of determining whether the requisite acceptances of the Plan have been received.

### G.    Waivers of Defects and Other Irregularities

Unless otherwise directed by the Bankruptcy Court, all questions as to the validity, form, eligibility (including time of receipt), acceptance and revocation or withdrawal of Ballots will be determined by the Voting Agent and the Plan Proponent in their sole discretion, which determination will be final and binding, subject to approval by the Bankruptcy Court (if necessary). As indicated in Section II.F. above, "Withdrawal of Ballots; Revocation; Changes to Vote," effective withdrawals of Ballots must be delivered to the Voting Agent prior to the Voting Deadline. The Plan Proponent reserves the absolute right to contest the validity of any such withdrawal. Unless otherwise directed by the Court, a purported notice of withdrawal of Ballots that is not received in a timely manner by the Voting Agent will not be effective to withdraw a previously cast Ballot. The Plan Proponent also reserves the right to reject any and all Ballots not in proper form, the acceptance of which would, in the opinion of the Plan Proponent or its counsel, be unlawful. The Plan Proponent further reserves the right to waive any defects or irregularities or conditions of delivery as to any particular Ballot. The interpretation (including the Ballot and the respective instructions thereto) by the Plan Proponent, unless otherwise directed by the Bankruptcy Court, will be final and binding on all parties. Unless waived, any defects or irregularities in connection with deliveries of Ballots must be cured within such time as the Plan Proponent (or the Bankruptcy Court) determines. Neither the Plan Proponent nor any other person will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots nor will any of them incur any liabilities for failure to provide such notification. Unless otherwise directed by the Bankruptcy Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived. Ballots previously furnished (and as to which any irregularities have not therefore been cured or waived) will be invalidated.

A vote may be disregarded if the Bankruptcy Court determines, pursuant to Bankruptcy Code section 1126(e), that it was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code. The Solicitation Procedures Order also establishes a deadline by which the Debtor must file an objection to a Claim, the effect of which would be to require the Holder of such Claim to seek an order authorizing them to vote on the Plan pursuant to Bankruptcy Rule 3018.

### H.    Confirmation Hearing and Deadline for Objections to Confirmation

Pursuant to Bankruptcy Code section 1128 and Bankruptcy Rule 3017(c), the Confirmation Hearing will be held on [DATE] at [TIME] (Eastern Time) before the Honorable John P. Mastando III, United States Bankruptcy Judge for the Southern District of New York, in Courtroom 501, One Bowling Green, New York, NY 10004-1408. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for the announcement of the adjournment date made at the Confirmation Hearing or at any subsequent adjourned Confirmation Hearing.

Pursuant to the Solicitation Procedures Order, the Bankruptcy Court has directed that objections, if any, to confirmation of the Plan be filed with the Clerk of the Bankruptcy Court pursuant to the Bankruptcy Rules and the Local Bankruptcy Rules for the Southern District of New York so that they are RECEIVED on or before [DATE] (the "Confirmation Objection Deadline").

OBJECTIONS NOT TIMELY FILED AND SERVED IN THE MANNER SET FORTH ABOVE SHALL NOT BE CONSIDERED AND SHALL BE DEEMED OVERRULED.

### I.    Summary of Claims Process and Bar Date

#### 1. Schedules and Statements of Financial Affairs

The Debtor filed Schedules of Assets and Liabilities and Statements of Financial Affairs (collectively, the "Schedules and Statements") with the Bankruptcy Court on January 20, 2023, (ECF 1). Among other things, the Schedules and Statements set forth the Claims of known Creditors against the Debtor as of the Petition Date, based upon the Debtor's books and records.

#### 2. Claims Bar Date and Proofs of Claim

By **Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines** dated March 23, 2023 (ECF 3-1), the Bankruptcy Court established May 11, 2023, as the general bar date for filing Proofs of Claim against the Debtor (the "General Bar Date").

The Bankruptcy Court's orders bars any Holder of a Claim that does not file a Proof of Claim or administrative claim request required to be filed by the Bar Date, from asserting any such Claim against the Debtor or any successors to the Debtor. As of the date of this Disclosure Statement, 3 Proofs of Claim and no administrative claim requests have been timely filed and not withdrawn in the Chapter 11 Case.

#### 3. Payment of Administrative Claims

The Estate will pay ordinary course administrative expenses to those creditors that provide ongoing services to the Estate in the ordinary course of its business, including (without limitation), service providers, employees, and professionals retained under section 327, 328 or 1103; provided, however, that all parties reserve the right to object to payment of such ordinary course administrative expenses. General information concerning the amount owed to such parties as of the date hereof is available in publicly filed court documents.

Additionally, the Estate will comply with all Bankruptcy Court orders concerning allowance or payment of administrative expenses.

The Estate reserves its rights to seek court approval of consensual orders or stipulations concerning the allowance or payment of administrative expenses on a case-by-case basis.

### III.  SUMMARY OF THE PLAN OF LIQUIDATION

THIS SECTION PROVIDES A SUMMARY OF THE STRUCTURE, CLASSIFICATION, TREATMENT AND IMPLEMENTATION OF THE PLAN AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN, WHICH ACCOMPANIES THIS DISCLOSURE STATEMENT, AND TO THE EXHIBITS

ATTACHED THERETO.

THE PLAN ITSELF AND THE DOCUMENTS REFERRED TO THEREIN WILL CONTROL THE TREATMENT OF CREDITORS AND INTEREST HOLDERS UNDER THE PLAN AND WILL, UPON THE EFFECTIVE DATE, BE BINDING UPON HOLDERS OF CLAIMS AGAINST, OR INTERESTS IN, THE DEBTOR.

### A.   Purpose and Effect of the Plan

Chapter 11 is the principal business reorganization Chapter of the Bankruptcy Code. Under Chapter 11, a debtor is authorized to reorganize its business for the benefit of its creditors. Chapter 11 also allows a debtor to formulate and consummate a plan of liquidation.

A plan of liquidation sets forth the means for satisfying claims against and interests in a debtor. Confirmation of a plan of liquidation by a bankruptcy court makes the plan binding upon the debtor and any creditor of or interest holder in the debtor, whether or not such creditor or interest holder (i) is impaired under or has accepted the plan or (ii) receives or retains any property under the plan.

Consistent with the Court's approval of the Debtor's liquidation, the Plan provides for the distribution of the proceeds of the liquidation of all assets of the Debtor to various Creditors as contemplated under the Plan and for the wind-up the Debtor's corporate affairs. Under the Plan, Claims against, and Interests in, the Debtor are divided into Classes according to their relative seniority and other criteria.

If the Plan is confirmed by the Bankruptcy Court and consummated, the Claims and Interests of the various Classes will be treated in accordance with the provisions in such Plan for each such Class. On the Distribution Dates, the Debtor will make Distributions to certain Classes of Claims as provided in such Plan. A general description of the Classes of Claims against the Debtor created under the Plan, the treatment of those Classes under the Plan, and the property to be distributed under the Plan are described below.

### B.   Classification and Treatment of Claims and Interests

#### 1. Unclassified Claims

(a) Administrative Claims

An Administrative Claim means a Claim for costs and expenses of administration of the Chapter 11 Case under Bankruptcy Code sections 503(b), 507(b), or 1114(e)(2), and entitled to priority under Bankruptcy Code section 507(a)(2), including: (a) any actual and necessary costs and expenses, incurred after the Petition Date, of preserving the Estate and operating the businesses of the Debtor (such as wages, salaries and commissions for services and payments for inventory, leased equipment and premises) and Claims of governmental units for taxes (including tax audit Claims related to tax years commencing after the Petition Date, but excluding Claims relating to tax periods, or portions thereof, ending on or before the Petition Date); and (b) all other claims entitled to administrative claim status pursuant to a Final Order of the Bankruptcy Court, including Professional Fee Claims and 503(b)(9) Claims.

Except as otherwise provided in the Plan, and subject to the requirements of the Plan, on, or as soon as reasonably practicable after, the earlier of (a) the Distribution Date immediately following the date an Administrative Claim becomes an Allowed Administrative Claim or (b) the

date that is ninety (90) days after the date on which such Administrative Claim becomes an Allowed Administrative Claim, a Holder of an Allowed Administrative Claim shall receive, to be paid out of the Liquidating Trust from the Security Deposit only, in full and final satisfaction, settlement and release of and in exchange for such Allowed Administrative Claim, (a) Cash equal to the unpaid portion of such Allowed Administrative Claim or (b) such other treatment as to which such Holder and the Debtor and/or the Liquidating Trustee shall have agreed upon in writing; provided, however, that Allowed Administrative Claims with respect to liabilities incurred by a Debtor in the ordinary course of business during the Chapter 11 Case may be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto (i) prior to the Effective Date, by Debtor and (ii) subsequent to the Effective Date, by the Liquidating Trustee.

Administrative Claimholders will be paid in full on account of their Claims and are not entitled to vote on the Plan.

(b) Priority Tax Claims

A Priority Tax Claim means a Claim of a Governmental Unit of the kind specified in Bankruptcy Code sections 502(i) or 507(a)(8).

Except to the extent that an Allowed Priority Tax Claim has been paid prior to the Distribution Date, a Holder of an Allowed Priority Tax Claim shall be entitled to receive, to be paid out of the Liquidating Trust, in full and final satisfaction, settlement and release of and in exchange for such Allowed Priority Tax Claim, (i) regular installment Cash payments, occurring not less frequently than quarterly over a period not exceeding five (5) years after the Petition Date, in an aggregate principal amount equal to the unpaid portion of such Allowed Priority Tax Claim, plus interest on the unpaid portion thereof at the Case Interest Rate from the Effective Date through the date of payment thereof or (ii) such other treatment as to which such Holder and the Debtor and/or the Liquidating Trustee shall have agreed upon in writing; provided, however, that the Liquidating Trustee shall have the right to pay any Allowed Priority Tax Claim, or any remaining balance of any Allowed Priority Tax Claim, in full at any time on or after the Effective Date without premium or penalty.  Notwithstanding the foregoing, or anything to the contrary in the Plan, no Distributions shall be made to the Holder of any Allowed Priority Tax Claims unless (a) the Liquidating Trust has sufficient Available Cash to pay, or reserve for, as the case may be, the Face Amount of all Administrative Claims; and (b) either (i) the Liquidating Trust has sufficient Available Cash to pay, or reserve for, as the case may be, the Face Amount of all Priority Tax Claims or (ii) the Liquidating Trust Oversight Committee consents to all or any portion of such Distribution.

Priority Tax Claimholders will be paid in full on account of their Claims and are not entitled to vote on the Plan.

## 2. Classified Claims

Classified Claims are treated in the manner described in Section I above.

## 3. Special Provision Regarding Unimpaired Claims

Except as otherwise provided in the Plan, the Confirmation Order, any other order of the Court, or any document or agreement enforceable pursuant to the terms of the Plan, nothing shall

affect the rights and defenses, both legal and equitable, of the Liquidating Trustee with respect to any Unimpaired Claims, including, but not limited to, all rights with respect to legal and equitable defenses to setoffs or recoupments against Unimpaired Claims.

### 4. Allowed Claims

The Liquidating Trustee shall only make Distributions to Holders of Allowed Claims. No Holder of a Disputed Claim will receive any Distribution on account thereof until (and then only to the extent that) its Disputed Claim becomes an Allowed Claim; provided, however, that if the only dispute regarding a Disputed Claim is to the amount of the Disputed Claim, the Holder of a Disputed Claim shall be entitled to a Distribution on account of that portion of the Disputed Claim which the Liquidating Trustee does not dispute, which Distribution shall be made by the Liquidating Trustee at the time and in the manner that the Liquidating Trustee makes Distributions to Holders of Allowed Claims pursuant to the provisions of the Plan.  The Liquidating Trustee may, in its discretion, withhold Distributions otherwise due hereunder to any Claimholder until the Claims Objection Deadline, to enable a timely objection thereto to be filed. Any Holder of a Claim that becomes an Allowed Claim after the Effective Date will receive its Distribution in accordance with the terms and provisions of the Plan and the Liquidating Trust Agreement.

### C.    Acceptance Or Rejection Of The Plan

### 1. Impaired Classes of Claims Entitled to Vote

The votes of Holders of Claims and Interests in Impaired Classes who receive or retain property on account of their Claims or Interests and who are entitled to vote under the Solicitation Procedures Order will be solicited for acceptance or rejection of the Plan.

### 2. Acceptance by an Impaired Class

In accordance with Bankruptcy Code section 1126(c) and except as provided in Bankruptcy Code section 1126(e), an Impaired Class of Claims shall have accepted the Plan if the Plan is accepted by the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Claims of such Class that are entitled to vote and have timely and properly voted to accept or reject the Plan.

### 3. Presumed Acceptances by Unimpaired Classes

Under Bankruptcy Code section 1126(f), such Claimholders are conclusively presumed to accept the Plan, and the votes of such Claimholders will not be solicited.

### 4. Classes Deemed to Reject Plan

Claimholders in Class 7 are not entitled to receive or retain any property under the Plan. Under Bankruptcy Code section 1126(g), Holders of Claims in Class 6 are deemed to reject the Plan, and the votes of such Claimholders or Interest Holders will not be solicited.

### 5. Confirmation Pursuant to Bankruptcy Code Section 1129(b)

Because Class 7 is deemed to reject the Plan, the Plan Proponent will seek confirmation of the Plan from the Court by employing the "cramdown" procedures set forth in section 1129(b)

of the Bankruptcy Code.  The Plan Proponent reserve the right to alter, amend, modify, revoke, or withdraw the Plan or any Plan Exhibit or schedule, including to amend or modify the Plan or such Exhibits or schedules to satisfy the requirements of Bankruptcy Code section 1129(b), if necessary.

### D.    Means For Implementation of The Plan

#### 1.  Actions

##### i.   Transfer of Estate Assets

Upon the Effective Date, Debtor shall cause all their Business Assets and the Business Assets of the Estate to be transferred to the Liquidating Trust in accordance with this Plan.

Upon transfer of the Business Assets, Debtor shall have no further duties or responsibilities in connection with the implementation of the Plan, except as set forth in herein.

##### ii. Continued Cooperation of Debtor

From Effective Date for a period of thirty (30) days, Debtor shall cooperate with the Liquidating Trustee to ensure smooth turnover of the Business Assets to the Liquidating Trustee and continuous operation of the Business Assets.  Debtor shall not be entitled to compensation.

As soon as practicable after the transfer of Assets to the Liquidating Trust, the Liquidating Trustee shall provide for the retention and storage of the books, records and files that shall have been delivered to the Liquidating Trust until such time as all such books, records and files are no longer required to be retained under applicable law, and file a certificate informing the Bankruptcy Court of the location at which such books, records, and files are being stored

The Professionals employed by the Debtor shall be entitled to reasonable compensation and reimbursement of actual, necessary expenses for post-Effective Date activities, including the preparation, filing, and prosecution of Final Fee Applications, upon the submission of invoices to the Liquidating Trust.  Any time or expenses incurred in the preparation, filing, and prosecution of Final Fee Applications shall be disclosed by each Professional in its Final Fee Application and shall be subject to approval of the Bankruptcy Court.

##### iii. Cancellation of Existing Agreement

Except as otherwise provided in the Plan, and in any contract, instrument or other agreement or document created in connection with the Plan, on the Effective Date, any promissory notes and other instruments evidencing any Claims shall be deemed cancelled and of no further force and effect, without any further act or action under any applicable agreement, law, regulation, order, or rule, and the obligations of Debtor under the notes and other agreements and instruments governing such Claims and Interests shall be released; provided, however, that certain instruments, documents, and credit agreements related to Claims shall continue in effect solely for the purposes of allowing the agents to make distributions to the beneficial holders and lenders thereunder. The holders of or parties to such canceled notes and other agreements and instruments shall have no rights arising from or relating to such notes, share certificates and other agreements and instruments or the cancellation thereof, except the rights provided pursuant to the Plan.

**E.    Sources For Plan Distribution**

All Cash necessary for the Liquidating Trustee to make payments of Cash pursuant to the Plan shall be obtained from the following sources: (a) the Debtor's Cash on hand, which shall be transferred to the Liquidating Trustee on the Effective Date, (b) the Security Deposit, (c) Cash received in liquidation of the assets of the Liquidating Trust and (d) proceeds of the Causes of Action.

**F.    Liquidating Trust**

**1. Establishment of the Liquidating Trust**

The Liquidating Trust shall be established and shall become effective on the Effective Date.  All Distributions to the Holders of Allowed Claims shall be from the Liquidating Trust. The Liquidating Trust shall hold and administer the following assets and the Net Proceeds thereof (collectively, the "Liquidating Trust Assets"):

> (a)    the Business Assets of the Debtor, including but not limited to the Causes of Action for liquidation and distribution in accordance with the Plan; and

George Shoup shall serve as the Liquidating Trustee.  Materials relating to the relevant experience and qualifications of the Liquidating Trustee are attached hereto as Exhibit C.

**2. Trust Distributions**

The Liquidating Trustee shall liquidate all Business Assets of the Debtor and the Estate (including, without limitation, all Causes of Action) and distribute the Net Proceeds of such liquidation from the Liquidating Trust in accordance with the Plan and the Liquidating Trust Agreement.

**3. Duration of Trust**

The Liquidating Trust shall have an initial term of two (2) years; provided, however, that, if warranted by the facts and circumstances, and subject to the approval of the Bankruptcy Court with jurisdiction over the case, upon a finding that an extension of the term of the Liquidating Trust is necessary to accomplish the liquidating purpose of the Liquidating Trust, the Liquidating Trust's term may be extended for a finite term based on facts and circumstances.  Each extension of the term of the Liquidating Trust must be approved by the Court within six (6) months of the beginning of the extended term.  The Liquidating Trust may be terminated earlier than its scheduled termination if (a) the Bankruptcy Court has entered a Final Order closing the Chapter 11 Case pursuant to Bankruptcy Code section 350(a) and (b) the Liquidating Trustee has administered all assets of the Liquidating Trust and performed all other duties required by the Plan and the Liquidating Trust Agreement.  As soon as practicable after the Final Trust Distribution Date, the Liquidating Trustee shall seek entry of a Final Order closing the Chapter 11 Case pursuant to Bankruptcy Code section 350.

**4. Liquidation of Causes of Action**

Notwithstanding any other term or provision of the Plan, the Debtor shall have, prior to the Effective Date, and the Liquidating Trustee shall have, on and after the Effective Date, sole authority and responsibility for investigating, analyzing, commencing, prosecuting, litigating,

compromising, collecting, and otherwise administering the Causes of Action.

### 5. Liquidating Trustee

#### (a) Appointment

The appointment of the Liquidating Trustee shall be effective as of the Effective Date. Successor Liquidating Trustee(s) shall be appointed as set forth in the Liquidating Trust Agreement.

#### (b) Term

Unless the Liquidating Trustee resigns or dies earlier, the Liquidating Trustee's term shall expire upon termination of the Liquidating Trust pursuant to the Plan and/or the Liquidating Trust Agreement.

#### (c) Powers and Duties

The Liquidating Trustee shall have the rights and powers set forth in the Liquidating Trust Agreement including, but not limited to, the powers of a debtor-in-possession under Bankruptcy Code sections 1107 and 1108. The Liquidating Trustee shall be governed in all things by the terms of the Liquidating Trust Agreement and the Plan. The Liquidating Trustee shall administer the Liquidating Trust, and its assets, and make Distributions from the proceeds of the Liquidating Trust in accordance with the Plan. In addition, the Liquidating Trustee shall, in accordance with the terms of the Plan, take all actions necessary to wind down the affairs of the Debtor consistent with the Plan and applicable non-bankruptcy law. Without limitation, the Liquidating Trustee shall file final federal, state, foreign and, to the extent applicable, local, tax returns. Subject to the terms of the Liquidating Trust Agreement, which includes, among other things, limitations on the Liquidating Trustee's discretion to take certain action without approval of the Liquidating Trust Oversight Committee or, in some circumstances, the Bankruptcy Court, the Liquidating Trustee shall be authorized, empowered and directed to take all actions necessary to comply with the Plan and exercise and fulfill the duties and obligations arising thereunder, including, without limitation, to:

(i) employ, retain, and replace one or more attorneys, accountants, auctioneers, brokers, managers, consultants, other professionals, agents, investigators, expert witnesses, consultants, and advisors as necessary to discharge the duties of the Liquidating Trustee under the Plan and the Liquidating Trust Agreement;

(ii) object to the allowance of Claims pursuant to the terms of the Plan;

(iii) open, maintain and administer bank accounts as necessary to discharge the duties of the Liquidating Trustee under the Plan and the Liquidating Trust Agreement;

(iv) pay reasonable and necessary professional fees, costs, and expenses as set forth in the Plan;

(v) investigate, analyze, commence, prosecute, litigate, compromise, and otherwise administer the Causes of Action and all related Liens for the benefit of the Liquidating Trust and its beneficiaries, as set forth in the Plan, and take all other necessary and appropriate steps to collect, recover, settle, liquidate, or otherwise reduce to Cash the Causes of Action, including all

receivables, and to negotiate and effect settlements and lien releases with respect to all related Claims and all related Liens;

(vi)    administer, sell, liquidate, or otherwise dispose of all Collateral and all other Assets of the Estate in accordance with the terms of the Plan;

(vii)    represent the Estate before the Bankruptcy Court and other courts of competent jurisdiction with respect to matters concerning the Liquidating Trust;

(viii)    seek the examination of any entity under and subject to the provisions of Bankruptcy Rule 2004;

(ix)    comply with applicable orders of the Bankruptcy Court and any other court of competent jurisdiction over the matters set forth in the Plan;

(x)    comply with all applicable laws and regulations concerning the matters set forth in the Plan;

(xi)    exercise such other powers as may be vested in the Liquidating Trust pursuant to the Liquidating Trust Agreement, the Plan, or other Final Orders of the Bankruptcy Court;

(xii)    execute any documents, instruments, contracts, and agreements necessary and appropriate to carry out the powers and duties of the Liquidating Trust; and

(xiii)    stand in the shoes of the Debtor for all purposes.

(d)    Fees and Expenses

Except as otherwise provided in the Plan, compensation of the Liquidating Trustee and the costs and expenses of the Liquidating Trustee and the Liquidating Trust (including, without limitation, professional fees and expenses) shall be paid from the Liquidating Trust.    The Liquidating Trustee shall pay, without further order, notice, or application to the Bankruptcy Court, the reasonable fees and expenses of the Liquidating Trustee Professionals, as necessary to discharge the Liquidating Trustee's duties under the Plan and the Liquidating Trust Agreement. Payments to the Liquidating Trustee, or to the Liquidating Trustee Professionals, shall not require notice to any party, or an order of the Bankruptcy Court approving such payments; provided, however, that the Liquidating Trustee shall be entitled to payment of reasonable fees and expense incurred prior to the Effective Date in an amount to be agreed to by the Plan Proponent and approved by the Bankruptcy Court in the Confirmation Order.

(e)    Retention of Professionals and Compensation Procedure

On and after the Effective Date, subject to the terms of the Liquidating Trust Agreement, the Liquidating Trustee may engage such professionals and experts as may be deemed necessary and appropriate by the Liquidating Trustee to assist the Liquidating Trustee in carrying out the provisions of the Plan and the Liquidating Trust Agreement, including, but not limited to, Professionals retained prior to the Effective Date by either the Debtor or the Creditors' Committee.    Subject to the terms of the Liquidating Trust Agreement, for services performed from and after the Effective Date, Liquidating Trustee Professionals shall receive compensation and reimbursement of expenses in a manner to be determined by the Liquidating Trustee.

(f)    Liquidating Trustee as Successor

Pursuant to Bankruptcy Code section 1123(b), the Liquidating Trustee shall be the successor to the Debtor for all purposes.

(g)    Compromising Claims

Pursuant to Bankruptcy Rule 9019(b), the Plan and the Liquidating Trust Agreement, as of the Effective Date, the Liquidating Trustee is authorized to approve compromises of the Causes of Action and all Claims, Disputed Claims, and Liens and to execute necessary documents, including Lien releases and stipulations of settlement or release, without notice to any party and without further order of the Bankruptcy Court, except as otherwise provided in the Liquidating Trust Agreement.

(h)    Investment Powers

The powers of the Liquidating Trustee to invest any Cash that is held by the Liquidating Trust, other than those powers reasonably necessary to maintain the value of the assets and to further the Liquidating Trust's liquidating purposes, shall be limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary liquid investments, such as treasury bills.  The Liquidating Trustee is prohibited from continuing or engaging in the conduct of a trade or business, except to the extent reasonably necessary to and consistent with the liquidating purpose of the Liquidating Trust.

(i)    Distributions

Except as otherwise provided in the Plan, the Liquidating Trustee is required to distribute at least annually to beneficiary Claimholders qualifying for Distributions from the Liquidating Trust under the Plan the Liquidating Trust's net income and all net proceeds from the sale of assets by the Liquidating Trust, except that the Liquidating Trust may retain an amount of net proceeds or net income reasonably necessary to maintain the value of its assets or to meet Claims and contingent liabilities (including Disputed Claims).  The Liquidating Trustee shall make continuing efforts to dispose of the Liquidating Trust's assets, make timely Distributions, and not unduly prolong the duration of the Liquidating Trust.

(j)    Vesting of Assets

On the Effective Date, all property treated by the Plan, and any books and records relating to the foregoing not otherwise treated by the Plan, shall vest in the Liquidating Trust free and clear of all Liens, Claims, encumbrances, and other interests and shall thereafter be administered, liquidated by sale, collection, recovery, or other disposition and distributed by the Liquidating Trust in accordance with the terms of the Liquidating Trust Agreement and the Plan.

## 6.  Vesting/No Revesting Of Assets

All Non-business Assets shall revest in the Debtor on or following the Effective Date. All Business Assets shall vest in the Liquidating Trust and continue to be subject to the jurisdiction of the Bankruptcy Court following confirmation of the Plan until such property is distributed to Holders of Allowed Claims in accordance with the provisions of the Plan, the

Liquidating Trust Agreement, and the Confirmation Order.

### 7. Accounts

The Liquidating Trustee shall (a) establish one or more general accounts into which shall be deposited all funds not required to be deposited into any other account or reserve and (b) create, fund, and withdraw funds from, as appropriate, any reserves or other accounts maintained or established by the Liquidating Trustee.

### 8. Release Of Liens

Except as otherwise provided in the Plan, the Confirmation Order, or in any document, instrument, or other agreement created in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, liens, or other security interests against the property of the Estate shall be released.

### 9. Settlement Of Causes Of Action

(a)    Settlement of Causes of Action

Subject to the terms of the Liquidating Trust Agreement, at any time after the Confirmation Date but before the Effective Date, notwithstanding anything in the Plan to the contrary, the Debtor may settle some or all of the Causes of Action with the approval of the Court pursuant to Bankruptcy Rule 9019. After the Effective Date, the Liquidating Trustee, in accordance with the terms of the Plan and the Liquidating Trust Agreement, will determine whether to bring, settle, release, compromise, enforce or abandon such rights (or decline to do any of the foregoing) in accordance with the Plan.

### G.    Provisions Governing Distributions

### 1. Distributions for Claims Allowed as of the Effective Date

Except as otherwise provided in the Plan or as ordered by the Bankruptcy Court, all Distributions to be made on account of Claims that are Allowed Claims as of the Effective Date shall be made on the Distribution Date by the Liquidating Trustee. Distributions on account of Claims that first become Allowed Claims after the Effective Date shall be made pursuant to the terms and conditions of the Plan. Notwithstanding any other provision of the Plan to the contrary, no Distribution shall be made on account of any Allowed Claim or portion thereof that (i) has been satisfied after the Petition Date pursuant to an order of the Bankruptcy Court; (ii) is listed in the Schedules as contingent, unliquidated, disputed or in a zero amount, and for which a Proof of Claim has not been timely filed; or (iii) is evidenced by a Proof of Claim that has been amended by a subsequently filed Proof of Claim that purports to amend the prior Proof of Claim.

### 2. Liquidating Trustee as Disbursing Agent

The Liquidating Trustee shall make all Distributions required under the Plan, subject to the terms and provisions of the Plan and the Liquidating Trust Agreement. The Liquidating Trustee shall be required to post a bond or surety or other security for the performance of its duties as provided in the Confirmation Order. The Liquidating Trustee shall be authorized and directed to rely upon the Debtor's books and records and its representatives and professionals in determining Allowed Claims not entitled to Distribution under the Plan in accordance with the

terms of the Plan.

### H.    Treatment Of Executory Contracts And Unexpired Leases

#### 1. Rejected Contracts And Leases.

Except as otherwise provided in the Confirmation Order, the Plan, or any other Plan Document, the Confirmation Order shall constitute an order under Bankruptcy Code section 365 rejecting all prepetition executory contracts and unexpired leases to which any Debtor is a party, to the extent such contracts or leases are executory contracts or unexpired leases, on and subject to the occurrence of the Effective Date, unless such contract or lease (a) previously shall have been assumed, assumed and assigned, or rejected by the Debtor, (b) previously shall have expired or terminated pursuant to its own terms before the Effective Date, or (c) is the subject of a pending motion to assume or reject on the Confirmation Date,.

#### 2. Bar To Rejection Damages.

If the rejection of an executory contract or unexpired lease pursuant to the Plan gives rise to a Claim by the other party or parties to such contract or lease, such Claim shall be forever barred and shall not be enforceable against the applicable Debtor or its Estate, the Liquidating Trust, or their respective successors or properties unless a Proof of Claim is filed and served on the Liquidating Trust and counsel for the Liquidating Trustee within thirty (30) days after service of a notice of the Effective Date or such other date as is prescribed by the Bankruptcy Court.

### I.    Confirmation And Consummation Of The Plan

#### 1. Conditions To Confirmation.

The following are conditions precedent to the occurrence of the Confirmation Date:

(a)    A Final Order finding that the Disclosure Statement contains adequate information pursuant to Bankruptcy Code section 1125 shall have been entered by the Bankruptcy Court;

(b)    A proposed Confirmation Order in form and substance, reasonably acceptable to the Plan Proponent; and

(c)    Approval of all provisions, terms and conditions of the Plan in the Confirmation Order; and

#### 2. Conditions To Effective Date.

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in writing in accordance with the Plan.

(a)    The Confirmation Order shall have been entered and become a Final Order and shall provide that the Debtor, the Liquidating Trust, and the Liquidating Trustee are authorized and directed to take all actions necessary or appropriate to enter into, implement and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan or effectuate, advance, or further the purposes thereof;

(b)    All Plan Exhibits shall be, in form and substance, reasonably acceptable to the Plan Proponent, and shall have been executed and delivered by all parties' signatory thereto;

(c)    The Liquidating Trustee shall be authorized and directed to take all actions necessary or appropriate to enter into, implement and consummate the contracts, instruments, releases, leases, indentures, and the agreements or documents created in connection with, and expressly provided for under, the Plan; and

(d)    All other actions, documents, and agreements necessary to implement the Plan shall have been effected or executed.

The Confirmation Hearing is currently scheduled for [DATE].  The Effective Date cannot occur before such date.  In order for the Effective Date to occur, the conditions set forth in the Plan must occur.  The Plan Proponent does not have sufficient information at this time to estimate when such conditions will be satisfied.

### J.    Effect Of Plan Confirmation

#### 1.  Binding Effect

The Plan shall be binding upon and inure to the benefit of the Debtor, all present and former Holders of Claims and Interests, and their respective successors and assigns, including, but not limited to, the Liquidating Trust and the Liquidating Trustee.

#### 2.  Discharge of the Debtor

Pursuant to Bankruptcy Code section 1141(d), Confirmation will discharge all Claims against the Debtor. No Claimholder may, on account of such Claim, seek or receive any payment or other distribution from, or seek recourse against, any of the Debtor's Estate, the Liquidating Trust, the Liquidating Trustee, and/or their respective successors, assigns and/or property, except as expressly provided in this Plan.

#### 3.  Releases by the Debtor

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtor (in their individual capacities and as Debtor and Debtor in possession) will be deemed to release forever, waive, and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities (other than the rights of the Debtor to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered hereunder, and liabilities arising after the Effective Date in the ordinary course of business) whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise that are based in whole or part on any act omission, transaction, event, or other occurrences taking place on or after the Petition Date through and

including the Effective Date in connection with, relating to, or arising out of the Debtor, the Chapter 11 Case, the negotiation and filing of the Plan, the Disclosure Statement or any prior plans of reorganization, the filing of the Chapter 11 Case, the pursuit of confirmation of the Plan or any prior plans of reorganization, the consummation of the Plan, the administration of the Plan, or the property to be liquidated and/or distributed under the Plan, and that could have been asserted by or on behalf of the Debtor or their Estate, including pursuant to principles of substantive consolidation, piercing the corporate veil, alter ego, domination, constructive trust and similar principles of state or federal creditors' rights laws, in any such case, against the Released Parties.

### 4. Injunction

Except as otherwise provided in the Plan, the Confirmation Order shall provide, among other things, that from and after the Effective Date all Persons who have held, hold or may hold Claims against or Interests in the Debtor are permanently enjoined from taking any of the following actions against the Estate(s), the Liquidating Trust, the Liquidating Trustee, or any of their property on account of any such Claims or Interests: (A) commencing or continuing, in any manner or in any place, any action or other proceeding; (B) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order; (C) creating, perfecting, or enforcing any lien or encumbrance; (D) asserting a setoff, right of subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtor, except as set forth in the Plan; and (E) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; provided, however, that nothing contained in the Plan shall preclude such Persons from exercising their rights pursuant to and consistent with the terms of the Plan or the Confirmation Order.

All Persons, including but not limited to the Debtor, are enjoined from using, possessing, accessing or making any use whatsoever of the Business Assets, except as provided in the Plan.

### 5. Term of Bankruptcy Injunction or Stays

All injunctions or stays provided for in the Chapter 11 Case under Bankruptcy Code section 105 or 362, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date. Upon the Effective Date, the injunction provided in the Plan shall apply.

## IV. **CERTAIN FACTORS TO BE CONSIDERED**

The Holders of Claims against any of the Debtor should read and carefully consider the following factors, as well as the other information set forth in this Disclosure Statement (and the documents delivered together herewith and/or incorporated by reference herein), before deciding whether to vote to accept or to reject the Plan.

### A. General Considerations

The Plan sets forth the means for satisfying the Claims against each of the Debtor. Certain Claims and Interests receive no Distributions pursuant to the Plan.

### B.    Certain Bankruptcy Considerations

Even if all Impaired voting Classes vote in favor of the Plan and, with respect to any Impaired Class deemed to have rejected the Plan, the requirements for "cramdown" are met, the Bankruptcy Court may choose not to confirm the Plan.  Bankruptcy Code section 1129 requires, among other things, a showing that the value of Distributions to dissenting Holders of Claims and Interests may not be less than the value such Holders would receive if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.  Although the Plan Proponent believes that the Plan will meet such tests, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

The Plan provides for certain conditions that must be fulfilled prior to Confirmation of the Plan and the Effective Date.  As of the date of this Disclosure Statement, there can be no assurance that any or all of the conditions in the Plan will be met (or waived) or that the other conditions to Confirmation, if any, will be satisfied.  If a Chapter 7 liquidation were to occur, there is a substantial risk that the value of the Estate would be substantially eroded to the detriment of all stakeholders.

### C.    Administrative and Priority Claims

As discussed elsewhere in this Disclosure Statement, the Plan provides that additional Distributions under the Plan (in excess of any Distributions made during the Chapter 11 Case) to Holders of General Unsecured Claims and Convenience are entirely dependent on whether there will be net cash remaining after payment in full of all Allowed Administrative, Priority Tax, Miscellaneous Secured and Non-Tax Priority Claims, and all other costs and expenses of the wind-down of the Debtor's Estate ("Liquidating Debtor Net Available Cash").

While the Plan Proponent currently estimates that there will be Liquidating Debtor Net Available Cash, all Allowed Administrative, Priority Tax, Miscellaneous Secured and Non-Tax Priority Claims have not yet been resolved or fixed in amount, and all costs and expenses of completing the wind-down of the Estate cannot be estimated with certainty.  As a result, the actual allowed amounts of all such Claims could turn out to be substantially higher than the estimate made by the Plan Proponent herein, and there can be no assurance that there will be any Liquidating Debtor Net Available Cash.

Additionally, as the number and amount of Priority Tax Claims and Administrative Claims are presently unknown to the Debtor, it is possible that, if the actual number and amount of Priority Tax Claims and Administrative Claims exceeds the Debtor's estimates, the Debtor may not obtain enough Cash to satisfy all Priority Tax Claims and Administrative Claims in full.  Accordingly, should Priority Tax Claims and Administrative Claims exceed the amount of Cash held by the Debtor and Holders of such Priority Tax Claims and Administrative Claims refuse

to consent to less than payment in full, the Bankruptcy Court may deny Confirmation of the Plan.  As set forth elsewhere in the Plan and the Disclosure Statement, the Debtor reserve their right to seek to dismiss or convert one or more of the Chapter 11 Case.

### D.    Importance of Obtaining Professional Tax Assistance

THE DISCLOSURE STATEMENT DOES NOT ADDRESS CERTAIN TAX CONSEQUENCES OF THE PLAN AND THE LIQUIDATING TRUST.  THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING

ON A HOLDER'S PARTICULAR CIRCUMSTANCES. ACCORDINGLY, HOLDERS ARE URGED TO CONSULT THEIR TAX ADVISORS ABOUT THE FEDERAL, STATE AND LOCAL, AND APPLICABLE FOREIGN INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN.

## V.   FEASIBILITY OF THE PLAN AND BEST INTERESTS OF CREDITORS

### A.   Feasibility of the Plan

The Plan Proponent believes that the Cash on hand and the Security Deposit will be sufficient to pay all Administrative and Priority Claims that become Allowed, based upon the Plan Proponent' estimates. Accordingly, the Plan Proponent believes that the Plan is feasible.

### B.   Acceptance of the Plan

As a condition to confirmation of any plan, the Bankruptcy Code requires that each class of impaired claims vote to accept that plan, unless the plan satisfies the best interests test, as set forth below.

Bankruptcy Code Section 1126(c) defines acceptance of a plan by a class of impaired claims as acceptance by holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of claims in that class, but for that purpose counts only those who actually vote to accept or to reject a plan. Thus, Impaired Classes under the Plan will have voted to accept such Plan only if two-thirds (2/3) in amount and a majority in number actually voting in each Class cast their Ballots in favor of acceptance. Holders of Claims who fail to vote for the Plan are not counted as either accepting or rejecting that Plan.

### C.   Best Interests Test

As noted above, even if a plan is accepted by the holders of each class of claims and interests, the Bankruptcy Code requires a bankruptcy court to determine that such Plan is in the best interests of all holders of claims or interests that are impaired by that Plan and that have not accepted that Plan. The "best interests" test, as set forth in Bankruptcy Code section 1129(a)(7), requires a bankruptcy court to find either that all members of an impaired class of claims or interests have accepted the plan or that the plan will provide a member who has not accepted the plan with a recovery of property of a value, as of the effective date of the plan, that is not less than the amount that such holder would recover if the debtor were liquidated under Chapter 7 of the Bankruptcy Code.

To calculate the probable distribution to holders of each impaired class of claims and interests if the Debtor were liquidated under Chapter 7, a bankruptcy court must first determine the aggregate dollar amount that would be generated from a Debtor's assets if its Chapter 11 cases were converted to Chapter 7 cases under the Bankruptcy Code. Because the Plan is a liquidating plan, the "liquidation value" in the hypothetical Chapter 7 liquidation analysis for purposes of the "best interests" test is substantially similar to the estimates of the results of the Chapter 11 liquidation contemplated by the Plan. However, the Plan Proponent believe that in a Chapter 7 liquidation, there would be additional costs and expenses that the Estate would incur as a result of the ineffectiveness associated with replacing existing management and professionals in a Chapter 7 case.

Costs of liquidation under Chapter 7 of the Bankruptcy Code would include the compensation of a trustee, as well as compensation of counsel and other professionals retained by the trustee, asset disposition expenses, all unpaid expenses incurred by the Debtor in their Chapter 11 Case (such as compensation of attorneys, financial advisors and accountants) that are allowed in the Chapter 7 cases, litigation costs, and Claims arising from the operations of the Debtor during the pendency of the Chapter 11 Case.

### D.    Liquidation Analysis

In order to determine the amount of hypothetical Chapter 7 liquidation value available to Creditors, the Plan Proponent has prepared a liquidation analysis, a copy of which is annexed hereto as Appendix B (the "Liquidation Analysis").  The Plan Proponent believes that such Liquidation Analysis demonstrates that in a Chapter 7 liquidation, Holders of certain Claims against the Debtor, including General Unsecured Claimholders, would receive less of a recovery as compared to the recovery under the Plan.

Notwithstanding the foregoing, the Plan Proponent believes that the Liquidation Analysis with respect to the Debtor is inherently speculative.  The Liquidation Analysis for the Debtor necessarily contains estimates of the net proceeds that will be available after completion of a Chapter 7 wind-down.  Claims estimates are based solely upon the Plan Proponent's review of any Claims filed, a review that is ongoing, and the Debtor's books and records.  No order or finding has been entered by the Bankruptcy Court estimating or otherwise fixing the amount of Claims at the projected amounts of Allowed Claims set forth in the Liquidation Analysis.

### E.    Application of the "Best Interests" of Creditors Test to the Liquidation Analysis and the Plan

It is impossible for the Plan Proponent to determine with any specificity the value each Creditor will receive as a percentage of its Allowed Claim.  This difficulty in estimating the value of recoveries is due to, among other things, the inherent uncertainty in estimating the amount of Administrative Claims, Priority Tax Claims, Miscellaneous Secured Claims, and Non-Tax Priority Claims that will ultimately become Allowed, as well as, to a lesser degree, the ultimate amount of Allowed Claims in any Impaired Class.

Notwithstanding the difficulty in quantifying recoveries to Holders of Allowed Claims with precision, the Plan Proponent believe that the Liquidation Analysis and proposed recoveries to each Class of Impaired Claims under the Plan imply a greater or equal recovery to Holders of Claims in Impaired Classes than the recovery available in a Chapter 7 liquidation. Accordingly, the Plan Proponent believes that the "best interests" test of Bankruptcy Code section 1129 is satisfied.

### F.    Confirmation Without Acceptance of All Impaired Classes: The "Cramdown" Alternative

Under the Plan, Class 7 is deemed to have rejected the Plan.  In view of the deemed rejection by such Holders, the Plan Proponent will seek confirmation of the Plan pursuant to the "cramdown" provisions of the Bankruptcy Code.

Specifically, Bankruptcy Code section 1129(b) provides that a plan can be confirmed

even if the plan is not accepted by all impaired classes, as long as at least one impaired class of claims has accepted it. A bankruptcy court may confirm a plan at the request of the Debtor if the plan "does not discriminate unfairly" and is "fair and equitable" as to each impaired class that has not accepted the plan.

A plan does not discriminate unfairly within the meaning of the Bankruptcy Code if a dissenting class is treated equally with respect to other classes of equal rank.

A plan is fair and equitable as to a class of claims which rejects a plan if the plan provides (a) for each holder of a claim included in the rejecting class to receive or retain on account of that claim property that has a value, as of the effective date of the plan, equal to the allowed amount of such claim; or (b) that the holder of any claim or interest that is junior to the claims of such class will not receive or retain on account of such junior claim or interest any property at all.

A plan is fair and equitable as to a class of equity interests that rejects a plan if the plan provides (a) that each holder of an interest included in the rejecting class receive or retain on account of that interest property that has a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest; or (b) that the holder of any interest that is junior to the interests of such class will not receive or retain any property at all on account of such junior interest under the plan.

## VI.  ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

The Plan Proponent believe that the Plan affords Holders of Claims the potential for a better realization on the Debtor's Assets than a Chapter 7 liquidation, and, therefore, is in the best interests of such Holders.

If, however, the requisite acceptances of voting Classes of Claims are not received, or no Plan is confirmed and consummated, the theoretical alternatives include: (a) formulation of an alternative plan or plans of liquidation, or (b) liquidation of the Debtor under Chapter 7 of the Bankruptcy Code.

### A.    Alternative Plan(s) of Liquidation

If the requisite acceptances are not received or if the Plan is not confirmed, the Plan Proponent or any other party in interest could attempt to formulate and propose a different plan or plans of liquidation.

With respect to an alternative liquidation plan, the Plan Proponent has explored various other alternatives in connection with the extensive negotiation process involved in the formulation and development of the Plan. The Plan Proponent believes that the Plan enables Creditors to realize the greatest possible value under the circumstances, and, as compared to any alternative plan of liquidation, has the greatest chance to be confirmed and consummated.

### B.    Liquidation under Chapter 7

If no Plan is confirmed, the Chapter 11 Case may be converted to cases under Chapter 7

of the Bankruptcy Code, pursuant to which a trustee would be elected or appointed to complete the liquidation of the Debtor's assets for distribution to Creditors in accordance with the priorities established by the Bankruptcy Code. It is impossible to predict precisely how the proceeds of the liquidation would be distributed to the respective Holders of Claims against or Interests in the Debtor.

The Plan Proponent believe that in a liquidation under Chapter 7, additional administrative expenses involved in the appointment of a trustee or trustees and attorneys, accountants and other professionals to assist such trustees would cause a diminution in the value of the Debtor's Estate. The assets available for distribution to Creditors would be reduced by such additional expenses and by Claims, some of which would be entitled to priority. In such a case, the proceeds of the liquidation would be distributed by the Chapter 7 trustee in accordance with Chapter 7. The Plan Proponent believes that such a result would reduce Distributions to all Holders of General Unsecured Claims compared to those under the Plan, because of additional administrative expenses for the Chapter 7 trustee and professionals retained by it. See Appendix B.

### C.    Dismissal of the Chapter 11 Case

If no Plan is confirmed, the Chapter 11 Trustee or other parties in interest may seek dismissal of the Chapter 11 Case pursuant to Bankruptcy Code section 1112. Without limitation, dismissal of the Chapter 11 Case would terminate the automatic stay and might allow certain Creditors to foreclose on their Liens on substantially all of the Debtor's remaining assets. Accordingly, the Debtor believe that dismissal of the Chapter 11 Case would reduce the value of the Debtor's remaining assets, would lower the return to Creditors and would possibly eliminate any return to Holders of Claims other than Miscellaneous Secured Claims.

## VII. THE SOLICITATION AND VOTING PROCEDURE

### A.    Parties in Interest Entitled to Vote

Under Bankruptcy Code section 1124, a class of claims or interests is deemed to be "impaired" under a plan unless (i) the plan leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder thereof or (ii) notwithstanding any legal right to an accelerated payment of such claim or interest, the plan cures all existing defaults (other than defaults resulting from the occurrence of events of bankruptcy) and reinstates the maturity of such claim or interest as it existed before the default.

In general, a holder of a claim or interest may vote to accept or to reject a plan if (i) the claim or interest is "allowed," which means generally that no party in interest has objected to such claim or interest, and (ii) the claim or interest is impaired by the plan. If, however, the holder of an impaired claim or interest will not receive or retain any distribution under the plan on account of such claim or interest, the Bankruptcy Code deems such holder to have rejected the plan, and, accordingly, holders of such claims and interests do not actually vote on the plan. If a claim or interest is not impaired by the plan, the Bankruptcy Code deems the holder of such claim or interest to have accepted the plan and, accordingly, holders of such claims and interests are not entitled to vote on the plan.

### B.    Classes Impaired under the Plan

Class 1, Class 2, Class 5, Class 6, and Class 8 are entitled to vote to accept or reject such Plan.    Class 3 and Class 4 are Unimpaired. By operation of law, each Unimpaired Class of Claims is conclusively presumed to have accepted the Plan and, therefore, is not entitled to vote to accept or reject that Plan.    Class 7 will not receive or retain any property under the Plan.    By operation of law, each Class which receives or retains no property under the Plan is deemed to have rejected the Plan and, therefore, is not entitled to vote to accept or reject such Plan.

## VIII.    **FURTHER INFORMATION**

### A.    Further Information; Additional Copies

If you have any questions or require further information about the voting procedure for voting your Claim or about the packet of material you received, or if you wish to obtain an additional copy of the Plan, the Disclosure Statement, or any exhibits or appendices to such documents (at your own expense, unless otherwise specifically required by Bankruptcy Rule 3017(d)), please contact:

Jeremy S. Friedberg
Friedberg PC
10045 Red Run Blvd., Suite 160
Baltimore, MD 21117
Telephone: (410) 581-7401
E-mail: jeremy@friedberg.legal

## IX.    **RECOMMENDATION AND CONCLUSION**

For all of the reasons set forth in this Disclosure Statement, the Plan Proponent believes that confirmation and consummation of the Plan is preferable to all other alternatives. Consequently, the Plan Proponent urge all Holders of Claims in Classes 3, 4, 5, 6, 9 and 11 to vote to ACCEPT the Plan, and to complete and return their Ballots so that they will be RECEIVED by the Voting Agent on or before [DATE].

Dated:      May 23, 2023

Respectfully submitted,

**DCC VIGILANT, LLC**

By: /s/ Jeremy S. Friedberg
    Jeremy S. Friedberg
    10045 Red Run Boulevard, Suite160
    Baltimore, MD 21117
    Telephone: (410) 581-7400
    Email: jeremy@friedberg.legal

*Counsel for DCC Vigilant, LLC*

**APPENDIX A**

**PLAN OF LIQUIDATION OF NUOVO CIOA-DI LLC PROPOSED BY
DCC VIGILANT, LLC**

# APPENDIX B

# LIQUIDATION ANALYSIS

## APPENDIX C

## LIQUIDATING TRUSTEE