UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In re:

NUOVO CIAO-DI, LLC

Case No. 23-10068-JPM
Chapter 11

                 Debtor

---------------------------------------------------------x

# DEBTOR'S MOTION FOR AN ORDER (A) AUTHORIZING AND APPROVING THE SALE OF A PORTION OF THE DEBTOR'S PROPERTY PURSUANT TO 11 U.S.C. §§ 105(a), 363(b), (f),(h) AND (m), 503 AND 507, OF THE BANKRUPTCY CODE AND RULES 2002, 6004, 9006 AND 9007 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND 6004-1 OF THE LOCAL RULES FOR THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK AND SALE GUIDELINES PURSUANT TO GENERAL ORDER M-383 FOR THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK; (B) APPROVING THE CONTRACT OF SALE IN CONNECTION THEREWITH; (C) AUTHORIZING AND APPROVING THE DISTRIBUTION OF CERTAIN OF THE SALE PROCEEDS; AND (D) APPROVING CERTAIN OF THE FEES AND EXPENSES OF THE SALE;AND (E) FOR SUCH OTHER AND FURTHER <u>RELIEF AS THE COURT DEEMS PROPER</u>

TO:    THE HONORABLE JOHN P. MASTANDO III
        UNITED STATES BANKRUPTCY JUDGE

      NUOVO CIAO-DI, LLC, the debtor and debtor-in-possession (the "**Debtor**"), by and through its proposed counsel, Bronson Law Offices, P.C. submits this motion (the "**Sale Motion**") seeking entry of an order, in substantially the form attached hereto, pursuant to sections 105(a), 363(b), (f), and (m), 503 and 507 of Title 11 of the United States Code (the "**Bankruptcy Code**") and Rules, 2002, 6004, 6006, 9006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rules 2002-1, 6004-1, 6006-1, 9013-1, 9014-1 and 9014-2 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Bankruptcy Rules**") and Sale Guidelines Pursuant to General Order GM-383 for the United States Bankruptcy Court for the

Southern District of New York (a) authorizing and approving the sale of a portion of the Debtor's property consisting of the condominium on the second floor of 350 6th Avenue, New York, NY, plus a portion of the first floor condominium unit (together the "**Sale Property**")[1] pursuant to 11 U.S.C. §§ 105(a), 363(b), (f),(h) and (m), 503 and 507, of the Bankruptcy Code and Rules 2002, 6004, 9006 AND 9007 of the Bankruptcy Rules and 6004-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") and General Order M-383 for the Bankruptcy Court to Greenwich Development LLC, a New York Corporation (the "**Purchaser**");approving the contract of sale originally dated the 24th of May, 2023, as amended on August 29, 2023, by and between the Debtor and the Purchaser (the "**Contract**");authorizing the distribution of certain of the sale proceeds and approving certain of the fees and expenses of the sale; and for such other and further relief as the Court deems proper.

## INTRODUCTION

The Debtor filed for Chapter 11 bankruptcy in order to either liquidate its assets or refinance them. The secured lender DCC Vigilant, LLC ("**DCC**" or the "**Secured Lender**"), has filed a disclosure statement and plan of which the disclosure statement has been approved and the hearing to approve the plan is scheduled for October 19, 2023. The Secured Lender is proposing that a liquidating trustee be appointed to sell the Debtor's two condominium units; however due to the limitations of the sale since the second floor unit is subject to being used as community property Debtor believes that the proposed sale will most likely produce the most revenue for the Debtor's estate, rather

---

[1] The Purchaser is a school that needs a portion of the first floor according to state and or NY City regulation providing for entrance and exit to the building.

than a sale through a liquidating trustee. Debtor has been engaged in negotiations with the proposed purchaser Greenwich Development LLC ("**Purchaser**") for over one year; however, due to the complexities of the sale it was not until recently that the Contract was finalized, and this motion could be filed. While the Debtor recognizes that the Secured Lender's plan of liquidation may be approved for confirmation shortly, the Debtor believes that the Contract represents the best possible value for the Sale Property at $9,050,000. The Debtor engaged Urban Compass, Inc. (the "**Broker**") an experienced real estate brokerage firm, to market the property comprised of two condominium units and the order approving the retention was entered by the Bankruptcy Court on March 23, 2023 [ECF Dkt. No. 22].

The Sale Property was widely marketed by the Broker to all the Broker's contacts. The attached declaration provides important information as to the Broker's sale process. See "**Brokers Declaration**"-**Exhibit A**. An offer was received from the Purchaser of an amount up to $8,550,000 which has subsequently been increased to $9,050,000 (the "**Purchase Price**") which was the highest and best offer in the opinion of the Debtor and the Broker. A deposit of $452,500 will be deposited with Debtor's counsel upon a sale order being issued.

The condominium board, 88 Washington Place Condominium, an Unincorporated Association (the "**Condominium Board**") according to the proof of claim it filed is owed approximately $598,407.84, as of the day of filing, which covers both condominium units. The Condominium Board will be asked to provide a current breakdown that relates to the Sale Property so that payment can be made to it upon closing of the sale.

The Secured Lender's counsel has contended in conversations with Debtor's counsel that the Purchase Price is not sufficient due to the amount of space being sold as

to Floor 1; however, the Debtor contends that the sale of the Floor 1 portion is necessary to allow egress for the children that are to be cared for on the Floor 2 condominium and that the Floor 1 space being sold does not compromise the sale of the Floor 1 space as prime retail space.

In support of the relief sought, the Debtor respectfully represents:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of the Motion is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A).

2. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. This proceeding has been initiated pursuant to Bankruptcy Code §363(b), (f), (h) and (m).

## BACKGROUND

4. On January 20, 2023 (the "**Petition Date**"), the Debtor filed a chapter 11 petition pursuant to the Bankruptcy Code.

5. The Debtor has remained in possession of its assets and property pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6. No Trustee or Examiner has been appointed in this case.

7. There is no official or unofficial unsecured creditors committee.

8. The attached Contract represents the best legitimate purchase price offered. Accordingly, the proposed sale is the highest and best offer (and the only active bid).

9. The purchase agreement is attached hereto as "**Contract of Sale**"- **Exhibit B (the "Contract").** Closing is dependent on certain approvals that are currently being worked on by counsel to the purchaser.

10. The Purchaser has no known affiliation with the Debtor, or any other party involved in the proposed transaction.

11. The Debtor has continued to actively market the Sale Property, which is subject to higher and better offers, since marketing is not prohibited until the sale closes.

12. It is Debtor's opinion that the offer received from Purchaser is the best offer it could obtain given the status of the Sale Property as community facility space.

## RELIEF REQUESTED AND BASIS THEREFOR

**A. Justification for a Private Sale**

13. The Debtor is selling the Sale Property in a private sale as opposed to an auction which is usually the preferable method of sale in bankruptcy. While Section 363 sales are often conducted under competitive bidding procedures, there is no requirement in Section 363 of the Bankruptcy Code to do so. Bankruptcy Rule 6004(f) specifically contemplates private sales with the statement that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction". General Order M-383, which sets forth the Guidelines for the conduct of asset sales also states in footnote 2 that the "Guidelines do not express a preference for public over private sales as a means to maximize the sale price."

14. Private sales may be appropriate under Section 363 in circumstances similar to the instant case. *See In re Bakalis*, 220 B.R. 525, 531 (Bankr. E.D.N.Y. 1998) ("Unlike judicial sales under the Bankruptcy Act, the sale of estate property under the Bankruptcy Code is conducted by a trustee, who has ample discretion to conduct public

or private sales of estate property."); *Penn Mut. Life Ins. Co. v. Woodscape Ltd. P'ship* (*In re Woodscape Ltd. P'ship*), 134 B.R. 165, 174 (Bankr. D. Md. 1991) (noting that with respect to sales of estate property pursuant to section 363 of the Bankruptcy Code, "[t]here is no prohibition against a private sale . . . and there is no requirement that the sale be by public auction").

15. Accordingly, courts may approve private sales of assets where the standards for approval under Section 363 of the Bankruptcy Code are satisfied. *See, e.g., In re: Dewey & Leboeuf, Case No.:12-12321* (Bankr. S.D.N.Y. Nov. 1, 2012) (private sale authorized); and *In re Wellman, Inc.*, Case No. 08-10595 (SMB) (Bankr. S.D.N.Y. Oct. 6, 2009) (order approving the sales of one of the debtors' facilities by private sale, not subject to higher and better offers). In the instant case, the private sale contemplates paying the Secured Lender a significant amount of its secured loan, property taxes (if any), the Broker a commission of up to 5%, and other usual costs or closing adjustments, and transfer taxes, if applicable.

16. The Debtor contends that the Sale Property has been actively marketed for sale and the maximum value to the estate will be obtained. The Debtor does not believe an auction would generate higher or better offers or provide any other benefit to the Debtor's creditors. In fact, the Purchaser would not agree to an auction as a condition to its entering into the Contract. Moreover, additional and substantial costs associated with a competitive bidding process would not likely be sufficient to justify a sale auction.

17. It is submitted that the Debtor and the Purchaser are proceeding in good faith and at arms-length. The Purchaser is not an insider of the Debtor, and the transaction was negotiated in good faith and only entered into after arms' length negotiations between the parties.

18. The Debtor believes that by selling the Sale Property it will have obtained the highest possible value that would benefit the Secured Lender and the Debtor's bankruptcy estate. The Secured Lender or the Debtor would still be in a position to sell the downstairs space at a premium as it is very desirable for a restaurant or bank to acquire.

**B. Contract of Sale.**

19. The Contract, as amended, was signed as of August 29, 2023, and is annexed hereto as **Exhibit-B**.

20. Pursuant to the Contract, Purchaser shall acquire, and the Debtor shall convey to Purchaser all of the right, title and interest that Debtor possesses as of the Closing Date in and to the Sale Property, free and clear of all liens and liabilities pursuant to Sections 363(b) and (f) of the Bankruptcy Code and Rule 6004(f)(1) of the Bankruptcy Rules with such liens and liabilities to attach to the proceeds of the sale of Sale Property.

21. Except as expressly permitted or otherwise specifically provided for in the Contract, all persons and entities asserting liabilities of any kind against the Debtor or the Sale Property prior to the Closing Date, shall be forever barred from asserting such liabilities against the Purchaser, its successors or assigns, its property, or the Sale Property.

22. The Contract provides the following important points, among others:

   a. The Deposit will be paid upon issuance of the Sale Order.

   b. Good title to the Sale Property to be transferred at closing taking into consideration the 363(f) order of the Bankruptcy Court and its effect on liens, claims and encumbrances.

   c. The Sale Property is being transferred as is, where is.

  d. Purchaser shall have obtained a no action letter from the New York Attorney General's Office as a condition of closing.

  e. There is a 90-day period from the date of the Sale Order to satisfy the contingencies set forth in the Contract.

  f. Should the contingencies not be satisfied, Purchaser may terminate the Contract, Seller will return the deposit and the Contract will be terminated.

  g. If Debtor does not cooperate with the obtaining of approvals the sale may be cancelled by Purchaser.

**C. Debtor's Sale Pursuant to Bankruptcy Code §§ 363(b) and (f) Is Appropriate**

23. Section 363(b) of the Bankruptcy Code provides, in pertinent part, that the Debtor "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate". 11 U.S.C. §363(b)(1). As the sale of the Sale Property is out of the ordinary course of business, it requires Bankruptcy Court approval.

24. Section 363 of the Bankruptcy Code does not set forth an express standard for determining whether a sale of property under Section 363(b) of the Bankruptcy Code should be approved. Courts have interpreted this section using an "articulated business judgment" standard. *See*, *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989).

25. The Court of Appeals for the Second Circuit first enunciated this standard by stating: "The rule we adopt requires that a judge determining a §363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such application." *Lionel*, 722 F.2d at 1070-71.

26. Section 363(b) does not require that the Court substitute its business judgment for that of the Debtor. Rather, the Court should ascertain whether a debtor has

articulated a valid business justification for the proposed transaction. This is consistent with "the broad authority to operate the business of the Debtor . . .[which] indicates congressional intent to limit Court involvement in business decisions by a Trustee . . . [so that] a Court may not interfere with a reasonable business decision made in good faith by a Trustee". *In re Airlift Int'l, Inc*., 18 B.R. 787, 789 (Bankr. S.D. Fla. 1982).

27. Other courts have approved sales of a debtor's assets under §363(b)(1) of the Bankruptcy Code when (i) the sale is supported by the sound business judgment of the debtor's management; (ii) interested parties are provided with adequate and reasonable notice; (iii) the sale price is fair and reasonable; and (iv) the purchaser has acted in good faith. *See*, *e.g., In re Betty Owens Schools, Inc*., WL 188127 at *4 (S.D.N.Y. 1997).

28. The Debtor is not related to or affiliated with the Purchaser and the sale will generate sufficient funds to pay the Secured Lender in full.

### D. The Debtor Has Exercised Sound Business Judgment and the Sale Price is Fair and Reasonable

29. The Debtor believes that the sale to the Purchaser represents a prudent and proper exercise of its business judgment and is supported by articulated business reasons because, absent such a sale the Debtor would not be able to make Lease payments or payments to the Secured Lender allowing both of these entities to lift the automatic stay and proceed in state court for remedies which are not as likely to be as good as the proposed voluntary sale that is set forth herein.

### E. Sale Free and Clear of Encumbrances

30. In addition to seeking approval of the sale of the Sale Property outside of the ordinary course of business, the Debtor seeks approval to sell the Sale Property free and clear of any and all liens, claims or encumbrances in accordance with Section 363(f)

of the Bankruptcy Code, with such liens and liabilities to attach to the proceeds of the sale of the Sale Property.

31. A debtor-in-possession may sell property, pursuant to Sections 363(b) and 363(f), free and clear of any interest in such property of an entity other than the estate if one of the following conditions are satisfied:

(1) applicable non-bankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. 11 U.S.C. §363(f).

It is submitted that at least (1) and (5) above apply to the instant proposed sale. The Secured Lender would be compelled, in a legal or equitable proceeding, to accept a money satisfaction of its interest. Accordingly, the Debtor is entitled, pursuant to Section 363(f) to sell the Sale Property free and clear of all liens, claims and encumbrances.

## **CREDIT BIDDING BY SECURED LENDER**

The Secured Lender under section 363 k) of the Bankruptcy Code may credit bid for the Sale Property and obtain it free and clear. The Secured Lender must credit bid in writing by the hearing date of October 16, 2023, at 11:00 a.m. stating the amount of the credit bid and any conditions of the credit bid. The credit bid must be for an amount greater than offered by the Purchaser. If the Secured Lender does not credit bid within such time period, the sale will be final subject to the terms of the Contract as to closing.

# REQUEST FOR AUTHORIZATION TO PAY SALE PROCEEDS FOR REAL ESTATE COMMISSIONS, CONDOMINIUM ARREARS AS RELATES TO THE SALE PROPERTY AND REASONABLE TRANSFER AND CLOSING COSTS

32. The Debtor proposes that the Bankruptcy Court shall incorporate in the Sale Order authorizing the following payments:

   (1) Real Estate Broker for an amount up to 4% of the sale price.

   (2) Real Property Taxes that encumber the Sale Property, if any.

   (3) Condominium Board arrears owed as relates to the Sale Property.

   (4) Necessary costs of closing including transfer taxes if applicable.

   (5) The Secured Lender up to the amount of its Allowed Claim.

   (6) Other secured creditors to the extent of their allowed claims.

   (7) The balance, if any, to the Debtor's bankruptcy estate.

## NOTICE

33. Notice of hearing shall be provided by first class mail to (a) the Secured Lender; (b) all creditors including tax authorities; (c) all parties and taxing authorities that have filed notices of appearance; and (d) the Office of the United States Trustee. The Notice of Hearing, Motion and exhibits will be provided to the Secured Lender, and the U.S. Trustee, and any party requesting a copy from the undersigned counsel. The Debtor respectfully submits that such notice is good and sufficient under the circumstances, and satisfies the requirements of Bankruptcy Rules 2002, 6004, and 6006.

34. Debtor requests waiver of the 14 day stay of order authorizing use, sale or lease of property, in accordance with the Federal Rules of Bankruptcy Section 6004(h).

35. A proposed sale approval order is annexed hereto.

36.     Debtor will provide a report to the Court as to the sale and distribution of the sale proceeds within ten days of the consummation of the sale.

**WHEREFORE**, the Debtor seeks the entry of an order (a) authorizing and approving the sale of all or substantially all of the Debtor's assets pursuant to 11 U.S.C. §§ 105(a), 363(b), (f),(H) and (m), 503 and 507, of the Bankruptcy Code and Rules 2002, 6004, 9006 and 9007 of the Bankruptcy Rules and 6004-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") and Guidelines for the Conduct of Sales of the Bankruptcy Court to Greenwich Development LLC (the "Purchaser"); (b) approving the contract of sale dated the 29th of August 2023, by and between the Debtor and the Purchaser (the "Contract"), (c) authorizing and approving the distribution of certain of the sale proceeds; (d) approving certain of the fees and expenses of the sale; and (e) for such other and further relief as the Court deems proper.

Dated: Harrison, NY
September 18, 2023,

BRONSON LAW OFFICES, P.C.

By: */s/ H. Bruce Bronson*
H. Bruce Bronson, Esq.
480 Mamaroneck Avenue
Harrison, NY 10528
914-269-2530 (tel.)
888-908-6906 (fax)
hbbronson@bronsonlaw.net