**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Nuovo Ciao-Di LLC,<br><br>                      Debtor. | Chapter 11<br><br>Case No. 23-10068 (JPM)<br><br><u>NOT FOR PUBLICATION</u> |

<u>**MEMORANDUM OPINION AND ORDER DENYING MOTION**</u>
<u>**TO EXTEND THE AUTOMATIC STAY AND PROVIDE INJUNCTIVE RELIEF**</u>

**APPEARANCES:**

**BRONSON LAW OFFICES, P.C.**
*Counsel for Nuovo Ciao-Di, LLC*
480 Mamaroneck Avenue
Harrison, NY 10528
By:   H. Bruce Bronson, Esq.

**FRIEDBERG, P.C.**
*Counsel for DCC Vigilant, LLC*
10045 Red Run Boulevard, Suite 160
Baltimore, MD 21117
By:   Jeremy S. Friedberg, Esq.

**JOHN P. MASTANDO III**
**UNITED STATES BANKRUPTCY JUDGE**

      Before the Court is the motion (the "Motion") [Docket No. 25] of Debtor Nuovo Ciao-Di, LLC (the "Debtor")—which owns two commercial condominium units in Manhattan's Greenwich Village neighborhood (the "Properties")—to extend the automatic stay and provide injunctive relief to six non-debtor guarantors—Metropolitan Realty and Development Group, LLC, William Rainero, Michael Rainero, Joseph Rainero, Yvonne Rainero, and Georgette Doyle (collectively, the "Guarantors"). Along with the Motion, the Debtor filed the Declaration of Michael Rainero ("Rainero Declaration") [Docket No. 25 Ex. C]. Creditor DCC Vigilant LLC ("DCC") filed an objection to the Motion (the "Objection") [Docket No. 27] and attached a record of the fully

1

executed guaranty (the "Guaranty") and an order from the state court appointing a receiver to collect Debtor's rents and profits. The Debtor filed a reply to DCC (the "Reply") and attached the Declaration of Yenisey Rodriguez-McCloskey, Esq. (the "Rodriguez-McCloskey Declaration") [Docket No. 28].

The Court held a hearing on May 2, 2023. On May 9, 2023, DCC filed a sur-reply (the "Sur-reply") [Docket No. 33], and both Debtor ("Debtor Letter Brief") [Docket No. 34] and DCC ("DCC Letter Brief") [Docket No. 32] submitted letter briefs addressing additional issues. DCC also filed a disclosure statement [Docket No. 36], an amended disclosure statement (the "Disclosure Statement") [Docket No. 48] and plan of liquidation [Docket No. 48 App. A] on August 4, 2023, after the expiration of Debtor's exclusivity period. DCC filed an amended plan of liquidation on September 15, 2023 (the "Liquidating Plan") [Docket No. 53]. Debtor filed a motion to sell one of the two Properties on September 19, 2023 (the "Motion to Sell") [Docket No. 56].

## BACKGROUND

The Debtor filed a petition for Chapter 11 bankruptcy on January 20, 2023 (the "Petition") [Docket No. 1] and filed a declaration pursuant to Local Bankruptcy Rule 1007-2 on February 2, 2023 (the "Debtor Declaration") [Docket No. 7]. Debtor was formed in 2017 to purchase and own the Properties. [Debtor Declaration ¶ 3.] In 2018, Debtor purchased the Properties and entered into a mortgage with Argentic Real Estate Investment LLC ("Argentic") for the principal amount of $15,850,000. [*Id.* ¶ 4–5.]

The Guarantors provide a variety of services for Debtor: Metropolitan Realty and Development Group, LLC is the corporate manager of Debtor; Michael Rainero manages finances and corporate matters; William Rainero maintains and secures the Properties; Joseph Rainero deals with real estate taxes, the condominium association and leasing and sale efforts; Denise Rainero maintains the Properties' insurances, communicates with the condominium association, and

2

supports other Guarantors; Yvonne Rainero works with tenants and ensures compliance with regulations; and Georgette Doyle acquires and provides support to tenants. [Motion Ex. C ¶¶ 9–14.] Both units of the Properties are currently vacant, and Debtor contemplates selling at least one of the units. [Debtor Declaration ¶¶ 12–15; Rodriguez-McCloskey Declaration Ex. B ¶ 7.]

Argentic commenced the action styled *Argentic Real Estate Investment LLC v. Nuovo Ciao-Di, LLC, et al.*, No. 850102 (FAK) (the "Lawsuit")[1] seeking to foreclose on the Properties in the New York County Supreme Court.[2] [Motion Ex. A.] On January 20, 2023, the Debtor filed the Petition. [Debtor Declaration ¶ 16.] On March 10, 2023, the State Court stayed the action, and DCC filed a motion in the State Court to lift the stay with respect to the Guarantors. [Motion 3.] Debtor also filed an answer in the Lawsuit that includes counterclaims against Argentic. [Debtor Declaration ¶ 11.] On April 10, 2023, the Debtor filed the Motion seeking an extension of the automatic stay to the Guarantors and injunctive relief against DCC Vigilant, LLC ("DCC"), staying the Lawsuit.

DCC filed an amended Liquidating Plan on September 15, 2023. The Liquidating Plan contemplates transferring all of the Debtors' assets to a liquidating trust, administered by a liquidation trustee (the "Liquidation Trustee"). [Liquidating Plan 20–22.] Under the Liquidating Plan, the Liquidation Trustee is to liquidate the Debtor's assets and distribute the proceeds in accordance with the Liquidating Plan. [Liquidating Plan 21.] Debtor has also filed the Motion to Sell, which seeks an order authorizing and approving the private sale of one of the two Properties, plus a portion of the second Property, for the sum of $9,050,000. [Motion to Sell 3.] Debtor contends that the private sale will generate the highest possible return, and the second unit of the

---

[1] The state court lawsuit is styled *DCC Vigilant, LLC v. Nuovo Ciao-Di, LLC, et al.*, New York County Supreme Court, Index No. 850102/2020.
[2] On June 10, 2021, a stipulation changed the caption of the Lawsuit from Argentic to DCC Vigilant, LLC ("DCC") as the plaintiff after a transfer of the mortgage between the two parties. [Motion 2.]

3

Properties would still be available to sell. [Motion to Sell 3.] Debtor annexed the proposed contract of sale to the Motion to Sell. [Motion to Sell Ex. B.]

The Motion seeks two forms of relief: an extension of the automatic stay to non-debtor Guarantors and an injunction enjoining DCC's state court lawsuit against the Guarantors. [Motion 1.] The Guarantors are five individuals who work individually and as members of the sixth guarantor, Metropolitan Realty and Development Group, LLC. [Rainero Declaration Ex. C ¶ 15.] The responsibilities of the individuals include maintaining the finances, security, and tenant relationships of the Debtor's condominiums. [Rainero Declaration Ex. C ¶¶ 9–14.] As part of the reorganization process, the Debtor retained a real estate broker to sell one of the condominium units. [Motion 4–5.] Additionally, the Debtor claims that it intends to sue a prior tenant for as much as $1,000,000 for breach of the lease. [Motion 5.]

Regarding the extension of the automatic stay, the Debtor first argues that the Debtor, not the Guarantors, is the real party in the Lawsuit. [Motion 6.] The Debtor contends that the state court must hold the Debtor in default in order for DCC to collect from the Guarantors, since the Lawsuit is based on the same underlying contracts as the Guaranty. [*Id*.] Therefore, the Debtor asserts that the liability of the Guarantors and the Debtor is uniform and the stay must apply to avoid judgement against the estate. [*Id*. at 6–7.] Debtor also contends that this uniformity of liability results in Debtor being the real party defendant to the Lawsuit. [*Id.*]

Next, the Debtor argues that the continuation of the Lawsuit will interfere with the reorganization of the Debtor. [*Id*. at 7–8.] The Debtor states that DCC's efforts to foreclose on the units would impede a potential source of income and jeopardize the funding required for a successful reorganization. [*Id*. at 7.] Furthermore, the Debtor contends that the Lawsuit would distract the individual guarantors from managing the Debtor's operations and maximizing revenue for the reorganization. [*Id*. at 8.] Debtor also suggests that Debtor's plan of reorganization will

4

require a direct financial contribution by the Guarantors, and allowing the Lawsuit to proceed would preclude financial contribution. [*Id.* at 8.]

Regarding the second form of relief—the injunction—the Debtor argues that the present case meets four required elements. [*Id.* at 9.] First, the Debtor claims that it will achieve a successful reorganization. [*Id.*] Second, the Debtor asserts that it "will suffer irreparable harm if the injunction is not granted because any judgment against the Guarantors would require finding a default by the Debtor." [*Id.*] Third, the Debtor states that the balance of harms weighs in favor of the Debtor because the reorganization supports DCC's secured claim, while a finding of default against the Debtor would reduce the Debtor's income. [*Id.* at 10.] Fourth, Debtor claims that litigation harms the public because it harms the reorganization. [*Id.*]

DCC objected to the Motion, asserting that the automatic stay should not be extended because the Debtor is not the real party in the Lawsuit and the action will not harm the reorganization. [Objection ¶¶ 1, 11–12.] DCC argues the Guarantors' liability is separate from the Debtor and, thus, not uniform relative to the Debtor, because the Guaranty differs from the note, loan agreement and mortgage in the Lawsuit. [*Id.* at ¶ 7.] DCC notes that the Guaranty caps the Guarantors' liability at $5,000,000 while "[t]he Debtors' liability is not so limited," thus distinguishing the Debtors' liability from that of the Guarantors. [*Id.* at ¶ 10.] Moreover, DCC believes "the Debtor has already been found to be in default of the loan documents." [*Id.* at ¶ 8.] Separately, DCC also contends that the Court should not extend the stay because the Lawsuit will not harm the Debtor. [*Id.* at ¶¶ 11–12.] According to DCC, any harm the Lawsuit would cause is speculative and an award against the Guarantors would only reduce their secured claim in the reorganization. [*Id.*] Finally, DCC argues that no harm would occur because the Debtor has no tenants; consequently, the Lawsuit has nothing to damage. [*Id.* at ¶ 13.]

5

As for the injunction, DCC believes the Court must deny this request for relief based on the four criteria discussed above. [*Id.* at ¶¶ 14–17.] First, DCC asserts that a reorganization is unlikely because the Debtor has neither proposed a plan nor generated income for two years. [*Id.* at ¶ 15.] Addressing the second and third elements, DCC states that there is no harm or hardship because the Debtor has defaulted, and forcing the Guarantors to pay $5,000,000 as a result of the breach of the Guaranty to DCC would transform DCC's secured claim to an unsecured claim, which is a benefit for the estate. [*Id.* at ¶ 16.] Fourth, DCC claims that the public interest is not served by an injunction of the Lawsuit because "[t]he Guarantors have not filed for bankruptcy, and do not deserve the protections of the Bankruptcy Code." [*Id.* at ¶ 17.]

In response to DCC's objection, the Debtor reaffirmed its position in the Reply. [Reply ¶¶ 6–7.] The Debtor argues that "[t]he [o]bjection took the language of the State Court out of context in its claim that the Court has already determined the issue of default against the Debtor." [*Id.* at ¶ 3.] The Debtor further argues that "a guaranty cannot exist without an underlying contract" and "[t]herefore, the liability of the Debtor and guarantors cannot be separated under New York law." [*Id.* at ¶ 5.]

In its Sur-reply, DCC first argues that the Guarantors are in default and that a summary judgement ruling in the Lawsuit would not impact the bankruptcy case. [Sur-reply ¶ 6.] Second, DCC contends the Guaranty is not extinguished and its effect is an issue for the State Court. [*Id.* at ¶ 8.] Third, DCC states that the Guaranty is a separate contract because it creates independent liability and provides an "alternate avenue of recovery." [*Id.* at ¶¶ 12–13.] Fourth, DCC further argues that injunctive relief is inappropriate because there is no evidence that it will not "abide by all rulings of this Court and of the State Court." [*Id.* at ¶ 14.]

Finally, DCC and the Debtor disagree on the application of the reasoning in *Aetna Cas. & Sur. Co. v. Namrod Dev. Corp.*, 140 B.R. 56 (S.D.N.Y. 1992). Both parties agree that in *Aetna*,

6

the court refused to extend the automatic stay because the guarantors had independent liability unrelated to their roles with the debtor in the case. *Aetna Cas. & Sur. Co.*, 140 B.R. at 60. However, the Debtor asserts that the Guarantors' liability here is not independent because "[a]ny liability under the guaranty requires establishing that the Debtor was in default of the loan documents." [Debtor Brief Letter 2.] Conversely, DCC argues that "the Guarantors' obligations to DCC under the Guaranty are separate and apart from the Debtor's obligations." [DCC Letter Brief 2.]

## DISCUSSION

### A. EXTENSION OF THE AUTOMATIC STAY TO NON-DEBTOR PARTIES

The filing of a petition triggers an automatic stay, pursuant to Section 362 of Title 11 of the United States Code (the "Bankruptcy Code"), that pauses all lawsuits against a debtor.[4] *See Hal Luftig Co. v FCP Ent. Partners, LLC (In re Hal Luftig Co.)*, 2023 Bankr. LEXIS 19, at *10–11 (Bankr. S.D.N.Y. Jan. 5, 2023). In general, non-debtors do not receive protection under an automatic stay. *See id.* at *11. The automatic stay remains until the case is closed, dismissed, or a discharge is decided. *See* 11 U.S.C. § 362(c). The extension of the stay must align with its purpose—facilitating the debtor's reorganization. *See Gray v. Hirsch*, 230 B.R. 239, 243 (S.D.N.Y. 1999).

To extend the stay to non-debtors, the movant must demonstrate that the litigation will have an adverse impact on reorganization efforts. *See id.* at 242. A showing of non-debtor control of the debtor's operations is insufficient to extend the automatic stay to a non-debtor. *See id*. This Court, based on Second Circuit precedent, has extended the automatic stay to a non-debtor where a claim against a non-debtor had "an immediate adverse economic consequence for the debtor's estate, including actions where there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant." *In re Hal Luftig Co.*, 2023 Bankr. LEXIS

---

[4] The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b).

7

19, at *11 (quoting *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287–88 (2d Cir. 2003)) (internal quotations omitted).

In *Hal Luftig Co.*, this Court granted an extension of the automatic stay that applied to the debtor, Hal Luftig Co., a Broadway production company, to the non-debtor individual, Mr. Luftig. 2023 Bankr. LEXIS 19, at *14. Mr. Luftig was the debtor's sole shareholder and CEO, and was one of only three employees of the debtor. *See id.* at *12–13. Without Mr. Luftig's efforts to develop and promote shows, the debtor would not have been able to generate revenue to repay creditors. *See id.* at *13. A judgment creditor had an arbitration award against both the debtor and Mr. Luftig based on a claim for breach of contract. *See id.* at *10. The breached contract was between just the debtor and the judgment creditor—Mr. Luftig was not a party to the contract. *See id.* Mr. Luftig's liability had resulted from his status as a director of the debtor, not from his personal conduct. *See id.* (noting that "Mr. Luftig did not individually perform any action that would serve as the basis of liability, and [] in the underlying arbitration, the breach of fiduciary duty claim against Mr. Luftig was dismissed."). Thus, in effect, the debtor was the "real party defendant" in an action to collect a judgment from the debtor and Mr. Luftig, jointly and severally. *See id.* at *4, *12. Additionally, the debtor's bylaws provided for the indemnification of Mr. Luftig. *See id.* Combined, Mr. Luftig's centrality to the debtor's business and the indemnification clause meant litigation against Mr. Luftig would have an "immediate adverse economic impact" on the reorganization. *See id.* at *13–14.

In contrast, in *Aetna*, the district court held that the automatic stay would not extend to non-debtors that guaranteed certain payment and performance bonds executed by the debtor, a construction company. *See Aetna Cas. & Sur. Co. v. Namrod Dev. Corp.*, 140 B.R. 56, 58 (S.D.N.Y. 1992). The guarantors in *Aetna* did not receive stay protection because the action

8

stemmed from their guaranty and not from their work as officers of the debtor. *See id.* The court in *Aetna* reasoned that extending the stay would thwart the purpose of the guaranty. *See id.*

Here, the automatic stay should not extend to the Guarantors because the Lawsuit will have minimal, if any, impact on the Debtor's reorganization efforts.[5] To aid the reorganization, the five individual guarantors must supervise a broker's sales efforts and manage the Properties' finances, security, and other operations. [Motion 4–5.] As the Properties are currently vacant and Debtor seeks to sell at least one unit, the Properties do not require significant efforts as to maintenance and tenant relationships. [Debtor Declaration ¶¶ 12–15; Rodriguez-McCloskey Declaration Ex. B ¶ 7.] The Lawsuit would not disrupt communications with the broker, nor would it distract the five guarantors to such an extent that they could not maintain the Properties. [Debtor Declaration ¶ 13.] Furthermore, many of the Guarantors' responsibilities are duplicative, reducing the time and effort required of each individual Guarantor. [Motion Ex. C ¶¶ 9–14.] Unlike in *Hal Luftig Co.*, here the reorganization work is spread across five people and no individual employee's role is synonymous with the Debtor. Furthermore, the corporate manager, Metropolitan Realty and Development Group, LLC, does not have any individual responsibilities that would be impaired by the Lawsuit. [*Id.* at ¶ 15.] Lastly, the Guarantors are not indemnified by the Debtor. For these reasons, the reorganization efforts can still proceed in the instant case despite the Lawsuit.

Furthermore, the Debtor is not the "real party defendant" because the Guaranty creates separate liability. Although the Guaranty relates to the lending documents, it has different provisions and purposes. As DCC notes, the Guaranty caps the Guarantor's liability at $5,000,000 while not similarly limiting Debtors' liability. [Objection ¶ 10.] The Lawsuit, like the cause of action in *Aetna*, arises from the Guarantors agreement to compensate creditors in the event of a

---

[5] As noted above, DCC has filed a Liquidating Plan that seeks to appoint a Liquidating Trustee, who will liquidate Debtor's assets and distribute the proceeds. [Liquidating Plan 21.] Debtor has filed a Motion to Sell part of the Properties. [Motion to Sell.]

9

default. *See Aetna Cas. & Sur. Co.*, 140 B.R. at 60. Extending the stay to the non-debtors would eliminate the entire function of the Guaranty.

The Court thus denies Debtor's motion to extend the automatic stay to the Guarantors.

## B. INJUNCTIVE RELIEF

According to Section 105(a) of the Bankruptcy Code, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Bankruptcy courts can "enjoin acts against third parties when they impair a debtor's ability to reorganize in a chapter 11 case." *In re Lyondell Chem. Co.*, 402 B.R. 571, 587 (Bankr. S.D.N.Y. 2009). To receive a preliminary injunction, a party must establish four elements:

> (1) "a likelihood of success on the merits or . . . sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor"; (2) a likelihood of "irreparable injury in the absence of an injunction"; (3) that "the balance of hardships tips in the plaintiff's favor"; and (4) that the "public interest would not be disserved" by the issuance of an injunction.

*Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015) (citing *Salinger v. Colting*, 607 F.3d 68, 79–80 (2d Cir. 2010)); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In the Second Circuit, bankruptcy courts have interpreted the preliminary injunction requirements liberally to avoid frustrating the reorganization process. *See In re Adelphia Comm. Corp.*, 298 B.R. 49, 54 (S.D.N.Y. 2003) (quoting *MacArthur Co. v. Johns-Manville Corp.*, 837 F.3d 89, 93 (2d Cir. 1988)).

In considering a preliminary injunction, bankruptcy courts will look to the likelihood of a successful reorganization when determining if a party has established the "likelihood of success on the merits" element. *See Lyondell*, 402 B.R. at 589; *see also In re Calpine Corp.*, 365 B.R. 401, 410 (S.D.N.Y. 2007); *In re Phila. Newspapers, LLC*, 407 B.R. 606, 617 (E.D. Pa. 2009). At present, a successful reorganization will not likely be led by the Debtor. The 120-day exclusivity

period expired without the Debtor filing a plan,[6] and DCC has filed a liquidating plan and disclosure statement. [Plan; Disclosure Statement.] Additionally, the most recent operating report, filed for the January 2023 period [Docket No. 47], shows the Debtor did not generate any sales or profits and only holds a $53 cash balance. [January 2023 Operating Report 2.]

The Court also finds that the Debtor will not suffer irreparable harm if the injunction is not granted. Unlike *Hal Luftig Co.*, here, management of the Debtor's operations is spread across five individuals. *See* 2023 Bankr. LEXIS at *12–13; [Motion Ex. C ¶¶ 9–14.] The Properties are currently vacant and do not require significant upkeep or tenant relations. [Debtor Declaration ¶¶ 12–15; Rodriguez-McCloskey Declaration Ex. B ¶ 7.] The Lawsuit will not destroy any sales opportunity because the Debtor's team can together manage any broker's sales process without an injunction, and DCC's Liquidating Plan involves a Liquidation Trustee that will administer the liquidation of the Debtor's estate. [Liquidating Plan 21.]

For similar reasons, the Court also finds that the balance of harms does not weigh in favor of granting an injunction. Moving forward, the Debtor will require limited maintenance and no management of tenant relationships because either a liquidation or a sale will occur. The Guarantors are not aiming to preserve the Debtor as a going concern. Accordingly, although the Lawsuit may create some administrative inconvenience, it will not create significant harm because the Debtor's future operations are reduced. On the other hand, granting the injunction would create hardship for DCC because it would limit their recovery opportunities. On balance, the hardships do not tip in favor of the Debtor.

Finally, denying the injunction does not harm the public interest. To the contrary, eliminating obstructions to plan formation and promoting a successful reorganization benefits the public interest. *See, e.g.*, *In re Johns-Manville Corp.*, 26 B.R. 420, 428 (Bankr. S.D.N.Y. 1983);

---

[6] Pursuant to 11 U.S.C. § 1121(b), "only the debtor may file a plan until after 120 days after the date of the order for relief." 11 U.S.C. § 1121(b).

*In re Phila. Newspapers, LLC*, 407 B.R. at 617. However, as discussed, the Lawsuit will not harm the reorganization process. *See supra* Section A. Accordingly, the public interest will not suffer, and the fourth element is not established.

The Court thus denies Debtor's motion to enjoin DCC from proceeding against the Guarantors in State Court.

## CONCLUSION

Based on the foregoing, Debtor's Motion is denied.

**IT IS SO ORDERED.**

Dated: New York, New York  /s/John P. Mastando III
      September 22, 2023  Honorable John P. Mastando III
      United States Bankruptcy Judge