UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -     x

In re:  Chapter 11

Nuovo Ciao-Di LLC Case No. 23-10068 (JPM)

Debtor.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -     x

## FIRST AMENDED PLAN OF LIQUIDATION OF NUOVO CIAO-DI LLC
## <u>PROPOSED BY DCC VIGILANT, LLC</u>

# INTRODUCTION

DCC Vigilant, LLC proposes the following chapter 11 plan of liquidation. DCC Vigilant, LLC is the Proponent of the Plan (the "Plan Proponent") within the meaning of Bankruptcy Code section 1129. This Plan contemplates the distribution of the proceeds of the liquidation of the Debtor's Assets and the resolution of the outstanding Claims against and Interests in the Debtor. Reference is made to the Disclosure Statement, distributed contemporaneously herewith, for a discussion of (i) the Debtor's history, business, and operations, (ii) a summary and analysis of this Plan, and (iii) certain related matters, including risk factors relating to the consummation of this Plan. All Holders of Claims who are eligible to vote on the Plan are encouraged to read the Plan and the accompanying Disclosure Statement (including all exhibits thereto) in their entirety before voting to accept or reject the Plan. Subject to certain restrictions and requirements set forth in Bankruptcy Code section 1127 and Bankruptcy Rule 3019, the Plan Proponent reserves the right to alter, amend, modify, revoke, or withdraw this Plan prior to its substantial consummation.

The Plan is a liquidating plan. The Plan provides for the distribution of certain proceeds from such sales and the creation of a Liquidating Trust that will administer and liquidate all remaining property of the Debtor, including Causes of Action, not sold, transferred, or otherwise waived or released before the Effective Date of the Plan. The Plan also provides for Distributions to certain Holders of Administrative Claims and Priority Claims and to other Claimholders and the funding of the Liquidating Trust. The Plan further provides for the termination of all Interests in the Debtor, the dissolution and wind-up of the affairs of the Debtor, and the transfer of any remaining Estate Assets to the Liquidating Trust.

No solicitation materials, other than the Disclosure Statement and related materials transmitted therewith have been approved for use in soliciting acceptances and rejections of the Plan. Nothing in the Plan should be construed as constituting a solicitation of acceptances of the Plan unless and until the Disclosure Statement has been approved and distributed to all Holders of Claims and Interests to the extent required by Bankruptcy Code section 1125.

**ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ CAREFULLY THE DISCLOSURE STATEMENT (INCLUDING ALL EXHIBITS THERETO) AND THE PLAN, EACH IN ITS ENTIRETY, BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

## ARTICLE I
## DEFINED TERMS AND RULES OF INTERPRETATION

### A. Rules of Construction

For purposes of this Plan, except as expressly provided herein or unless the context otherwise requires, all capitalized terms not otherwise defined, including those capitalized terms used in the preceding Introduction, shall have the meanings ascribed to them in Article I of this Plan or any Exhibit hereto. Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable. To the extent that there is an inconsistency between a definition in this Plan and a definition set forth in the Bankruptcy Code, the definition set forth herein shall control. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

### B. Definitions

**1.1** ***Administrative Claim*** means a Claim for costs and expenses of administration of the Chapter 11 Case under Bankruptcy Code sections 503(b), 507(b), or 1114(e)(2), and entitled to priority under Bankruptcy Code section 507(a)(2), including: (a) any actual and necessary costs and expenses, incurred after the Petition Date, of preserving the Estate and operating the business of the Debtor (such as wages, salaries and commissions for services and payments for inventory, leased equipment and premises) and Claims of governmental units for taxes (including tax audit Claims related to tax years commencing after the Petition Date, but excluding Claims relating to tax periods, or portions thereof, ending on or before the Petition Date); and (b) all other claims entitled to administrative claim status pursuant to a Final Order of the Bankruptcy Court, including Professional Fee Claims.

**1.2** ***Administrative Claims Objection Deadline*** means the last day for filing an objection to any request for the payment of an Administrative Claim, which shall be the later of
(a) one hundred twenty (120) days after the Effective Date or (b) such other date specified in this Plan or ordered by the Bankruptcy Court. The filing of a motion to extend the Administrative Claims Objection Deadline shall automatically extend the Administrative Claims Objection Deadline until a Final Order is entered on such motion; provided that any hearing on said motion is held on or before the date that is no more than thirty (30) days after the Administrative Claims Objection Deadline. In the event that such motion to extend the Administrative Claims Objection Deadline is denied by the Bankruptcy Court, the Administrative Claims Objection Deadline shall be the later of the current Administrative Claims Objection Deadline (as previously extended, if applicable) or thirty (30) days after the Bankruptcy Court's entry of an order denying the motion to extend the Administrative Claims Objection Deadline.

**1.3** ***Affected Claimants*** means entities whose Claims have been amended by the Debtor in the Schedules.

**1.4** ***Allowed Claim*** means a Claim or any portion thereof (a) that has been allowed by a Final Order of the Bankruptcy Court (or such court as the Liquidating Trustee and the Holders of any such Claim agree may adjudicate such Claim and any objections thereto), (b) that either (x) has been Scheduled as a liquidated, non- contingent, and undisputed Claim in an amount greater than zero on the Schedules, or (y) is the subject of a timely filed Proof of Claim as to which either (i) no objection to its allowance has been filed (either by way of objection or amendment to the Schedules) within the periods of limitation fixed by the Bankruptcy Code or by any order of the Bankruptcy Court or (ii) any objection to its allowance has been settled, waived through payment, or withdrawn, or has been denied by a Final Order, or (c) that is expressly allowed in a liquidated amount in the Plan; provided, however, that with respect to an Administrative Claim, "Allowed Claim" means, unless otherwise fixed in the Plan, an Administrative Claim as to which a timely written request for payment has been made in accordance with applicable bar dates for such requests set by the Bankruptcy Court (if such written request is required) in each case as to which the Debtor, or any other party in interest (x) has not interposed a timely objection or (y) has interposed a timely objection and such objection has been settled, waived through payment, or withdrawn, or has been denied by a Final Order; provided, further, however, that for purposes of determining the status (i.e., Allowed or Disputed) of a particular Claim prior to the expiration of the period fixed for filing objections to the allowance or disallowance of Claims, any such Claim which has not been previously allowed or disallowed by a Final Order of the Bankruptcy Court or the Plan shall be deemed a Disputed Claim unless such Claim is specifically identified by the Plan Proponent and/or the Liquidating Trustee as being an Allowed Claim.

**1.5** ***Allowed Claim*** means an Allowed Claim of the particular type or Class described.

**1.6** ***Available Cash*** means all Cash held by the Liquidating Trustee as of the date ten (10) Business Days prior to a Distribution Date.

**1.7** ***Avoidance Actions*** means Causes of Action arising under Bankruptcy Code sections 510, 541, 542, 544, 545, 547 through 551 and/or 553, or under related state or federal statutes and common law, including, without limitation, fraudulent transfer laws, whether or not litigation is commenced to prosecute such Causes of Action.

**1.8** ***Ballot*** means each of the ballot forms distributed to each Holder of a Claim or Interest entitled to vote to accept or reject this Plan.

**1.9** ***Bankruptcy Code*** means title 11 of the United States Code, as now in effect or hereafter amended and as applicable to the Chapter 11 Case.

**1.10** ***Bankruptcy Court*** means the United States Bankruptcy Court for the Southern District of New York, or any other court with jurisdiction over the Chapter 11 Case.

**1.11** ***Bankruptcy Rules*** means, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended and as applicable to the Chapter 11 Case on proceedings therein, as the case may be, and the Local Rules, as now in effect or hereafter amended.

**1.12** ***Business Assets*** means all tangible and intangible assets of every kind and

nature of the Debtor and its Estate, and all proceeds thereof, existing as of the Effective Date that are used in or related to the operation of Debtor's business.

**1.13    Business Day** means any day, other than a Saturday, Sunday, or Legal Holiday (as defined in Bankruptcy Rule 9006(a)).

**1.14    Case Interest Rate** means the federal judgment rate provided in 28 U.S.C. § 1961 in effect on the Petition Date, which was 4.68%.

**1.15    Cash** means legal tender of the United States of America and equivalents thereof, which may be conveyed by check or wire transfer.

**1.16    Causes of Action** means any and all claims, actions, proceedings, causes of action, Avoidance Actions, suits, accounts, controversies, agreements, promises, rights of action, rights to legal remedies, rights to equitable remedies, rights to payment and Claims (as defined in Bankruptcy Code section 101(5)), whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise, that Debtor and/or Estate may hold against any Person but excluding those released, exculpated or waived pursuant to this Plan.

**1.17    Chapter 11 Case** means the case under chapter 11 of the Bankruptcy Code commenced by the Debtor in the Bankruptcy Court on January 20, 20123, Case Number 23- 10068 (JPM).

**1.18    City of New York Secured Claim** means Claims secured by the Premises, to the extent of the Claimholder's interest in the Estate's interest in such property.

**1.19    Claim** has the meaning set forth in Bankruptcy Code section 101(5).

**1.20    Claimholder** means the Holder of a Claim.

**1.21    Claims Objection Deadline** means the last day for filing objections to Claims, other than Administrative Claims and Professional Fee Claims, which day shall be the later of (a) sixty (60) days after the Effective Date or (b) such other date as the Bankruptcy Court may order. The filing of a motion to extend the Claims Objection Deadline shall automatically extend the Claims Objection Deadline until a Final Order is entered on such motion; provided that any hearing on said motion is held on or before the date that is no more than thirty (30) days after the Claims Objection Deadline. In the event that such motion to extend the Claims Objection Deadline is denied, the Claims Objection Deadline shall be the later of the current Claims Objection Deadline (as previously extended, if applicable) or thirty (30) days after the Bankruptcy Court's entry of an order denying the motion to extend the Claims Objection Deadline.

**1.22    Class** means a category of Holders of Claims or Interests, as described in Article II hereof.

**1.23    Collateral** means any property or interest in property of Debtor's Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law.

*1.24*     **Confirmation** means entry by the Bankruptcy Court of the Confirmation Order.

*1.25*     **Confirmation Date** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the Bankruptcy Court docket in the Chapter 11 Case.

*1.26*     **Confirmation Hearing** means the hearing held by the Bankruptcy Court to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

*1.27*     **Confirmation Order** means the order entered by the Bankruptcy Court confirming the Plan under Bankruptcy Code section 1129.

*1.28*     **Consummation or Consummate** means the occurrence of or to achieve the Effective Date.

*1.29*     **Contingent** means, with reference to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which, or the obligation to make payment on which, is dependent upon a future event that may or may not occur.

*1.30*     **Creditor** means any Person who holds a Claim against the Debtor.

*1.31*     **DCC** means DCC Vigilant, LLC.

*1.32*     **DCC Secured Claim** means Claims secured by the Premises, to the extent of the Claimholder's interest in the Estate's interest in such property.

*1.33*     **Debtor** means Nuovo Ciao-Di LLC.

*1.34*     **Deficiency Unsecured Claim of DCC** means the Class 6 Claim of DCC in an amount equal to any deficiency remaining, after treatment of the DCC Secured Claim.

*1.35*     **Deficiency Unsecured Claim of 88 Washington Place Condominium** means the Class 6 Claim of 88 Washington Place Condominium in an amount equal to any deficiency remaining, after treatment of the 88 Washington Place Condominium Secured Claim.

*1.36*     **Disallowed** means, with respect to a Claim, or any portion thereof, that such Claim (a) has been disallowed by a Final Order, (b) is Scheduled at zero or as contingent, disputed or unliquidated and as to which no Proof of Claim has been filed by the applicable Bar Date or deemed timely filed pursuant to either the Bankruptcy Code or any Final Order or under applicable law, or (c) is not Scheduled, and as to which (i) no Proof of Claim has been filed by the applicable Bar Date or deemed timely filed pursuant to either the Bankruptcy Code or any Final Order or under applicable law, or (ii) no request for payment of an Administrative Claim has been filed by the Initial or Final Administrative Claims Bar Date, as appropriate, or deemed timely filed pursuant to either the Bankruptcy Code or any Final Order or under applicable law.

*1.37*     **Disclosure Statement** means the disclosure statement (including all exhibits and schedules thereto) dated May 23, 2023, as amended, relating to this Plan, distributed contemporaneously herewith in accordance with Bankruptcy Code sections 1125 and 1126(b) and Bankruptcy Rule 3018.

*1.38*     **Disputed Claim** means a Claim, or any portion thereof, that has not been

Allowed pursuant to the Plan or a Final Order, and:

    (a)    if no Claim has been filed, or deemed to have been filed, by the applicable Bar Date, which has been or hereafter is listed on the Schedules as unliquidated, contingent or disputed, and which has not been resolved by written agreement of the parties or an order of the Bankruptcy Court;

    (b)    if a Claim has been filed, or deemed to have been filed, by the applicable Bar Date (i) a Claim for which a corresponding Claim has been listed on the Schedules as unliquidated, contingent or disputed; (ii) a Claim for which a corresponding Claim has been listed on the Schedules as other than unliquidated, contingent or disputed, but the amount of such Claim as asserted in the Claim varies from the amount of such Claim as listed in the Schedules; or (iii) a Claim as to which any party in interest has timely filed an objection or request for estimation in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules and any orders of the Bankruptcy Court, or which is otherwise disputed by Debtor, and/or the Liquidating Trustee in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn, or determined by a Final Order;

    (c)    if a request for payment of an Administrative Claim has been filed or deemed to have been filed by the Initial or Final Administrative Claims Bar Date, as appropriate, an Administrative Claim as to which any party in interest has timely filed an objection or request for estimation in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules, and any orders of the Bankruptcy Court, or which is otherwise disputed by a Debtor, or the Liquidating Trustee in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order;

    (d)    for which a Claim was required to be filed by order of the Bankruptcy Court, but as to which a Claim was not timely or properly filed; or

    (e)    that is disputed in accordance with the provisions of this Plan.

*1.39*     ***Disputed ... Claim*** means a Disputed Claim of the particular type or Class described.

*1.40*     ***Disputed Claim Amount*** means (a) if a liquidated amount is set forth in the Proof of Claim relating to a Disputed Claim, (i) the liquidated amount set forth in the Proof of Claim relating to the Disputed Claim; (ii) an amount agreed to by the Debtor, or the Liquidating Trustee and the Holder of such Disputed Claim; or (iii) if a request for estimation is filed by any party, the amount at which such Claim is estimated by the Bankruptcy Court; (b) if no liquidated amount is set forth in the Proof of Claim relating to a Disputed Claim, (i) an amount agreed to by the Debtor, or the Liquidating Trustee and the Holder of such Disputed Claim or (ii) the amount estimated by the Bankruptcy Court with respect to such Disputed Claim; or (c) if the Claim was listed on the Schedules as unliquidated, contingent or disputed and no Proof of Claim was filed, or deemed to have been filed, by the applicable Bar Date and the Claim has not been resolved by written

agreement of the parties or an order of the Bankruptcy Court, zero.

**1.41    *Distribution*** means any distribution pursuant to the Plan to the Holders of Allowed Claims.

**1.42    *Distribution Date*** means either the Initial Distribution Date or a Periodic Distribution Date.

**1.43    *Distribution Record Date*** means the record date for purposes of making Distributions under the Plan on account of Allowed Claims, which date shall be the Confirmation Date or such other date designated in the Confirmation Order.

**1.44    *Effective Date*** means the Business Day this Plan becomes effective as provided in Article VIII hereof.

 **1.45    *Estate*** means the Estate of the Debtor created under Bankruptcy Code section 541.

 **1.46    *Exhibit*** means an exhibit annexed to either this Plan or as an appendix to the Disclosure Statement.

**1.47    *Exhibit Filing Date*** means the date on which Exhibits to the Plan or the Disclosure Statements shall be filed with the Bankruptcy Court, which date shall be at least five
(5) days prior to the Voting Deadline or such later date as may be approved by the Bankruptcy Court without further notice to parties in interest.

**1.48    *Face Amount*** means (a) when used in reference to a Disputed Claim, the Disputed Claim Amount and (b) when used in reference to an Allowed Claim, the allowed amount of such Claim.

**1.49    *Final Administrative Claims Bar Date*** means the last date by which a request for payment of an Administrative Claim that arises up to and through the Effective Date, may be filed, which date is thirty (30) days after the Effective Date.

**1.50    *Final Decree*** means the decree contemplated under Bankruptcy Rule 3022.

**1.51    *Final Fee Applications*** means the final requests for payment of Professional Fee Claims.

**1.52    *Final Order*** means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in the Chapter 11 Case, the operation or effect of which has not been stayed, reversed, or amended and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending.

**1.53    *Final Trust Distribution Date*** means the date of the last Distribution from the Liquidating Trust under the Plan for and on account of an Allowed Claim.

**1.54    *General Bar Date*** means the bar date for filing Proofs of Claim for Claims arising prior to the Petition Date against the Debtor in the Chapter 11 Case, other than those Claims expressly excluded from the General Bar Date pursuant to a Final Order of the Bankruptcy Court, which date was May 11, 2023.

**1.55** ***General Unsecured Claim*** means a Claim that is not an Administrative Claim, Priority Tax Claim, Non-Tax Priority Claim, Miscellaneous Secured Claim, or Subordinated 510(c) Claim.

**1.56** ***Governmental Unit*** has the meaning set forth in Bankruptcy Code section 101(27).

**1.57** ***Holder*** means an entity holding a Claim or Interest.

**1.58** ***Impaired*** means, when used in reference to a Claim, Interest or Class, a Claim, Interest or Class that is impaired within the meaning of Bankruptcy Code section 1124.

**1.59** ***Indemnification Obligation*** means any obligation of the Debtor to indemnify, reimburse, or provide contribution to any present or former officer, director, or employee, or any present or former Professionals, advisors, or representatives of the Debtor, pursuant to by-laws, articles of incorporation, contract, or otherwise as may be in existence immediately prior to the Petition Date.

**1.60** ***Initial Distribution Date*** means a Business Day, as determined by the Liquidating Trustee, as soon as practicable after the Effective Date, that is at least five (5) Business Days after the funding of the Liquidating Trust pursuant to Article V.C. hereof.

**1.61** ***Interests*** means the legal, equitable, contractual, and other rights of any Person with respect to any capital stock or other ownership interest in Debtor, whether or not transferable, and all options, warrants, call rights, puts, awards, or rights or agreements to purchase, sell, or subscribe for an ownership interest or other equity security in Debtor.

**1.62** ***IRS*** means the Internal Revenue Service.

**1.63** ***Lien*** shall mean any lien, security interest, pledge, title retention agreement, encumbrance, charge, mortgage, or hypothecation to secure payment of a debt or performance of an obligation, other than, in the case of securities and any other equity ownership interests, any restrictions imposed by applicable United States or foreign securities laws.

**1.64** ***Liquidating Trust*** means the trust established on the Effective Date pursuant to Article V.C. hereof.

**1.65** ***Liquidating Trust Agreement*** means the agreement to be executed as of the Effective Date establishing the Liquidating Trust pursuant to the Plan in substantially the form attached as <u>Exhibit B</u> hereto.

**1.66** ***Liquidating Trust Assets*** shall have the meaning ascribed in Article V.C.1 hereof.

**1.67** ***Liquidating Trust Oversight Committee*** means the committee comprised of Jonathan Bodner and Jeremy Friedberg.

**1.68** ***Liquidating Trustee*** means the Person appointed to act as trustee of and administer the Liquidating Trust, which Person shall be George Shoup.

**1.69** ***Liquidating Trustee Professionals*** means the agents, financial advisors, attorneys, consultants, independent contractors, representatives, and other professionals of

the Liquidation Trustee (in their capacities as such).

**1.70     *Local Rules*** means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of New York.

**1.71     *Miscellaneous Secured Claim*** means a Claim that is secured by a valid and perfected Lien on property in which Debtor's Estate has an interest to the extent of the value of the Claimholder's interest in the Estate's interest in such property, as determined pursuant to Bankruptcy Code section 506(a).

**1.72     *Net Proceeds*** means such amounts collected from the sale or liquidation of Assets after payment of all costs and expenses of such sale or liquidation, including, without limitation, attorney fees.

**1.73     *Non-business Assets*** means all tangible and intangible assets of every kind and nature of the Debtor and its Estate, and all proceeds thereof, existing as of the Effective Date other than Business Assets.

**1.74     *Non-Tax Priority Claim*** means a Claim, other than an Administrative Claim or Priority Tax Claim, which is entitled to priority in payment pursuant to Bankruptcy Code section 507(a).

**1.75     *Person*** has the meaning set forth in Bankruptcy Code section 101(41).

**1.76     *Petition Date*** means the date on which the Debtor filed its petition for relief commencing the Chapter 11 Case, which date was January 20, 2023.

**1.77     *Plan*** means this Chapter 11 plan, including the Exhibits and all supplements, appendices, and schedules hereto, either in its current form or as the same may be altered, amended, or modified from time to time in accordance with the Bankruptcy Code and the Bankruptcy Rules.

**1.78     *Plan Document*** means the Plan, together with any contract, instrument, release, or other agreement or document entered in connection with Plan.

**1.79     *Plan Proponent*** means DCC Vigilant, LLC.

**1.80     *Plan Supplement*** means the compilation(s) of documents and forms of documents, specified in the Plan, that Plan Proponent will file with the Bankruptcy Court on or before the date that is (a) ten (10) days prior to the Voting Deadline or (b) set by the Bankruptcy Court for the filing of such documents and forms of documents.

**1.81     *Premises*** means the real property more fully described in a Consolidated, Amended and Restated Mortgage, Assignment of Leases and Rents and Security Agreement, dated January 25, 2018 at 350-354 6th Avenue, New York, New York 10011, known as Commercial Unit 1 a/k/a 1FLR and Commercial Unit 2 a/k/a 2FLR, as recorded on January 25, 2018 in the official records of the Office of the New York City Register, State of New York, February 2, 2018, as CRFN 2018000041142.

**1.82     *Priority Claims*** means, collectively, all Priority Tax Claims and Non-Tax Priority Claims.

**1.83     *Priority Tax Claim*** means a Claim of a Governmental Unit of the kind specified in Bankruptcy Code sections 502(i) or 507(a)(8).

**1.84** *Professional* means (a) any professional employed in this Chapter 11 Case pursuant to Bankruptcy Code sections 327, 328, or 1103 or otherwise, and (b) any professional or other entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to Bankruptcy Code section 503(b)(4).

**1.85** *Professional Fee Claim* means a Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses, or other charges incurred after the Petition Date and prior to and including the Effective Date.

**1.86** *Proof of Claim* means a proof of claim filed on or before the General Bar Date or the Governmental Bar Date, as applicable, or such other date as ordered by the Bankruptcy Court.

**1.87** *Pro Rata* means, at any time, the proportion that the Face Amount of an Allowed Claim in a particular Class bears to the aggregate Face Amount of all Allowed Claims in such Class, unless the Plan provides otherwise.

**1.88** *Scheduled* means, with respect to any Claim, the status, priority and amount, if any, of such Claim as set forth in the Schedules.

**1.89** *Schedules* means the schedules of assets and liabilities, the list of Holders of Interests, and the statements of financial affairs filed by the Debtor pursuant to Bankruptcy Code section 521 and the Bankruptcy Rules, as such schedules have been or may be further modified, amended or supplemented in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

**1.90** *Security Deposit* means the $75,000 defaulted security deposit which is subject to the lien of DCC and held by Ciao-Di Restaurant Corporation in M & T bank account ending 3461.

**1.91** *Solicitation* means the solicitation by the Plan Proponent of acceptances of the Plan

**1.92** *Solicitation Procedures Order* means the order entered by the Bankruptcy Court establishing procedures for Solicitation of votes for or against the Plan under Bankruptcy Code sections 105, 1125, 1126 and 1128 and Bankruptcy Rules 2002, 3017, 2018 and 3020.

**1.93** *Subordinated 510(c) Claim* means any Claim (i) subordinated pursuant to Bankruptcy Code section 510(c); or (ii) for punitive or exemplary damages or for a fine or penalty, to the extent permitted by applicable law.

**1.94** *Substantial Contribution Claim* means a Claim under Bankruptcy Code subsections 503(b)(3), (b)(4), or (b)(5) for compensation or reimbursement of expenses incurred in making a substantial contribution in the Chapter 11 Case.

**1.95** *Tax Claim* means all or that portion of a Claim held by a Governmental Unit for a tax assessed or assessable against the Debtor, including income and employment taxes and any related penalties or interest.

**1.96** *Tax Items* has the meaning ascribed to such term in Article V.C.6(a). hereof.

**1.97** *Taxes* means any and all taxes, levies, imposts, assessments, or other charges of whatever nature imposed at any time by a Governmental Unit or by any

political subdivision or taxing authority thereof or therein and all interest, penalties, or similar liabilities with respect thereto.

*1.98* **Trustee** means the Office of the United States Trustee for the Southern District of New York.

*1.99* **Unclassified Claims** means Administrative Claims and Priority Tax Claims.

*1.100* **Unimpaired** means, when used in reference to a Claim, Interest or Class, a Claim, Interest or Class that is not impaired within the meaning of Bankruptcy Code section 1124.

*1.101* **Voting Deadline** means the date and time, as fixed by an order of the Bankruptcy Court and set forth in the Disclosure Statement, by which all Ballots to accept or reject the Plan must be received in order to be counted.

(d) **Rules of Interpretation**

For purposes of the Plan (a) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (b) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented, (c) unless otherwise specified, all references in the Plan to sections, articles, Schedules and Exhibits are references to sections, articles, Schedules and Exhibits of or to the Plan, (d) the words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan, (e) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan, and (f) to the extent not modified herein, the rules of construction set forth in Bankruptcy Code section 102 and in the Bankruptcy Rules shall apply.

(e) **Computation of Time**

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

(f) **Governing Law**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) and except as otherwise provided herein or therein, the laws of (i) the State of New York shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan and (ii) the laws of the state of incorporation of Debtor shall govern corporate governance matters with respect to Debtor, in either case without giving effect to the principles of conflicts of law thereof.

(g) **Exhibits**

All Exhibits are incorporated into and are a part of this Plan as if set forth in full herein, and, to the extent not annexed hereto, such Exhibits shall be filed with the Bankruptcy Court on or before the Exhibit Filing Date.

To the extent any Exhibit is inconsistent with the terms of the Plan, unless

otherwise ordered by the Bankruptcy Court, the non-Exhibit portion of the Plan shall control.

# ARTICLE II
# CLASSIFICATION OF CLAIMS AND INTERESTS

### A. Introduction

All Claims and Interests, except Administrative Claims and Priority Tax Claims are placed in the Classes set forth below. In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims and Priority Tax Claims have not been classified.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim is also placed in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released or otherwise settled prior to the Effective Date.

The Plan Proponent has set forth the Classes below.

### B. Unsolicited and Unclassified Claims (Unclassified Classes of Claims are not entitled to vote on the Plan.)

1. Administrative Claims

2. Priority Tax Claims

### C. Classes of Claims

### 1. Class 1: Secured Claims of 88 Washington Place Condominium

Class 1 consists of Claims of 88 Washington Place Condominium that are secured by the Premises and all other collateral pledged by the Debtor to or held by 88 Washington Place Condominium, to the extent of the value of the Claimholder's interest in the Estate's interest in such property.

### 2. Class 2: Secured Claims of DCC

Class 2 consists of Claims that are secured by the Premises, to the extent of the value of the Claimholder's interest in the Estate's interest in such property.

### 3. Class 3: Secured Claims of the City of New York

Class 3 consists of Claims that are secured by the Premises, to the extent of the value of the Claimholder's interest in the Estate's interest in such property.

### 4. Class 4: Non-Tax Priority Claims

Class 4 consists of Claims, other than Administrative Claims or Priority Tax Claims, which are entitled to priority in payment pursuant to Bankruptcy Code section 507(a).

**5.    Class 5: General Unsecured Claims**

Class 5 consists of Claims that are not Administrative Claims, Priority Tax Claims, Non- Tax Priority Claims, Miscellaneous Secured Claims Convenience Claims, Subordinated 510(c) Claims, or Interests.

**6.    Class 6: Deficiency Unsecured Claims of 88 Washington Place and DCC**

Class 6 consists of Claims that are not Administrative Claims, Priority Tax Claims, Non- Tax Priority Claims, Miscellaneous Secured Claims Convenience Claims, General Unsecured Claims, Subordinated 510(c) Claims or Debtor.

**7.    Class 7: Subordinated 510(c) Claims**

Class 7 consists of Claims (i) subordinated pursuant to Bankruptcy Code section 510(c); or (ii) for punitive or exemplary damages or for a fine or penalty, to the extent permitted by applicable law.

**8.    Class 8:  Debtor**

Class 8 consists of the legal, equitable, contractual, and other rights of Debtor with respect to property of the Estate.


# ARTICLE III
## TREATMENT OF CLAIMS AND INTERESTS
**A.    Unclassified Claims**

In accordance with Bankruptcy Code section 1123(a)(1) of the Bankruptcy Code, certain Claims have not been classified, and the respective treatment of such Unclassified Claims is set forth immediately below.

1.    Administrative Claims

Except as otherwise provided herein, and subject to the requirements of this Plan, on, or as soon as reasonably practicable after, the earlier of (a) the Distribution Date immediately following the date an Administrative Claim becomes an Allowed Administrative Claim or (b) the date that is sixty (60) days after the date on which such Administrative Claim becomes an Allowed Administrative Claim, a Holder of an Allowed Administrative Claim shall receive, to  be paid out of the Liquidating Trust, in full and final satisfaction, settlement and release of and in exchange for such Allowed Administrative Claim, (a) Cash equal to the unpaid portion of such Allowed Administrative Claim up to the amount of the Security Deposit or (b) such other treatment as to which such Holder and the Debtor and/or the Liquidating Trustee shall have agreed upon in writing; provided, however, that Allowed Administrative Claims with respect to liabilities incurred by a Debtor in the ordinary course of business during the Chapter 11 Case  may be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto (i) prior to the Effective Date, by the Debtor and (ii) subsequent to the Effective Date, by the Liquidating Trustee. Administrative Claimholders will be paid in full on account of their Claims and are not entitled to vote on the Plan.  The foregoing shall be paid solely from the Security Deposit.

88 Washington Place Condominium asserts an Administrative Claim against the

Estate for all common charges (as defined in the declaration and by-laws for the condominium) that have accrued (and remain unpaid) subsequent to the Petition Date. DCC and 88 Washington Place Condominium have reached an agreement for the payment of 88 Washington Place Condominium's Administrative Claim under which DCC will pay to 88 Washington Place Condominium (a) $30,000.00 on Confirmation in satisfaction of all common charges accrued through July 31, 2023, (b) an additional $6,900.00 per month for each month commencing on August 1, 2023 until Confirmation, and (c) all post-Confirmation monthly common charges on the first day of each month until the sale of each unit of the Premises. In consideration, and solely in the event that DCC has made to 88 Washington Place Condominium the payments required under clauses (a), (b), and (c) above, 88 Washington Place Condominium agrees to release its lien on each unit of the Premises sold at the closing thereof. All rights and liens held by 88 Washington Place Condominium other than as explicitly modified in this paragraph (including all rights as the Holder of the Class 6 Claims) are not affected and shall not be deemed to be affected by this Plan.

2.    Priority Tax Claims

Except to the extent that an Allowed Priority Tax Claim has been paid prior to the Distribution Date, a Holder of an Allowed Priority Tax Claim shall be entitled to receive, to be paid out of the Liquidating Trust, in full and final satisfaction, settlement and release of and in exchange for such Allowed Priority Tax Claim, (i) regular installment Cash payments, occurring not less frequently than quarterly over a period not exceeding five (5) years after the Petition Date, in an aggregate principal amount equal to the unpaid portion of such Allowed Priority Tax Claim, plus interest on the unpaid portion thereof at the Case Interest Rate from the Effective Date through the date of payment thereof or (ii) such other treatment as to which such Holder and the Debtor and/or the Liquidating Trustee shall have agreed upon in writing; provided, however, that the Liquidating Trustee shall have the right to pay any Allowed Priority Tax Claim, or any remaining balance of any Allowed Priority Tax Claim, in full at any time on or after the Effective Date without premium or penalty. Notwithstanding the foregoing, or anything to the contrary in the Plan, no Distributions shall be made to the Holder of any Allowed Priority Tax Claims unless (a) from the collateral securing all Miscellaneous Secured Claims, all Miscellaneous Secured Claims are paid in full, (b) the Liquidating Trust has sufficient Available Cash to pay, or reserve for, as the case may be, the Face Amount of all Administrative Claims, and (c) either (i) the Liquidating Trust has sufficient Available Cash to pay, or reserve for, as the case may be, the Face Amount of all Priority Tax Claims or (ii) the Liquidating Trust Oversight Committee consents to all or any portion of such Distribution. Priority Tax Claimholders will be paid in full on account of their Claims and are not entitled to vote on the Plan.

**B.    Classified Claims**

1.    Class 1: Secured Claims of 88 Washington Place Condominium

On, or as soon as reasonably practicable after, the Distribution Date, the Holder of the 88 Washington Place Condominium Secured Claim shall receive, in full and final satisfaction, settlement and release of and in exchange for, the 88 Washington Place Condominium Secured Claim, (i) Cash equal to the net proceeds of any sale of the

Premises by the Liquidating Trustee, to be paid out of the Liquidating Trust from the proceeds of the Premises after payment of the City of New York Secured Claim and the DCC Secured Claim or (ii) such other treatment as to which such Holder and the Liquidating Trustee shall have agreed upon in writing.

The Holder of the 88 Washington Place Condominium Secured Claim shall retain its Lien in all collateral pledged by the Debtor to or held by 88 Washington Place Condominium and the proceeds thereof with the same rights and priority as such Lien held as of the Petition Date until such time as the closing of the sale of each unit of the Premises and DCC has satisfied all of its obligations in connection with 88 Washington Place Condominium's Administrative Claim.

Class 1 Claims are Impaired and are therefore entitled to vote on the Plan.

2. Class 2: Secured Claims of DCC

On, or as soon as reasonably practicable after, the Effective Date, a Holder of the DCC Secured Claim shall receive, in full and final satisfaction, settlement and release of and in exchange for the DCC Secured Claim, (i) Cash equal to the net proceeds of any sale of the Premises by the Liquidating Trustee, to be paid out of the Liquidating Trust from the proceeds of the Premises after payment of the City of New York Secured Claim, or (ii) such other treatment as to which such Holder and the Liquidating Trustee shall have agreed upon in writing.

Any Holder of the DCC Secured Claim shall retain its Lien in the Premises or the net proceeds of the Premises (to the extent that such Premises is sold by the Liquidating Trustee free and clear of such Lien) to the same extent and with the same priority as such Lien held as of the Petition Date until such time as (a) the Holder of the DCC Secured Claim (i) has been paid Cash equal to the value of amount received by the Liquidating Trustee with respect to the sale of the Premises , or (ii) has been afforded such other treatment as to which such Holder and the Liquidating Trustee shall have agreed upon in writing; or (b) such purported Lien has been determined by an order of the Bankruptcy Court to be invalid or otherwise avoidable.

Class 2 Claims are Impaired and are therefore entitled to vote on the Plan.

3. Class 3: Secured Claims of City of New York

On, or as soon as reasonably practicable after, the Effective Date, a Holder of the City of New York Secured Claim shall receive, in full and final satisfaction, settlement and release of and in exchange for the City of New York Secured Claim, (i) Cash equal to the net proceeds of any sale of the Premises by the Liquidating Trustee, to be paid out of the Liquidating Trust from the proceeds of the Premises or (ii) such other treatment as to which such Holder and the Liquidating Trustee shall have agreed upon in writing.

Any Holder of the City of New York Secured Claim shall retain its Lien in the Premises or the net proceeds of the Premises (to the extent that such Premises is sold by the Liquidating Trustee free and clear of such Lien) to the same extent and with the same priority as such Lien held as of the Petition Date until such time as (a) the Holder of the City of New York Secured Claim (i) has been paid Cash equal to the value of amount received by the Liquidating Trustee with respect to the sale of the Premises , or (ii) has

been afforded such other treatment as to which such Holder and the Liquidating Trustee shall have agreed upon in writing; or (b) such purported Lien has been determined by an order of the Bankruptcy Court to be invalid or otherwise avoidable.

Class 3 Claims are Unimpaired and are therefore not entitled to vote on the Plan.

4.      Class 4: Non-Tax Priority Claims

On, or as soon as reasonably practicable after, the earlier of (a) the Distribution Date immediately following the date a Non-Tax Priority Claim becomes an Allowed Non-Tax Priority Claim or (b) the date that is ninety (90) days after the date on which such Non-Tax Priority Claim becomes an Allowed Non-Tax Priority Claim, a Holder of an Allowed Non-Tax Priority Claim shall receive, to be paid out of the Liquidating Trust, in full and final satisfaction, settlement and release of and in exchange for such Allowed Non-Tax Priority Claim, (i) Cash equal to the unpaid portion of such Allowed Non-Tax Priority Claim or (ii) such other treatment as to which such Holder and the Liquidating Trustee shall have agreed upon in writing.

Notwithstanding the foregoing, or anything to the contrary in the Plan, no Distributions shall be made to the Holder of any Allowed Non-Tax Priority Claims unless (a) from the collateral securing all Miscellaneous Secured Claims, all Miscellaneous Secured Claims are paid in full, (b) the Liquidating Trust has sufficient Available Cash to pay, or reserve for, as the case may be, the Face Amount of all Administrative Claims, and (c) either (i) the Liquidating Trust has sufficient Available Cash to pay, or reserve for, as the case may be, the Face Amount of all Non-Tax Priority Claims or (ii) the Liquidating Trust Oversight Committee consents to all or any portion of such Distribution.

Class 4 Claims are Unimpaired and are therefore not entitled to vote on the Plan.

5.      Class 5:  General Unsecured Claims

Provided that the Face Amount of all Administrative Claims, Priority Claims, and Miscellaneous Secured Claims have been paid in full or, to the extent not paid in full, if available funds sufficient to satisfy the Face Amount of all such Claims have been placed in a segregated reserve, and subject to the occurrence of the Effective Date, on, or as soon as reasonably practicable after, the earlier of (a) the Distribution Date immediately following the date a  General Unsecured Claim becomes an Allowed General Unsecured Claim or (b) the date that is ninety (90) days after the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive from the Liquidating Trustee, in full and final satisfaction, settlement and release of and in exchange for such Allowed General Unsecured Claim, its Pro Rata share of the unencumbered funds held by the Liquidating Trustee.

To the extent no unencumbered funds are available to make the foregoing distributions, no amounts shall be distributed on account of Allowed Class 5 Claims.

Allowed Class 5 Claims will receive distributions, if any, *pari pasu* with Allowed Class 6 Claims.

Class 5 Claims are Impaired and are entitled to vote on the Plan

6. Class 6: Deficiency Unsecured Claims of 88 Washington Place Condominium and DCC

Provided that the Face Amount of all Administrative Claims, Priority Claims, and Miscellaneous Secured Claims have been paid in full or, to the extent not paid in full, funds sufficient to satisfy the Face Amount of all such Claims have been placed in a segregated reserve, and subject to the occurrence of the Effective Date, on, or as soon as reasonably practicable after, the Distribution Date the Holder of the Deficiency Unsecured Claims of 88 Washington Place Condominium and DCC shall receive from the Liquidating Trustee, in full and final satisfaction, settlement and release of and in exchange for such Deficiency Unsecured Claims of 88 Washington Place Condominium and DCC, its Pro Rata share of the Class 6 Distribution Amount, if any, and, on each Periodic Distribution Date, the Holder of the Deficiency Unsecured Claims of 88 Washington Place Condominium and DCC shall receive its Pro Rata share of the Class 6 Distribution Amount, if any.

Allowed Class 6 Claims will receive distributions, if any, *pari pasu* with Allowed Class 5 Claims.

Class 6 Claims are Impaired and are entitled to vote on the Plan.

7. Class 7: Subordinated 510(c) Claims

On the Effective Date, all Subordinated 510(c) Claims shall be deemed eliminated, cancelled and/or extinguished and each Holder thereof shall not be entitled to, and shall not receive or retain any property under the Plan on account of such Subordinated 510(c) Claims.

Class 7 is deemed to have rejected the Plan and, therefore, is not entitled to vote to on the Plan.

8. Class 8: Debtor

In full and final satisfaction, settlement and release of and in exchange for any Claim of Debtor against the Estate, all Non-business Assets of the Estate shall revest in Debtor on the Effective Date.

Class 8 is Impaired and is entitled to vote on the Plan.

**C.     Special Provision Regarding Unimpaired Claims**

Except as otherwise provided in the Plan, the Confirmation Order, any other order of the Court, or any document or agreement enforceable pursuant to the terms of the Plan, nothing shall affect the rights and defenses, both legal and equitable, of the Debtor, and the Liquidating Trustee with respect to any Unimpaired Claims, including, but not limited to, all rights with respect to legal and equitable defenses to setoffs or recoupments against Unimpaired Claims.

**D.     Special Provision Regarding Use of Section 502(d) to Deny Distributions to Holders of Claims**

Notwithstanding anything to the contrary in the Plan, the Liquidating Trustee may only use Bankruptcy Code section 502(d) as a basis for refusing to make a Distribution to a Holder of a Claim that is subject to a pending section 502(d) objection until the earlier of

(i) ninety (90) days after the Effective Date or (ii) entry of an order establishing some other deadline.

### E. Allowed Claims

The Liquidating Trustee shall only make Distributions to Holders of Allowed Claims. No Holder of a Disputed Claim will receive any Distribution on account thereof until (and then only to the extent that) its Disputed Claim becomes an Allowed Claim; provided, however, that if the only dispute regarding a Disputed Claim is to the amount of the Disputed Claim, the Holder of a Disputed Claim shall be entitled to a Distribution on account of that portion of the Disputed Claim which the Liquidating Trustee does not dispute, which Distribution shall be made by the Liquidating Trustee at the time and in the manner that the Liquidating Trustee makes Distributions to Holders of Allowed Claims pursuant to the provisions of the Plan. The Liquidating Trustee may, in its discretion, withhold Distributions otherwise due hereunder to any Claimholder until the Claims Objection Deadline, to enable a timely objection thereto to be filed. Any Holder of a Claim that becomes an Allowed Claim after the Effective Date will receive its Distribution in accordance with the terms and provisions of this Plan and the Liquidating Trust Agreement.


# ARTICLE IV
# ACCEPTANCE OR REJECTION OF THE PLAN

### A. Impaired Classes of Claims Entitled to Vote

Subject to Article III of the Plan, the votes of Holders of Claims and Interests in Impaired Classes who receive or retain property on account of their Claims or Interests and who are entitled to vote under the Solicitation Procedures Order will be solicited for acceptance or rejection of the Plan.

### B. Acceptance by an Impaired Class

In accordance with Bankruptcy Code section 1126(c) and except as provided in Bankruptcy Code section 1126(e), an Impaired Class of Claims shall have accepted the Plan if the Plan is accepted by the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Claims of such Class that are entitled to vote and have timely and properly voted to accept or reject the Plan.

### C. Presumed Acceptances by Unimpaired Classes

Class 3 and Class 4 Claimholders are Unimpaired by the Plan. Under Bankruptcy Code section 1126(f), such Claimholders are conclusively presumed to accept the Plan, and the votes of such Claimholders will not be solicited.

### D. Classes Deemed to Reject Plan

Class 7 Claimholders are not entitled to receive or retain any property under the Plan. Under Bankruptcy Code section 1126(g), Class 7 Claimholders are deemed to reject the Plan, and the votes of such Claimholders or Interest Holders will not be solicited.

### E. Summary of Classes Voting on the Plan

As a result of the provisions of Articles II and III of this Plan, the votes of Holders of Allowed Claims in Class 1, Class 2, Class 5, Class 6, and Class 8 that are not subject to an objection or who have filed a motion under Bankruptcy Rule 3018(a) for temporary allowance of their Claims for voting purposes, all as further set out in the Solicitation Procedures Order, will be solicited with respect to the Plan.

### F.      Confirmation Pursuant to Bankruptcy Code Section 1129(b)

Because Class 7 is deemed to reject the Plan, the Plan Proponent will seek confirmation of the Plan from the Court by employing the "cramdown" procedures set forth in section 1129(b) of the Bankruptcy Code. The Plan Proponent reserve the right to alter, amend, modify, revoke, or withdraw the Plan or any Plan Exhibit or schedule, including to amend or modify the Plan or such Exhibits or schedules to satisfy the requirements of Bankruptcy Code section 1129(b), if necessary.

## ARTICLE V
## MEANS FOR IMPLEMENTATION OF THE PLAN

### A.      Actions

1.      Transfer of Estate Assets

Upon the Effective Date, Debtor shall cause all its Business Assets and the Business Assets of the Estate to be transferred to the Liquidating Trust in accordance with this Plan.

Upon transfer of the Business Assets, Debtor shall have no further duties or responsibilities in connection with the implementation of the Plan, except as set forth in Section V.1.2.

2.      Continued Cooperation of Debtor

From Effective Date for a period of thirty (30), Debtor shall cooperate with the Liquidating Trustee to ensure smooth turnover of the Business Assets to the Liquidating Trustee and continuous operation of the Business Assets. Debtor shall not be entitled to compensation.

As soon as practicable after the transfer of Assets to the Liquidating Trust, the Liquidating Trustee shall provide for the retention and storage of the books, records and files that shall have been delivered to the Liquidating Trust until such time as all such books, records and files are no longer required to be retained under applicable law, and file a certificate informing the Bankruptcy Court of the location at which such books, records, and files are being stored

The Professionals employed by the Debtor shall be entitled to reasonable compensation and reimbursement of actual, necessary expenses for post-Effective Date activities, including the preparation, filing, and prosecution of Final Fee Applications, upon the submission of invoices to the Liquidating Trust. Any time or expenses incurred in the preparation, filing, and prosecution of Final Fee Applications shall be disclosed by each Professional in its Final Fee Application and shall be subject to approval of the Bankruptcy Court.

3. Cancellation of Existing Agreements

Except as otherwise provided in the Plan, and in any contract, instrument or other agreement or document created in connection with the Plan, on the Effective Date, any promissory notes and other instruments evidencing any Claims shall be deemed cancelled and of no further force and effect, without any further act or action under any applicable agreement, law, regulation, order, or rule, and the obligations of Debtor under the notes and other agreements and instruments governing such Claims and Interests shall be released; provided, however, (a) that certain instruments, documents, and credit agreements related to Claims shall continue in effect solely for the purposes of allowing the agents to make distributions to the beneficial holders and lenders thereunder, and (b) all documents, contracts, agreements and instruments governing the rights of 88 Washington Place Condominium related to each unit of the Premises survive (and shall not be deemed cancelled) at Confirmation.

The holders of or parties to such canceled notes and other agreements and instruments shall have no rights arising from or relating to such notes, share certificates and other agreements and instruments or the cancellation thereof, except the rights provided pursuant to the Plan.

**B.      Sources for Plan Distribution**

All Cash necessary for the Liquidating Trustee to make payments of Cash pursuant to the Plan shall be obtained from the following sources: (a) the Debtor's Cash on hand, including the Security Deposit, which shall be transferred to the Liquidating Trustee on the Effective Date, (b) Cash received in liquidation of the assets of the Liquidating Trust and (c) proceeds of the Causes of Action.

**C.      Liquidating Trust**

1. Establishment of the Liquidating Trust

The Liquidating Trust shall be established and shall become effective on the Effective Date. All Distributions to the Holders of Allowed Claims shall be from the Liquidating Trust. The Liquidating Trust shall hold and administer the following assets and the Net Proceeds thereof (collectively, the "***Liquidating Trust Assets***"):

(a) the Business Assets of the Debtor, including but not limited to the Causes of Action for liquidation and distribution in accordance with the Plan.

2. Trust Distributions

The Liquidating Trustee shall liquidate all Business Assets (including, without limitation, all Causes of Action) and distribute the Net Proceeds of such liquidation from the Liquidating Trust in accordance with this Plan and the Liquidating Trust Agreement.

3. Duration of Trust

The Liquidating Trust shall have an initial term of one (1) year; provided, however, that, if warranted by the facts and circumstances, and subject to the approval of the Bankruptcy Court with jurisdiction over the case, upon a finding that an extension of the

term of the Liquidating Trust is necessary to accomplish the liquidating purpose of the Liquidating Trust, the Liquidating Trust's term may be extended for a finite term based on facts and circumstances. Each extension of the term of the Liquidating Trust must be approved by the Court prior to the beginning of the extended term. The Liquidating Trust may be terminated earlier than its scheduled termination if (a) the Bankruptcy Court has entered a Final Order closing the Chapter 11 Case pursuant to Bankruptcy Code section 350(a) and (b) the Liquidating Trustee has administered all assets of the Liquidating Trust and performed all other duties required by the Plan and the Liquidating Trust Agreement. As soon as practicable after the Final Trust Distribution Date, the Liquidating Trustee shall seek entry of a Final Order closing the Chapter 11 Case pursuant to Bankruptcy Code section 350.

    4.   Liquidation of Causes of Action

Notwithstanding any other term or provision of the Plan, shall have, prior to the Effective Date, and the Liquidating Trustee shall have, on and after the Effective Date, sole authority and responsibility for investigating, analyzing, commencing, prosecuting, litigating, compromising, collecting, and otherwise administering the Causes of Action.

    5.   Liquidating Trustee

    (a) Appointment

The appointment of the Liquidating Trustee shall be effective as of the Effective Date. Successor Liquidating Trustee(s) shall be appointed as set forth in the Liquidating Trust Agreement.

    (b) Term

Unless the Liquidating Trustee resigns or dies earlier, the Liquidating Trustee's term shall expire upon termination of the Liquidating Trust pursuant to the Plan and/or the Liquidating Trust Agreement.

    (c) Powers and Duties

The Liquidating Trustee shall have the rights and powers set forth in the Liquidating Trust Agreement including, but not limited to, the powers of a debtor-in-possession under Bankruptcy Code sections 1107 and 1108. The Liquidating Trustee shall be governed in all things by the terms of the Liquidating Trust Agreement and the Plan. The Liquidating Trustee shall administer the Liquidating Trust, and its assets, and make Distributions from the proceeds of the Liquidating Trust in accordance with the Plan. In addition, the Liquidating Trustee shall, in accordance with the terms of the Plan, take all actions necessary to wind down the affairs of the Debtor consistent with the Plan and applicable non-bankruptcy law. Without limitation, the Liquidating Trustee shall file final federal, state, foreign and, to the extent applicable, local, tax returns. Subject to the terms of the Liquidating Trust Agreement, which includes, among other things, limitations on the Liquidating Trustee's discretion to take certain action without approval of the Liquidating Trust Oversight Committee or, in some circumstances, the Bankruptcy Court, the Liquidating Trustee shall be authorized, empowered and directed to take all actions necessary to comply with the Plan and exercise and fulfill the duties and obligations arising thereunder, including, without limitation, to:

(i)     employ, retain, and replace one or more attorneys, accountants, auctioneers, brokers, managers, consultants, other professionals, agents, investigators, expert witnesses, consultants, and advisors as necessary to discharge the duties of the Liquidating Trustee under the Plan and the Liquidating Trust Agreement;

(ii)     object to the allowance of Claims pursuant to the terms of the Plan;

(iii)     open, maintain and administer bank accounts as necessary to discharge the duties of the Liquidating Trustee under the Plan and the Liquidating Trust Agreement;

(iv)     pay reasonable and necessary professional fees, costs, and expenses as set forth in the Plan;

(v)     investigate, analyze, commence, prosecute, litigate, compromise, and otherwise administer the Causes of Action and all related Liens for the benefit of the Liquidating Trust and its beneficiaries, as set forth in the Plan, and take all other necessary and appropriate steps to collect, recover, settle, liquidate, or otherwise reduce to Cash the Causes of Action, including all receivables, and to negotiate and effect settlements and lien releases with respect to all related Claims and all related Liens;

(vi)     administer, sell, liquidate, or otherwise dispose of all Collateral and all other Assets of the Estate in accordance with the terms of the Plan;

(vii)     represent the Estate before the Bankruptcy Court and other courts of competent jurisdiction with respect to matters concerning the Liquidating Trust;

(viii)     seek the examination of any entity under and subject to the provisions of Bankruptcy Rule 2004;

(ix)     comply with applicable orders of the Bankruptcy Court and

any other court of competent jurisdiction over the matters set forth

herein;

(x)     comply with all applicable laws and regulations concerning the matters set forth herein;

(xi)     exercise such other powers as may be vested in the Liquidating Trust pursuant to the Liquidating Trust Agreement, the Plan, or other Final Orders of the Bankruptcy Court;

(xii)     execute any documents, instruments, contracts, and agreements necessary and appropriate to carry out the powers and duties of the Liquidating Trust; and

(xiii)     stand in the shoes of the Debtor for all purposes.

(d) Fees and Expenses

Except as otherwise provided in the Plan, compensation of the Liquidating Trustee and the costs and expenses of the Liquidating Trustee and the Liquidating Trust (including,

without limitation, professional fees and expenses) shall be paid from the Liquidating Trust. The Liquidating Trustee shall pay, after order, notice, and application to the Bankruptcy Court, the reasonable fees and expenses of the Liquidating Trustee Professionals, as necessary to discharge the Liquidating Trustee's duties under the Plan and the Liquidating Trust Agreement.

(e) Retention of Professionals and Compensation Procedure

On and after the Effective Date, subject to the terms of the Liquidating Trust Agreement, the Liquidating Trustee may engage such professionals and experts as may be deemed necessary and appropriate by the Liquidating Trustee to assist the Liquidating Trustee in carrying out the provisions of the Plan and the Liquidating Trust Agreement, including, but not limited to, Professionals retained prior to the Effective Date by the Debtor.

(f) Liquidating Trustee as Successor

Pursuant to Bankruptcy Code section 1123(b), the Liquidating Trustee shall be the successor to the Debtor for all purposes.

(g) Compromising Claims

Pursuant to Bankruptcy Rule 9019(b), the Plan and the Liquidating Trust Agreement, as of the Effective Date, the Liquidating Trustee is authorized to approve compromises of the Causes of Action and all Claims, Disputed Claims, and Liens and to execute necessary documents, including Lien releases and stipulations of settlement or release, without notice to any party and without further order of the Bankruptcy Court, except as otherwise provided in the Liquidating Trust Agreement.

(h) Investment Powers

The powers of the Liquidating Trustee to invest any Cash that is held by the Liquidating Trust, other than those powers reasonably necessary to maintain the value of the assets and to further the Liquidating Trust's liquidating purposes, shall be limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary liquid investments, such as treasury bills. The Liquidating Trustee is prohibited from continuing or engaging in the conduct of a trade or business, except to the extent reasonably necessary to and consistent with the liquidating purpose of the Liquidating Trust.

(i) Distributions

Except as otherwise provided in the Plan, the Liquidating Trustee is required to distribute at least annually to beneficiary Claimholders qualifying for Distributions from the Liquidating Trust under the Plan the Liquidating Trust's net income and all net proceeds from the sale of assets by the Liquidating Trust, except that the Liquidating Trust may retain an amount of net proceeds or net income reasonably necessary to maintain the value of its assets or to meet Claims and contingent liabilities (including Disputed Claims). The Liquidating Trustee shall make continuing efforts to dispose of the Liquidating Trust's assets, make timely Distributions, and not unduly prolong the duration of the Liquidating Trust.

(j) Vesting of Assets

On the Effective Date, all property treated by the Plan, any minutes, and general corporate records of Debtor, and any books and records relating to the foregoing not otherwise treated by the Plan, shall vest in the Liquidating Trust and shall thereafter be administered, liquidated by sale, collection, recovery, or other disposition and distributed by the Liquidating Trust in accordance with the terms of the Liquidating Trust Agreement and the Plan.

      6.    Federal Income Taxation of Liquidating Trust

      (a)  Treatment of Liquidating Trust and Asset Transfers

For federal income tax purposes, the Debtor, the Liquidating Trust, the Liquidating Trustee and the beneficiary Claimholders shall treat the Liquidating Trust as a liquidating trust within the meaning of Treasury Income Tax Regulation Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 124. For federal income tax purposes, the transfer of assets to the Liquidating Trust under the Plan is treated as a deemed transfer to the beneficiary Claimholders in satisfaction of their Claims followed by a deemed transfer of the assets by the beneficiary Claimholders to the Liquidating Trust. For federal income tax purposes, the beneficiary Claimholders will be deemed to be the grantors and owners of the Liquidating Trust and its assets. For federal income tax purposes, the Liquidating Trust will be taxed as a grantor trust within the meaning of IRC Sections 671-677 (a non- taxable pass-through tax entity) owned by the beneficiary Claimholders. The Liquidating Trust will file federal income tax returns as a grantor trust under IRC Section 671 and Treasury Income Tax Regulation Section 1.671-4 and report, but not pay tax on, the Liquidating Trust's tax items of income, gain, loss deductions and credits ("***Tax Items***"). The beneficiary Claimholders will report such Tax Items on their federal income tax returns and pay any resulting federal income tax liability. The Debtor, the Liquidating Trust and the beneficiary Claimholders will use consistent valuations of the assets transferred to the Liquidating Trust for all federal income tax purposes, such valuations to be determined jointly by the Debtor and the Liquidating Trustee.

      (b)  Reserves that may be Established by the Liquidating Trustee

The Plan permits the Liquidating Trustee to create separate reserves for Disputed Claims. The Liquidating Trustee may, at the Liquidating Trust's sole discretion, file a tax election to treat any such reserve as a Disputed Ownership Fund ("DOF") within the meaning of Treasury Income Tax Regulation Section 1.468B-9 for federal income tax purposes rather than to tax such reserve as a part of the Liquidating Trust. If such an election were made, the Liquidating Trust would comply with all federal and state tax reporting and tax compliance requirements of the DOF, including but not limited to the filing of a separate federal income tax return for the DOF and the payment of federal and/or state income tax due.

## D.    Vesting/Revesting of Assets

All Non-business Assets shall revest in the Debtor on or following the Effective Date. All Business Assets shall vest in the Liquidating Trust and continue to be subject to the jurisdiction of the Bankruptcy Court following confirmation of the Plan until such property is distributed to Holders of Allowed Claims in accordance with the provisions of the Plan, the Liquidating Trust Agreement, and the Confirmation Order.

### E. Accounts

The Liquidating Trustee shall (a) establish one or more general accounts into which shall be deposited all funds not required to be deposited into any other account or reserve and (b) create, fund, and withdraw funds from, as appropriate, any reserves or other accounts maintained or established by the Liquidating Trustee.

### F. Release of Liens

Except as otherwise provided in the Plan, the Confirmation Order, or in any document, instrument, or other agreement created in connection with the Plan, and with the explicit exception of any mortgages, deeds of trust, liens, or other security interests held by 88 Washington Place Condominium which shall remain unaffected by Confirmation of the Plan, , all other mortgages, deeds of trust, liens, or other security interests against the property of the Estate shall be released on the Effective Date.

### G. Exemption from Certain Transfer Taxes

Pursuant to Bankruptcy Code section 1146(a), any transfers from the Debtor to the Liquidating Trust or to any other Person pursuant to the Plan in the United States shall not be subject to any stamp tax or similar tax, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### H. Preservation of Causes of Action; Settlement of Causes of Action

1. Preservation of Causes of Action

In accordance with section 1123(b)(3) of the Bankruptcy Code or any corresponding provision of similar federal or state laws, and except as otherwise provided in the Plan or the Confirmation Order, on and after the Effective Date, (a) the Liquidating Trustee shall be deemed to be a representative of the Debtor as the party in interest in the Chapter 11 Case and any adversary proceeding in the Chapter 11 Case, under the Plan or in any judicial proceeding or appeal as to which the Debtor is a party and (b) the Liquidating Trustee shall retain all of the Causes of Action of the Debtor and its Estate, a nonexclusive list of which is set forth on Exhibit B, annexed hereto, and other similar claims arising under applicable state laws, including, without limitation, fraudulent transfer claims, if any, and all other causes of action of a trustee and debtor in possession under the Bankruptcy Code. The Liquidating Trustee and/or the Liquidating Trust may, in accordance with the Liquidating Trust Agreement, enforce, sue on, settle or compromise (or decline to do any of the foregoing) any or all of the Causes of Action.

The Plan Proponent has not concluded its investigation into the Causes of Action. Accordingly, in considering the Plan, each party in interest should understand that any and all Causes of Action that may exist against such Person or entity may be pursued by the Liquidating Trust and/or the Liquidating Trustee, regardless of whether, or the manner in which, such Causes of Action are listed on Exhibit B to this Plan or described herein. The failure of the Plan Proponent to list a claim, right, cause of action, suit or proceeding on Exhibit B shall not constitute a waiver or release by the Debtor or its Estate of such claim, right of action, suit or proceeding.

2.      Settlement of Causes of Action

Subject to the terms of the Liquidating Trust Agreement, at any time after the Confirmation Date but before the Effective Date, notwithstanding anything in this Plan to the contrary, the Debtor may settle some or all of the Causes of Action with the approval of the Court pursuant to Bankruptcy Rule 9019. After the Effective Date, the Liquidating Trustee, in accordance with the terms of this Plan and the Liquidating Trust Agreement, will determine whether to bring, settle, release, compromise, enforce or abandon such rights (or decline to do any of the foregoing) in accordance with Article V.C.5(g) hereof.

## I.      Effectuating Documents; Further Transactions

Subject to the terms and conditions of the Plan, prior to the Effective Date, any appropriate officer of the applicable Debtor shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. Subject to the terms and conditions of the Plan and the Liquidating Trust Agreement, after the Effective Date, the Liquidating Trust shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.


# ARTICLE VI
# PROVISIONS GOVERNING DISTRIBUTIONS

## A.      Distributions for Claims Allowed as of the Effective Date

Except as otherwise provided herein or as ordered by the Bankruptcy Court, all Distributions to be made on account of Claims that are Allowed Claims as of the Effective Date shall be made on the Distribution Date by the Liquidating Trustee.  Distributions on account of Claims that first become Allowed Claims after the Effective Date shall be made pursuant to the terms and conditions of this Plan. Notwithstanding any other provision of the Plan to the contrary, no Distribution shall be made on account of any Allowed Claim or portion thereof that
(i) has been satisfied after the Petition Date pursuant to an order of the Bankruptcy Court; (ii) is listed in the Schedules as contingent, unliquidated, disputed or in a zero amount, and for which a Proof of Claim has not been timely filed; or (iii) is evidenced by a Proof of Claim that has been amended by a subsequently filed Proof of Claim that purports to amend the prior Proof of Claim.

## B.      Liquidating Trustee as Disbursing Agent

The Liquidating Trustee shall make all Distributions required under this Plan, subject to the terms and provisions of this Plan and the Liquidating Trust Agreement.  The Liquidating Trustee shall be required to post a bond or surety or other security for the performance of its duties as provided in the Confirmation Order.  The Liquidating Trustee shall be authorized and directed to rely upon the Debtor's books and records and its representatives and professionals in determining Allowed Claims not entitled to

Distribution under the Plan in accordance with the terms of the Plan.

## C. Delivery of Distributions and Undeliverable or Unclaimed Distributions

### 1. Delivery of Distributions in General

Distributions to Holders of Allowed Claims shall be made by the Liquidating Trustee (a) at the addresses set forth on the Proofs of Claim filed by such Holders, (b) at the addresses set forth in any written notices of address changes delivered to the Liquidating Trustee after the date of any related Proof of Claim, (c) at the addresses reflected in the Schedules if no Proof of Claim has been filed and the Liquidating Trustee has not received a written notice of a change of address, (d) at the addresses set forth in the other records of the Debtor or the Liquidating Trustee at the time of the Distribution or (e) in the case of the Holder of a Claim that is governed by an agreement and is administered by an agent or servicer, at the addresses contained in the official records of such agent or servicer.

Distributions shall be made from the Liquidating Trust in accordance with the terms of this Plan and the Liquidating Trust Agreement.

In making Distributions under the Plan, the Liquidating Trustee may rely upon the accuracy of the claims register maintained in the Chapter 11 Case, as modified by any Final Order of the Bankruptcy Court disallowing Claims in whole or in part.

### 2. Undeliverable and Unclaimed Distributions

If the Distribution to any Holder of an Allowed Claim is returned to the Liquidating Trustee as undeliverable or is otherwise unclaimed, no further Distributions shall be made to such Holder unless and until the Liquidating Trustee is notified in writing of such Holder's then- current address, at which time all missed Distributions shall be made to such Holder without interest. Amounts in respect of undeliverable Distributions made by the Liquidating Trustee shall be returned to the Liquidating Trustee until such Distributions are claimed. The Liquidating Trustee shall, with respect to Cash, maintain in the Liquidating Trust Cash on account of undeliverable and unclaimed Distributions until such time as a Distribution becomes deliverable, is claimed, or is forfeited.

Any Holder of an Allowed Claim that does not assert a Claim pursuant to this Plan for an undeliverable or unclaimed Distribution within six (6) months after the last Periodic Distribution Date shall be deemed to have forfeited its Claim for such undeliverable or unclaimed Distribution and shall be forever barred and enjoined from asserting any such Claim for an undeliverable or unclaimed Distribution against the Debtor and its Estate, the Liquidating Trustee, the Liquidating Trust, and their respective agents, attorneys, representatives, employees or independent contractors, and/or any of its and their property. In such cases, any Cash otherwise reserved for undeliverable or unclaimed Distributions shall become the property of the Liquidating Trust free of any restrictions thereon and notwithstanding any federal or state escheat laws to the contrary and shall be distributed in accordance with the terms of this Plan and the Liquidating Trust Agreement. Nothing contained in this Plan or the Liquidating Trust Agreement shall require the Debtor, or the Liquidating Trustee to attempt to locate any Holder of an Allowed Claim; provided, however, that in his sole discretion, the Liquidating Trustee may periodically publish notice of unclaimed Distributions.

**D.      Prepayment**

Except as otherwise provided in this Plan or the Confirmation Order, the Debtor, or the Liquidating Trustee, as the case may be, shall have the right to prepay, without penalty, all or  any portion of an Allowed Administrative Claim, Allowed Priority Tax Claim, Allowed Miscellaneous Secured Claim or Allowed Non-Tax Priority Claim, at any time.

**E.      Means of Cash Payment**

Cash payments made pursuant to this Plan shall be in U.S. dollars and shall be made, on and after the Effective Date, at the option and in the sole discretion of the Liquidating Trustee by
(i) checks drawn on or (ii) wire transfers from a domestic bank selected by the Liquidating Trustee. In the case of foreign creditors, Cash payments may be made, at the option of the Liquidating Trustee, in such funds and by such means as are necessary or customary in a particular jurisdiction.

**F.      Interest on Claims**

Unless otherwise specifically provided for in this Plan or the Confirmation Order, or required by applicable bankruptcy law, post-petition interest shall not accrue or be paid on any Claims, and no Claimholder shall be entitled to interest accruing on or after the Petition Date on any Claim.  Interest shall not accrue or be paid upon any Disputed Claim in respect of the period from the Petition Date to the date a final Distribution is made thereon if and after such Disputed Claim becomes an Allowed Claim.

**G.      Withholding and Reporting Requirements**

In connection with this Plan and all Distributions under this Plan, the Liquidating Trustee shall, to the extent applicable, comply with all tax withholding, payment, and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all Distributions under this Plan shall be subject to any such withholding, payment, and reporting requirements.  The Liquidating Trustee shall be authorized to take any and all actions that may  be necessary or appropriate to comply with such withholding, payment, and reporting requirements. All amounts properly withheld from Distributions to a Holder as required by applicable law and paid over to the applicable taxing authority for the account of such Holder shall be treated as part of the Distributions to such Holder. All persons holding Claims shall be required to provide any information necessary to effect information reporting and withholding of such taxes.  For example, with respect to any employee-related withholding, if the Debtor is obligated by law to withhold amounts from Distributions to a present or former employee to satisfy such present or former employee's tax and other payroll obligations, the Liquidating Trustee may withhold a portion of the Distributions allocated to the Holder of an Allowed Claim that is a present or former employee, whether or not such Distributions are in the form of Cash,  in such amount as is determined necessary to satisfy such Holder's tax and other payroll obligations with respect to the Distributions.

Notwithstanding any other provision of this Plan, (a) each Holder of an Allowed Claim that is to receive a Distribution pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account

of such Distribution, and (b) no Distribution shall be made to or on behalf of such Holder pursuant to this Plan unless and until such Holder has made arrangements satisfactory to the Liquidating Trustee for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed upon the Liquidating Trustee in connection with such Distribution. Any property to be distributed pursuant to this Plan shall, pending the implementation of such arrangements, be treated as an undeliverable Distribution pursuant to Article VI.C.2 of this Plan.

### H.    Setoffs

#### 1.  By Debtor

Except as otherwise provided in the Plan,, prior to the Effective Date, and the Liquidating Trustee, on and after the Effective Date, may, pursuant to Bankruptcy Code section 553 or applicable non-bankruptcy laws, but shall not be required to, set off against any Claim, and the payments or other Distributions to be made pursuant to the Plan in respect of such Claim, Claims of any nature whatsoever that the Debtor may have against the Holder of such Claim; provided, however, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor, the Liquidating Trust, or the Liquidating Trustee of any such Claim that the Debtor may have against such Holder.

### I.    Procedure for Treating and Resolving Disputed, Contingent and/or Unliquidated Claims

#### 1.  Objection Deadline; Prosecution of Objections

Except as set forth in the Plan with respect to Administrative Claims, all objections to Claims must be filed and served on the Holders of such Claims by the Claims Objection Deadline, as the same may be extended by the Bankruptcy Court. If an objection has not been filed to a Proof of Claim or the Schedules have not been amended with respect to a Claim that (i) was Scheduled by the Debtor but (ii) was not Scheduled as contingent, unliquidated, and/or disputed, by the Claims Objection Deadline, as the same may be extended by order of the Bankruptcy Court, the Claim to which the Proof of Claim or Scheduled Claim relates will be treated as an Allowed Claim if such Claim has not been allowed earlier. Notice of any motion for an order extending the Claims Objection Deadline shall be required to be given only to those persons or entities that have requested notice in the Chapter 11 Case, or to such persons as the Bankruptcy Court shall order.

From the Confirmation Date through the Claims Objection Deadline, any party in interest, including the Liquidating Trustee, may file objections, settle, compromise, withdraw, or litigate to judgment objections to Claims. Subject to the terms of the Liquidating Trust Agreement, from and after the Effective Date, the Liquidating Trustee may settle or compromise any Disputed Claim without approval of the Bankruptcy Court. Nothing contained herein, however, shall limit the right of the Liquidating Trustee to object to Claims, if any, filed or amended after the Effective Date.

#### 2.  No Distributions on Disputed Claims

Notwithstanding any other provision of the Plan or the Liquidating Trust Agreement, no payments or Distributions shall be made with respect to all or any portion

of a Disputed Claim unless and until all objections to such Disputed Claim (except for objections based upon Bankruptcy Code section 502(d), which shall be governed by Article III.F. of this Plan) have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim; provided, however, that if the only dispute regarding a Disputed Claim is to the amount of the Disputed Claim, the Holder of a Disputed Claim shall be entitled to a Distribution on account of that portion of the Disputed Claim which the Debtor or the Liquidating Trustee do not dispute at the time and in the manner that the Liquidating Trustee makes Distributions to Holders of Allowed Claims pursuant to the provisions of the Plan.

### 3. Distributions on Allowed Claims

Payments and Distributions from the Liquidating Trust to each respective Claimholder on account of a Disputed Claim, to the extent that it ultimately becomes an Allowed Claim, shall be made in accordance with provisions of the Plan that govern Distributions to such Claimholders. Except as otherwise provided in the Plan, on the earlier of (a) the Distribution Date following the date when a Disputed Claim becomes an Allowed Claim or (b) ninety (90) days after such Disputed Claim becomes an Allowed Claim, the Liquidating Trustee will distribute to the Claimholder any Cash from the Liquidating Trust that would have been distributed on the dates Distributions were previously made to Claimholders had such Allowed Claim been an Allowed Claim on such dates.

All Distributions made under this Article of the Plan on account of an Allowed Claim will be made together with any dividends, payments, or other Distributions made on account of, as well as any obligations arising from, the distributed property as if such Allowed Claim had been an Allowed Claim on the dates Distributions were previously made to Holders of Allowed Claims included in the applicable Class.

### 4. De Minimis Distributions

Except as otherwise provided in the Plan, the Liquidating Trustee shall not have any obligation to make a Distribution on account of an Allowed Claim if the amount to be distributed to the specific Holder of the Allowed Claim on the particular Periodic Distribution Date does not constitute a final Distribution to such Holder and such Distribution has a value less than $10.00. The Liquidating Trustee shall have no obligation to make any Distribution on Claims Allowed in an amount less than $500.00.

### J. Fractional Dollars

Any other provision of this Plan notwithstanding, the Liquidating Trustee shall not be required to make Distributions or payments of fractions of dollars. Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down.

### K. Allocation of Plan Distributions Between Principal and Interest

To the extent that any Allowed Claim entitled to a Distribution under this Plan is composed of indebtedness and accrued but unpaid interest thereon, such Distribution shall,

for all income tax purposes, be allocated to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest.

### L. Distribution Record Date

The Liquidating Trustee will have no obligation to recognize the transfer of or sale of any participation in any Allowed Claim that occurs after the close of business on the Distribution Record Date, and will be entitled for all purposes herein to recognize, deal with and distribute only to those Holders of Allowed Claims who are record Holders of such Claims, or participants therein, as of the close of business on the Distribution Record Date, as stated on the official claims register.


# ARTICLE VII
# TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A. Rejected Contracts and Leases

Except as otherwise provided in the Confirmation Order, the Plan, or any other Plan Document, and with the explicit exception for all agreements of 88 Washington Place Condominium governing each unit of the Premises, none of which are being assumed, rejected, or otherwise affected by Confirmation of the Plan, the Confirmation Order shall constitute an order under Bankruptcy Code section 365 rejecting all prepetition executory contracts and unexpired leases to which Debtor is a party, to the extent such contracts or leases are executory contracts or unexpired leases, on and subject to the occurrence of the Effective Date, unless such contract or lease (a) previously shall have been assumed, assumed and assigned, or rejected by the Debtor, (b) previously shall have expired or terminated pursuant to its own terms before the Effective Date, or (c) is the subject of a pending motion to assume or reject on the Confirmation Date.

### B. Bar to Rejection Damages

If the rejection of an executory contract or unexpired lease pursuant to Article VII.A. above gives rise to a Claim by the other party or parties to such contract or lease, such Claim shall be forever barred and shall not be enforceable against the applicable Debtor or its Estate, the Liquidating Trust, or their respective successors or properties unless a Proof of Claim is filed and served on the Liquidating Trust and counsel for the Liquidating Trustee within thirty (30) days after service of a notice of the Effective Date or such other date as is prescribed by the Bankruptcy Court.

### C. Assumed and Assigned Contracts and Leases

Except as otherwise provided in the Confirmation Order, the Plan, or any other Plan Document entered into after the Petition Date or in connection with the Plan, the Confirmation Order shall constitute an order under Bankruptcy Code section 365 assuming, as of the Effective Date the following executory contacts:

1. None.

# ARTICLE VIII
## CONFIRMATION AND CONSUMMATION OF THE PLAN

**A.      Conditions to Confirmation**

The following are conditions precedent to the occurrence of the Confirmation Date:

1.   A Final Order finding that the Disclosure Statement contains adequate information pursuant to Bankruptcy Code section 1125 shall have been entered by the Bankruptcy Court;

2.   A proposed Confirmation Order in form and substance, reasonably acceptable to the Plan Proponent; and

3.   Approval of all provisions, terms, and conditions hereof in the Confirmation Order.

**B.      Conditions to Effective Date**

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in writing in accordance with Article VIII.C.:

1.   The Confirmation Order shall have been entered and become a Final Order and shall provide that the Debtor, the Liquidating Trust, and the Liquidating Trustee are authorized and directed to take all actions necessary or appropriate to enter into, implement and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan or effectuate, advance, or further the purposes thereof;

2.   All Plan Exhibits shall be, in form and substance, reasonably acceptable to the Plan Proponent, and shall have been executed and delivered by all parties' signatory thereto;

3.   The Debtor shall be authorized and directed to take all actions necessary or appropriate to enter into, implement and consummate the contracts, instruments, releases, leases, indentures, and the agreements or documents created in connection with, and expressly provided for under, the Plan; and

4.   All other actions, documents, and agreements necessary to implement the Plan shall have been effected or executed.

**C.      Waiver of Conditions**

Each of the conditions set forth in Articles VIII.A and VIII.B of the Plan may be waived in whole or in part by the Plan Proponent. The failure to satisfy or waive any condition to the Effective Date may be asserted by the Plan Proponent regardless of the circumstances giving rise to the failure of such condition to be satisfied. The failure of a party to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

**D.      Consequences of Non-Occurrence of Effective Date**

In the event that the Effective Date does not timely occur, the Plan Proponent reserve all rights to seek an order from the Bankruptcy Court directing that the Confirmation Order be vacated, that the Plan be null and void in all respects, and/or that any settlement of Claims provided for in the Plan be null and void. In the event that the Bankruptcy Court shall enter an order vacating the Confirmation Order, the time within which the Debtor may assume and assign or reject all executory contracts and unexpired leases not previously assumed, assumed and assigned, or rejected, shall be extended for a period of thirty (30) days after the date the Confirmation Order is vacated, without prejudice to further extensions.

# ARTICLE IX
# ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE CLAIMS

### A. Professional Fee Claims

#### 1. Final Fee Applications

The Final Fee Applications must be filed no later than ten (10) days after the Effective Date. Objections, if any, to Final Fee Applications of such Professionals must be filed and served on the Liquidating Trustee and its respective counsel, the requesting Professional and the Office of the Trustee no later than fifteen (15) days from the date on which each such Final Fee Application is served and filed. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Bankruptcy Court, the allowed amounts of such Professional Fee Claims shall be determined by the Court.

#### 2. Employment of Professionals after the Effective Date

Except as otherwise provided for in the Liquidating Trust Agreement, from and after the Effective Date, any requirement that Professionals comply with Bankruptcy Code sections 327 through 331 or any order previously entered by the Bankruptcy Court in seeking retention or compensation for services rendered or expenses incurred after such date shall terminate.

### B. Substantial Contribution Compensation and Expenses Bar Date

Any Person who wishes to make a Substantial Contribution Claim based on facts or circumstances arising after the Petition Date, must file an application with the clerk of the Court, on or before the Final Administrative Claims Bar Date, and serve such application on counsel for the Plan Proponent and as otherwise required by the Court and the Bankruptcy Code on or before the Final Administrative Claims Bar Date, or be forever barred from seeking such compensation or expense reimbursement. Objections, if any, to the Substantial Contribution Claim must be filed no later than the Administrative Claims Objection Deadline, unless otherwise extended by Order of the Court.

### C. Other Administrative Claims

All other requests for payment of an Administrative Claim arising up to and through the Effective Date, other than Professional Fee Claims, must be filed with the Court and served on counsel for the Plan Proponent no later than the Final Administrative

Claims Bar Date. Unless the Liquidating Trustee or any other party in interest objects to an Administrative Claim by the Administrative Claims Objection Deadline, such Administrative Claim shall be deemed allowed in the amount requested. In the event that the Liquidating Trustee or any other party in interest objects to an Administrative Claim, the Bankruptcy Court shall determine the allowed amount of such Administrative Claim.


# ARTICLE X
# EFFECT OF PLAN CONFIRMATION

### A.    Binding Effect

This Plan shall be binding upon and inure to the benefit of the Debtor, all present and former Holders of Claims and Interests, and their respective successors and assigns, including, but not limited to, the Liquidating Trust and the Liquidating Trustee.


### B.    Injunction

Except as otherwise provided in the Plan, including, but not limited to, all rights held by 88 Washington Place Condominium that are not explicitly modified in this Plan, the Confirmation Order shall provide, among other things, that from and after the Effective Date all Persons who have held, hold or may hold Claims against the Debtor are permanently enjoined from taking any of the following actions against the Estate, the Liquidating Trust, the Liquidating Trustee, or any of their property on account of any such Claims: (A) commencing or continuing, in any manner or in any place, any action or other proceeding; (B) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order; (C) creating, perfecting, or enforcing any lien or encumbrance; (D) asserting a setoff, right of subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtor; and (E) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; provided, however, that nothing contained herein shall preclude such Persons from exercising their rights pursuant to and consistent with the terms of this Plan or the Confirmation Order.

All Persons, including but not limited to the Debtor, and excluding 88 Washington Place Condominium, are enjoined from using, possessing, accessing, or making any use whatsoever of the Business Assets, except as provided in this Plan.

### C.    Term of Bankruptcy Injunction or Stays

All injunctions or stays imposed  in the Chapter 11 Case under Bankruptcy Code section 105 or 362and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.  Upon the Effective Date, the injunction provided in Article X.B. shall apply.

### D.    Satisfaction of Subordination Rights

All Claims against the Debtor and all rights and claims between or among

Claimholders relating in any manner whatsoever to Distributions on account of Claims against or Interests in the Debtor, based upon any subordination rights, whether asserted or unasserted, legal or equitable, shall be deemed satisfied by the Distributions under the Plan to Claimholders or Interest Holders having such subordination rights, and such subordination rights shall be deemed waived, released, and terminated as of the Effective Date. Distributions to the various Classes of Claims hereunder shall not be subject to levy, garnishment, attachment, or like legal process by any Claimholder or Interest Holder by reason of any subordination rights or otherwise, so that, each Claimholder shall have and receive the benefit of the Distributions in the manner set forth in the Plan.

### E.    Exculpation and Limitation of Liability

Effective as of the Effective Date, to the fullest extent permissible under applicable law and except as otherwise specifically provided in the Plan, DCC is hereby released and exculpated from any claim, obligation, Cause of Action, or liability for any act taken or omission occurring on or after the Petition Date related to formulating, preparing, disseminating, implementing, confirming, consummating (including soliciting acceptances or rejections thereof); provided that DCC shall not be exculpated for any intentional wrongful conduct or grossly negligent conduct.

Indemnification Obligations

Except as otherwise provided in this Plan or any contract, instrument, release, or other agreement or document entered into in connection with this Plan, any and all indemnification obligations that the Debtor has pursuant to a contract, instrument, agreement, certificate of incorporation, by-law, comparable organizational document or any other document, or applicable law shall be rejected as of the Effective Date, to the extent executory.


### ARTICLE XI
### RETENTION OF JURISDICTION

Under Bankruptcy Code sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order, substantial consummation of the Plan and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

A.    Allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim, the resolution of any objections to the allowance or priority of Claims or Interests and the determination of requests for the payment of claims entitled to priority under Bankruptcy Code section 507(a)(1), including compensation of any reimbursement of expenses of parties entitled thereto;

B.    Hear and determine all applications for compensation and reimbursement of

expenses of Professionals under the Plan or under Bankruptcy Code sections 330, 331, 503(b), 1103, and 1129(a)(4);

C.    Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

D.    Effectuate performance of and payments under the provisions of the Plan;

E.    Hear and determine any and all adversary proceedings, motions, applications and contested or litigated matters arising out of, under or related to the Chapter 11 Case, the Plan or the Liquidating Trust Agreement;

F.    Enter such orders as may be necessary or appropriate to execute, implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

G.    Hear and determine disputes arising in connection with the interpretation, implementation, consummation or enforcement of the Plan, including disputes arising under agreements, documents or instruments executed in connection with the Plan;

H.    Consider any modifications of the Plan, cure any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

I.    Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with implementation, consummation, or enforcement of the Plan or the Confirmation Order;

J.    Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified or vacated;

K.    Hear and determine any matters arising in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

L.    Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Case;

M.    Except as otherwise limited herein, recover all Business Assets of the Debtor and property of the Estate, wherever located;

N.    Hear and determine matters concerning state, local and federal taxes in  accordance with Bankruptcy Code sections 346, 505 and 1146;

O.    Hear and determine all matters related to the property of the Estate from

and after the Confirmation Date;

P.    Hear and determine the Causes of Action;

Q.    Hear and determine all disputes involving the existence, nature or scope of the injunctions, indemnification, exculpation and releases granted pursuant to this Plan;

R.    Hear and determine all matters related to (i) the property of the Estate from and after the Confirmation Date, (ii) the winding up of the Debtor's affairs, and (iii) the activities of the Liquidating Trust and/or the Liquidating Trustee, including
(A) challenges to or approvals of the Liquidating Trustee's activities, (B) resignation, incapacity or removal of the Liquidating Trustee and successor Liquidating Trustees, (C) reporting by, termination of and accounting by the Liquidating Trustee, and (D) release of the Liquidating Trustee from its duties;

S.    Hear and determine disputes with respect to compensation of the Liquidating Trustee and the Liquidating Trustee Professionals;

T.    Hear and determine all disputes involving the existence, nature and/or scope of the injunctions and releases provided herein, including any dispute relating to any liability arising out of any termination of employment or the termination of any employee or retiree benefit provision, regardless of whether such termination occurred prior to or after the Effective Date;

U.    Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

V.    Enforce all orders previously entered by the Bankruptcy Court;

W.    Dismiss the Chapter 11 Case; and

X.    Enter a final decree closing the Chapter 11 Case.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

### A.    Modifications and Amendments

The Plan Proponent may alter, amend, or modify the Plan or any Exhibits thereto under Bankruptcy Code section 1127(a) at any time prior to the Confirmation Date. After the Confirmation Date and prior to substantial consummation of the Plan as defined in Bankruptcy Code section 1101(2), the Plan Proponent may, under Bankruptcy Code section 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, and such matters as may be necessary to carry out the purpose and effect of the Plan so long as such proceedings do not adversely affect the treatment of Holders of Claims under the Plan; provided, however, that prior notice of such proceedings

shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

### B. Severability of Plan Provisions

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, then the Bankruptcy Court, at the request of the Plan Proponent, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### C. Successors and Assigns

The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of that Person.

### D. Payment of Statutory Fees

All fees then due and payable pursuant to 28 U.S.C. § 1930, as determined by the Court at the Confirmation Hearing, shall be paid on or before the Effective Date by the Debtor. All such fees that become due and payable thereafter by a Debtor shall be paid by the Liquidating Trustee. The Liquidating Trustee shall pay quarterly fees to the Trustee until the Chapter 11 Case is closed or converted and/or the entry of final decrees.

### E. Revocation, Withdrawal or Non-Consummation

The Plan Proponent reserves the right to revoke or withdraw the Plan as to the Debtor prior to the Confirmation Date and to file subsequent plans. If the Plan Proponent revokes or withdraws the Plan as to the Debtor, or if Confirmation or consummation of the Plan as to the Debtor does not occur, then, with respect to Debtor, (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of executory contracts or leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void, and (c) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, Debtor or any other Person, (ii) prejudice in any manner the rights of such Debtor or any other Person, or (iii) constitute an admission of any sort by Debtor or any other Person.

### F. Service of Documents

Any notice, request or demand required or permitted to be made or provided to or upon Debtor, and/or the Liquidating Trustee under the Plan shall be (a) in writing, (b) served by (i) certified mail, return receipt requested, (ii) hand delivery, (iii) overnight

delivery service, (iv) first class mail, or (v) facsimile transmission, (c) deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, and (d) addressed as follows:

***The Debtor:***

Nuovo Ciao-Di LLC
80 Washington Pl.
New York, NY 10011-9116

with a copy to:

Bruce Bronson, Esq.
Bronson Law Offices P.C.
480 Mamaroneck Ave.
Harrison, NY 10528

***The Plan Proponent:***

Jeremy S. Friedberg, Esq.
Friedberg PC
10045 Red Run Blvd., Suite 160
Baltimore, MD 21117

***The Liquidating Trust/The Liquidating Trustee:***

George Shoup
6375 Riverside Drive, Suite 200
Dublin, Ohio 43017-5373

### G.  Plan Supplement(s)

Exhibits to the Plan not attached hereto shall be filed in one or more Plan Supplements by the Exhibit Filing Date. Any Plan Supplement (and amendments thereto) filed by the Plan Proponent shall be deemed an integral part of the Plan and shall be incorporated by reference as if fully set forth herein. Substantially contemporaneously with their filing, the Plan Supplements may be viewed at the office of the clerk of the Bankruptcy Court or its designee during normal business hours, by visiting the Court's website at https://www.nysb.uscourts.gov/ (PACER account required). Holders of Claims may obtain a copy of any Plan Supplements upon reasonable written request to the Plan Proponent's counsel. The documents contained in any Plan Supplements shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.

### H.  Plan Exhibits

Any and all Plan Exhibits, or other lists or schedules not filed with the Plan shall be filed with the Clerk of the Bankruptcy Court at least five (5) Business Days prior to date of

the commencement of the Confirmation Hearing. Upon such filing, such documents may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours. Holders of Claims or Interests may obtain a copy of any such document upon written request to the Debtor in accordance with Article XII.F. of the Plan.

### I.  Tax Reporting And Compliance

The Liquidating Trustee is hereby authorized, on behalf of each of the Debtor, to request an expedited determination under Bankruptcy Code section 505(b) of the tax liability of the Debtor for all taxable periods ending after the Petition Date through and including the Effective Date.

### J.  Filing Of Additional Documents

On or before substantial consummation of this Plan, the Debtor shall file such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

### K.  The Plan Controls

In the event that there is any inconsistency between the Disclosure Statement, the Plan, the Liquidating Trust Agreement, or the Confirmation Order, the Plan shall control.

DCC VIGILANT, LLC
PLAN PROPONENT

By: /s/ Jeremy S. Friedberg
Jeremy S. Friedberg
10045 Red Run Boulevard, Suite 160
Baltimore, MD 21117
Telephone: (410) 581-7400
Email: jeremy@friedberg.legal

*Counsel for DCC Vigilant, LLC*

**Exhibit A**
**Liquidating Trust**
**Agreement**

# LIQUIDATING TRUST AGREEMENT

This Liquidating Trust Agreement ("Agreement") is made effective as of ____ ___, 2023, by and among Nuovo Ciao-Di LLC ("Debtor"), debtor and debtor-in-possession in the Chapter 11 in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") with a caption of In re Nuovo Ciao-Di LLC, Case Number 23-10068 (JPM), and George Shoup as the Plan Trustee ("Plan Trustee") and the Oversight Committee.

## RECITALS:

This Liquidating Trust Agreement is made and entered into pursuant to the terms and provisions of the Plan of Liquidation of Nuovo Ciao-Di LLC, dated [DATE] (as modified and amended, the "Plan") and the order of the Bankruptcy Court, entered in the Debtor's case under Chapter 11 of Title 11 U.S.C. confirming the Plan, authorizing this Agreement and the appointment of the Plan Trustee. All terms defined in the Plan shall have the same meaning when used herein unless otherwise defined herein or unless the context hereof clearly requires otherwise. Terms which are defined in the Bankruptcy Code and are not otherwise defined in the Plan or herein shall have the definition ascribed to them by the Bankruptcy Code. All applicable terms and provisions of the Plan are incorporated herein by this reference and the parties to this Agreement shall be bound by such terms and provisions.

The primary purpose of this Liquidating Trust is to liquidate the Liquidating Trust Assets for the benefit of the Holders in the estate (which estate continues after the Confirmation Date) in accordance with Treas. Reg. § 301.7701-4(a) and (d) and the Plan. Among the Liquidating Trust Assets are the Cause of Actions together with the Proceeds therefrom. Such Cause of Actions are specifically retained pursuant to the provisions of § 1123(a)(5) and § 1123(b)(3)(B) of the Bankruptcy Code and such actions shall be prosecuted, administered and/or otherwise resolved for the benefit of the Holders by the Plan Trustee, with the advice and the consent of the Oversight Committee as provided in the Plan, and as the duly appointed representative of the Holders, appointed by the Bankruptcy Court in the Confirmation Order for the purpose of pursuing the Cause of Actions. Investigation of additional Cause of Actions is continuing and any creditor who received a transfer of property during relevant statutory periods pre-petition should assume that they may be the subject of a future Cause of Action and that the Plan Trustee shall pursue any such Cause of Action it believes to be meritorious for the benefit of the Holders and for distribution of the Proceeds of such Cause of Actions to such Holders pursuant to the terms of the Plan. Under no circumstances shall the Plan Trustee have any power to engage in any trade or business or any other activity except as specifically provided herein or in the Plan or such as is otherwise reasonably necessary and advisable for the orderly liquidation and distribution of the Liquidating Trust Assets.

## DECLARATION OF TRUST

**NOW, THEREFORE**, in order to declare the terms and conditions hereof, and in consideration of the premises, of the due acceptance of and confirmation of the Plan pursuant to § 1126 of the Bankruptcy Code, of the sum of One Dollar ($1.00) to it duly paid by the Plan Trustee at the execution hereof and for other good and valuable consideration, the receipt of which is hereby acknowledged, the parties hereto have executed this Agreement and the Holders hereby vest in the Plan Trustee and its successors in trust, its successors and assigns, all right, title and interest in the Liquidating Trust Assets, including, without limitation, the right to receive, hold, pursue, liquidate and distribute all or any portion of the Liquidating Trust Assets as set forth herein and in the Plan.

To have and to hold the Liquidating Trust Assets unto the Plan Trustee and its successors

in trust and its successors and assigns forever; in trust under and subject to the terms and conditions set forth herein and in the Plan and for the benefit of the Holders, each of which shall be treated as the grantors and deemed owners of this Liquidating Trust; provided, however, upon the final liquidation of all of the assets of the Liquidating Trust in accordance with the terms and conditions of this Agreement and the Plan, this Agreement shall cease, terminate and be of no further force and effect. Further provided, however, that the Liquidating Trust shall not remain in existence more than one (1) year from the date of this Agreement. If warranted by the facts and circumstances provided for in the Plan, and subject to the approval of the Court, upon request of the Plan Trustee, with the advice and consent of the Oversight Committee, and upon a finding that the extension is necessary for the purpose of the Liquidating Trust, the term of the Liquidating Trust may be extended for a finite period based on the particular circumstances. Each extension must be approved by the Court prior to the beginning of the extended term. In no event shall the existence of the Liquidating Trust exceed five (5) years.

It is hereby further covenanted and declared that the assets of the Liquidating Trust are to be held, administered and applied by the Plan Trustee subject to the further covenants, conditions and terms hereinafter set forth and set forth in the Plan.

The foregoing grants, assignments, transfers and conveyances are in trust for the benefit of the Holders and are subject to the terms of this Agreement and the provisions of the Plan applicable to the Liquidating Trust. For tax purposes, this transfer will be treated as a deemed transfer to the Holders followed by a deemed transfer by the Holders to the Liquidating Trust, in accordance with the provisions of Revenue Procedure 94-45, 1994-2 C.B. ¶ 684. For federal tax purposes, this transaction should be treated as the Debtor satisfying its debt to the particular creditor for an amount equal to the Allowed Claim of such Holder. With respect to the Debtor, this transaction may create income from the cancellation of indebtedness (COD) pursuant to Internal Revenue Code (IRC) Section 108 or gain or loss from the sale or exchange of property. The tax characterization of the transaction will depend on the fair market value of the property transferred, the Debtor's adjusted tax basis in the property, and whether the creditor's claim was a recourse or non-recourse liability. The creditor's adjusted basis in the property deemed transferred should be equal to the Allowed Claim of the Holder on the date of the deemed transfer.

With respect to the Debtor, there is an exclusion for gross income from cancellation of debt if the discharge occurs in a title 11 case pursuant to IRC Section 108(a)(1)(A). However, pursuant to IRC Sec. 108(b)(1), the Debtor is required to reduce its tax attributes (i.e., net operating losses, credits, etc.) in the specified order outlined in IRC Sec. 108(b)(2) by the amount of gross income excluded by the title 11 exception outlined in IRC Sec. 108(a)(1)(A).

Pursuant to Revenue Procedure 94-45, the beneficiary-creditors are treated as transferring to the liquidating trust the property deemed received from the Debtor's estate. This should be treated as a nontaxable transaction. Consequently, the adjusted tax basis of such property to the liquidating trust should be equal to the adjusted tax basis of such property in the hands of the beneficiary- creditor (i.e., the amount of the Allowed Claim of the Holder on the date of the deemed transfer).

The Liquidating Trust created by this Agreement is intended: (i) as a trust governed and construed in all respects as a liquidating trust pursuant to Section 301.7701-4(d) of the United States Treasury Regulations and as a grantor trust in favor of the Holders pursuant to Section 1.671-4(a) thereof, and (ii) to comply with the requirements of a liquidating trust, which is a grantor trust, as set forth in Revenue Procedure 94-45, 1994-2 C.B. 684.

## ARTICLE II
## TRUSTEE'S ACCEPTANCE OF ASSETS; AGREEMENT TO PERFORM OBLIGATIONS AS TRUSTEE AND OVERSIGHT COMMITTEE

**2.1** **Acceptance.** The Plan Trustee accepts the trust imposed upon the Plan Trustee by this Agreement, and agrees to observe and perform that Trust, upon and subject to the terms and conditions set forth herein and in the Plan.

**2.2** **Agreement to Perform Obligations.** The Plan Trustee and the Members of the Oversight Committee hereby promise and agree to undertake and perform the respective obligations created hereunder and the respective obligations to be performed by the Plan Trustee and the Oversight Committee under the Plan.

## ARTICLE III
## POWERS OF THE TRUSTEE AND OVERSIGHT COMMITTEE

**3.1** **Title.** Legal title to all of the Liquidating Trust Assets shall be vested in the Plan Trustee.

**3.2** **General Powers of Plan Trustee and Oversight Committee.** Except as may be otherwise provided in this Agreement or in the Plan, and subject to the retained jurisdiction of the Bankruptcy Court, and the advice and consent of the Oversight Committee as provided in the Plan, the Plan Trustee shall have, without prior or further authorization, control and authority over the Liquidating Trust Assets, over the administration and disposition thereof, and over the supervision and conduct of the Liquidating Trust to the same extent as if the Plan Trustee were the sole owner thereof in its own right; but at all times the Liquidating Trust Assets be held for the benefit of the Holders consistent with the terms of the Plan. No person dealing with this Liquidating Trust shall be obligated to inquire as to the authority of the Plan Trustee in connection with the acquisition, administration or disposition of assets which comprise the Liquidating Trust. In connection with the administration and use of the Liquidating Trust Assets, the Plan Trustee's powers, except as otherwise expressly limited by the Plan or in this Agreement, shall include, but shall not be limited to, the following: (i) to accept the Liquidating Trust Assets; (ii) to distribute Liquidating Trust Assets and Proceeds to the Holders strictly in accordance with the terms of the Plan and this Agreement; (iii) to endorse the payment of notes or other obligations of any person or to make contracts with respect thereto; (iv) to appoint, engage, or employ such persons or firms, including accountants, attorneys or other professionals, as the Plan Trustee shall deem necessary; (v) to perform all obligations as set forth in the Plan and this Agreement; and (vi) to engage in all acts consistent with the performance of the obligations of a trustee under a trust of this type. In addition, the Plan Trustee shall have the power to engage in any additional acts not specifically enumerated or excluded herein, provided that such proposed acts are in the furtherance of the purposes for which this Liquidating Trust has been created.

The Oversight Committee shall provide advice and consent to the Plan Trustee as set forth in the Plan. The Oversight Committee shall consist of the following Members: Jonathan Bodner, Jeremy Friedberg, and Bruce Bronson (the "Members"). Further, the following actions are subject to the advice and consent of the Oversight Committee in accordance with the following procedures. The Plan Trustee shall provide written notice by e-mail of each of the following proposed actions to each Member (a "Proposed Action"):

1. Any sale(s), disposition(s) or distribution(s) of any Liquidating Trust Assets or Distributable Assets in excess of $25,000;
2. Any distributions to be made under the Plan in excess of $25,000;
3. Approval of budgets and amount of reserves to be held by Trustee;
4. The Plan Trustee's employment of any additional professionals;
5. Any tax payments, withholdings, filings and elections;
6. Any objections to and/or settlements of Claims or Interests in excess of $25,000;
7. Any prosecution and/or non-prosecution and/or settlement of any adversary proceeding, contested matter or other litigation proposed or undertaken by the Plan Trustee, including but not limited to the Litigation Claims and the Cause of Actions/Preserved Causes of Action in excess of $25,000;
8. Any proposed post confirmation modifications of the Plan;
9. Any designation of a successor to serve as Plan Trustee;
10. Any payment of professional compensation and expenses;
11. Any extension of the term of existence for the Liquidating Trust; and,
12. Any additional acts not specifically enumerated or excluded herein.

Thereafter, each Member shall have seven (7) days (the "Objection Deadline") after service of the Proposed Action to review the Proposed Action. In the event that a Member has an objection to the Proposed Action, the Member shall object in writing by e-mail to the Plan Trustee so that the objection is received prior to the expiration of the Objection Deadline (an "Objection"), with a copy of the Objection sent to the remaining Members and the Plan Trustee.

In the event that there is no timely Objection, the Plan Trustee shall advise the Oversight Committee that no timely Objection was received and the Plan Trustee may proceed with the Proposed Action without further notice to or consultation with the Oversight Committee.

In the event that there is a timely Objection, the Plan Trustee and the objecting Member shall promptly consult with each other to attempt to resolve the Objection. In the event that an Objection relates to any professional fee invoice, the uncontested portion of that invoice shall be paid, notwithstanding the pending Objection.

If the Plan Trustee is unable to resolve the Objection, the Oversight Committee shall meet telephonically within five (5) business days and consider the Proposed Action and the Objection. At that meeting, each Member shall be entitled to one vote and any action of the Oversight Committee shall require a unanimous vote. In the event that a Member still has an Objection to the Proposed Action and the Plan Trustee wishes to proceed with the course of action, the Plan Trustee shall bring a motion before the Bankruptcy Court for the Bankruptcy Court to decide the matter. The outcome of such vote or determination by the Bankruptcy Court shall be binding on the Plan Trustee..

In addition to the Proposed Action procedures set forth above, the Plan Trustee shall furnish to the Oversight Committee, as soon as practical after the end of each calendar quarter, a cash reconciliation statement and a report on all Disputed Claims resolved and all Liquidating Trust Assets disposed of during the preceding calendar quarter.

The Bankruptcy Court shall retain exclusive jurisdiction to resolve any disputes between the Plan Trustee and the Oversight Committee or between any Members of the Oversight Committee.

**3.3** **Operation of Trust.** The Plan Trustee shall distribute at least annually to the Holders the Liquidating Trust's net income plus all net proceeds from the Disposition of assets

pursuant to the Plan, except that the Liquidating Trust may retain an amount of net proceeds or net income reasonably necessary, in the Plan Trustee's reasonable discretion, to maintain the value of its assets or to meet claims and contingent liabilities (including disputed claims). In addition, the Plan Trustee will make continuing efforts to dispose of the Liquidating Trust Assets, make timely distributions pursuant to the Plan, and not unduly prolong the duration of the Liquidating Trust. The Plan Trustee shall pay all post-confirmation fees owed to the United States Trustee, shall prepare and file quarterly post-confirmation reports and shall perform all other reporting duties as provided by the Bankruptcy Code and applicable law.

**3.4    Limitation of Trustee.**    To comply with IRS requirements and without limiting the generality of the foregoing Sections 3.2 and 3.3, the Plan Trustee shall not permit the Liquidating Trust to hold any operating assets of a going business, a partnership interest in a partnership that holds operating assets, or 50% or more of the stock of a corporation with operating assets.  In addition, the Plan Trustee shall not permit the Liquidating Trust to receive transfers of listed stocks or securities or other readily marketable assets, and the Trust is not permitted to receive or retain cash or cash equivalents in excess of a reasonable amount to meet claims and contingent liabilities (including disputed claims) or to maintain the value of the assets during liquidation.  The investment powers of the Plan Trustee, other than those reasonably necessary to maintain the value of the assets and to further the liquidating purpose of the Liquidating Trust, are limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary, liquid investments, such as Treasury bills.

**3.1    Retention of Attorney and Accountants.**    Without limiting them Plan Trustee's or the Oversight Committee's powers under the Plan, the Plan Trustee and the Oversight Committee shall retain the firm of [COUNSEL] or other counsel, and qualified accountants, to perform such services as are necessary or appropriate in connection with the administration of this Liquidating Trust.

**ARTICLE IV**
**THE TRUSTEE AND THE OVERSIGHT COMMITTEE –**
**RESIGNATION, REMOVAL, TRUST CONTINUANCE, COMPENSATION,**
**STANDARD OF CARE, RELIANCE BY TRUSTEE**

**4.1 Resignation.**    The Plan Trustee may resign by an instrument in writing signed by it and filed with the Bankruptcy Court provided that the Plan Trustee shall continue to serve as Plan Trustee after its resignation until the appointment of a successor Plan Trustee shall become effective in accordance with Section 4.3 or the Bankruptcy Court shall otherwise order.

A Member of the Oversight Committee may resign by an instrument in writing signed by the Member and filed with the Bankruptcy Court.  In the event of a resignation, the remaining Members of the Oversight Committee shall designate a successor.  Until such vacancy is filled,

the Oversight Committee shall function with such reduced number.

**4.2 <u>Removal.</u>** Any party in interest can seek to remove the Plan Trustee or Member of the Oversight Committee for cause by filing a motion with the Bankruptcy Court seeking that relief. For the purpose of this paragraph, "cause" shall mean (i) any material breach by such party of their obligations under this Agreement, or (ii) the commission of any act of fraud, theft or financial dishonesty by such party.

**4.3 <u>Appointment of Successor Trustee.</u>** In the event of the resignation of the Plan Trustee, the Oversight Committee may designate a successor Plan Trustee with such appointment effective upon the Bankruptcy Court's approval thereof. In the event of the death, resignation, incompetency, total disability or removal of the Plan Trustee, the Bankruptcy Court shall have the authority, to appoint a successor Plan Trustee. Such appointment may specify the date on which such successor Plan Trustee appointed hereunder shall execute, acknowledge and deliver to the Bankruptcy Court and to the departing Plan Trustee an instrument accepting such appointment, and thereupon the resignation or removal of the departing Plan Trustee shall become effective and such successor Plan Trustee, without any further act, deed or conveyance, shall become vested with all the rights, powers, trusts and duties of the departing Plan Trustee.

**4.4 <u>Trust Continuance.</u>** The resignation or removal of the Plan Trustee or any Member of the Oversight Committee shall not operate to terminate the Liquidating Trust created by this Agreement or to revoke any existing agency relationship created pursuant to the terms of this Agreement or invalidate any action theretofore taken by the Plan Trustee, such Plan Trustee shall promptly execute and deliver such documents, instruments and other writings as may be reasonably requested by the successor Plan Trustee to effect the termination of the Plan Trustee's capacity under this Agreement and the vesting of the Liquidating Trust Assets then held by the Plan Trustee to his successor; deliver to the successor Plan Trustee all documents, instruments, records and other writings related to the Liquidating Trust as may be in the possession of the Plan Trustee; and otherwise assist and cooperate in effecting the assumption of its obligations and functions by such successor Plan Trustee.

**4.5 <u>Compensation.</u>** The Plan Trustee and any successors shall be entitled to compensation at their standard hourly rates and reimbursement of expenses from the Liquidating Trust Assets.

**4.6 <u>Reliance by Trustee</u>.** The Plan Trustee may rely, and shall be fully protected in acting upon, any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document which it, in good faith, believes to be genuine

and has been signed or presented by the proper party or parties or, in the case of cables, telecopies and telexes, to have been sent by the proper party or parties. In the absence of bad faith, willful misfeasance, gross negligence, or willful disregard of its duties, the Plan Trustee may conclusively rely as to the truth of statements and correctness of the opinions expressed therein. The Plan Trustee may consult with counsel and any opinion of counsel shall be full and complete authorization and protection in respect of any action taken or suffered by him in accordance therewith. The Plan Trustee shall have the right at any time to seek instructions concerning the administration, management or disposition of the Liquidating Trust Assets from the Bankruptcy Court.

**4.7 <u>Standard of Care</u>**. The Plan Trustee and the Members of the Oversight Committee, their respective professionals, and the firms with which the Members are associated (currently, Bodner Law PLLC, Friedberg PC, and Bronson Law Offices, P.C.) ("Member Firms"), shall not be personally liable to the Liquidating Trust or the Holders, except for such of its/his own acts as shall constitute bad faith, gross negligence, willful misconduct, or willful disregard of its/his duties, as determined by the Bankruptcy Court; provided, however, no Member of the Oversight Committee or Member Firm shall be liable for any action taken in the interest of a legal client whose interest conflicts with any other Holder and nothing herein shall be construed as imposing on the Members of the Oversight Committee, their Member Firms, or a client they may represent, any fiduciary duties to the Holders as a result of such Member's service on the Oversight Committee. Except as aforesaid, the Plan Trustee, the Members of the Oversight Committee and the Member Firms, and their respective employees, professionals, agents and representatives shall be entitled to be exonerated and indemnified from time to time from the Liquidating Trust Assets against any and all losses, claims, costs, expenses and liabilities arising out of or in connection with the Liquidating Trust Assets or the affairs of this Liquidating Trust, including, but not limited to, liability for taxes and expenses (including legal fees) incurred due to the defense of any such claim. In addition, none of the above parties shall have any liability whatsoever for performance of their duties hereunder to any non-Holder.

**4.8 <u>Plan Trustee and Members of Oversight Committee Not Personally Liable Except to Trust and Holders.</u>** Any person dealing with the Plan Trustee and/or the Oversight Committee shall look only to the assets in the Liquidating Trust to satisfy any liability incurred by the Plan Trustee and/or Oversight Committee to such person in carrying out the terms of this Liquidating Trust, and the Plan Trustee and/or Oversight Committee shall have no personal or individual obligation to satisfy any such liability. Subject to the terms of this Agreement as set forth above, this provision does not diminish the liability or responsibility of the Plan Trustee and/or Oversight Committee to the Holders. No Holder shall have any right by virtue of any provision of this Agreement to institute any action or proceeding at law or in equity against any party upon or under or with respect to the trust estate.

**ARTICLE V**
**RETENTION OF JURISDICTION**

**5.1 <u>Jurisdiction.</u>** The Bankruptcy Court shall retain jurisdiction over the Liquidating Trust, the Plan Trustee, the Oversight Committee and the Liquidating Trust Assets

as provided pursuant to the Plan.

# ARTICLE VI
## TAX ISSUES

**6.1** **Required Filing.** The Plan Trustee shall prepare and file with appropriate state and federal agencies and authorities, all such documents, forms, reports and returns (including, but not limited to, state and federal income tax returns) as the Plan Trustee shall, with the advice and assistance of professionals engaged by the Plan Trustee, including but not limited to legal counsel and accountants, deem necessary, required or appropriate in connection with the creation, existence, operation or termination of the Liquidating Trust. The Plan Trustee shall file returns for the Liquidating Trust as a grantor trust pursuant to Sections 1.671-4(a) and 1.671 4(b)(3)(ii) of the United States Treasury Regulations.

**6.2** **Federal Income Tax Information.** As soon as practicable after the close of each calendar year, but in no event later than March 15th, the Plan Trustee shall mail to each Holder of record during such year, a statement showing information sufficient for each Holder to determine its share of income, deductions and credits for federal income tax purposes in accordance with §§1.671.4(a) and 1.67104(b)(3) of the United States Treasury Regulations.

**6.3** **Tax Attributes and Characteristics of the Trust.** The Holders of the Liquidating Trust shall be treated as its grantors and deemed owners. The Plan Trustee shall file tax returns for the Liquidating Trust as a grantor trust pursuant to § 1.671-4(a), or (b) as appropriate, of the United States Treasury Regulations. Accordingly, all earnings of the Liquidating Trust, including earnings retained in reserve accounts (including, without limitation, the Reserve Fund and the Retained Cash Fund), if any, will be allocated to the Holders on an annual basis and each Holder shall be responsible to report and pay the taxes due on his/its respective proportionate share of the Liquidating Trust income whether or not amounts are actually distributed by the Plan Trustee to the Holders to pay the taxes. The value of the Liquidating Trust Assets transferred into the Liquidating Trust shall be the fair market value of such Liquidating Trust Assets at the time of such transfer. The Liquidating Trust Assets transferred to the Liquidating Trust shall be valued consistently by all parties including, but not limited to, the Debtor and the Holders, and these valuations will be used for federal income tax purposes.

**6.4** **Revenue Ruling Requests.** The Plan Trustee on behalf of Holders may file a ruling request (in accordance with the procedures set forth in Revenue Procedure 94-45, 1994-2 C.B. 684) with the Internal Revenue Service to have the Liquidating Trust classified as a liquidating trust as described in Treas. Reg. § 301.7701-4(d).

# ARTICLE VII
## MISCELLANEOUS

**7.1** **Notices**. All notices, requests or other communications required or permitted to be made in accordance with this Agreement shall be in writing and shall be delivered by electronic mail, personally, or by certified United States mail, return receipt requested, postage prepaid:

If to the Plan Trustee, at:

George Shoup
Development Specialists, Inc.
6375 Riverside Drive
Suite 200

Dublin, Ohio 43017-5045
gshoup@dsi.biz
To Counsel for the Plan Trustee at:

To Members of the Oversight Committee:
Jonathan Bodner, Esq.
Bodner Law PLLC
55 Cherry Lane, # 101
Carle Place, New York 11514
jbodner@bodnerlawpllc.com

Jeremy Friedberg, Esq.
Friedberg PC
10045 Red Run Blvd., Suite 160
Baltimore, MD 21117
jeremy@friedberg.legal

Bruce Bronson, Esq.
Bronson Law Offices P.C.
480 Mamaroneck Ave.
Harrison, NY 10528
hbbronson@bronsonlaw.net

Any entity may change the address at which it is to receive notices under this Agreement by furnishing written notice pursuant to the provisions of this Section 7.1 to the entity to be charged with knowledge of such change.

**7.2** **Effectiveness.** This Agreement shall become effective upon the Effective Date of the Plan. In the event of any conflict between the terms of this Agreement and the Plan, the terms of the Plan shall control.

**7.3** **Counterparts.** This Agreement may be executed in one or more counterparts, all of which shall be taken together to constitute one and the same instrument.

**7.4** **Governing Law.** This Agreement shall be governed by, construed under and interpreted in accordance with, the laws of the State of New York. To the extent not inconsistent with the laws of the State of New York, this Agreement shall be governed by, construed under and interpreted in accordance with applicable provisions of the Internal Revenue Code and the Treasury Regulations promulgated thereunder, specifically Treas. Reg. 301.7701-4(d).

**7.5** **Headings**. Section headings, subheadings and other headings used in this Agreement are for convenience only and shall not affect the construction of this Agreement.

**7.6** **Severability.** Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall not invalidate the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable any such provision in any other jurisdiction.

**7.7** **Amendments** Upon the request of the Plan Trustee, with the advice and consent of the Oversight Committee in accordance with the Plan, this Agreement may be amended from time to time with the approval of the Bankruptcy Court, and, upon request, after a hearing thereon.

**[Remainder of Page Intentionally Left Blank; Signature Page Follows]**

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement or caused this Agreement to be duly executed by their respective officers thereunto duly authorized as of the day and year first above written.

Plan Trustee

By:_____
George Shoup

Debtor

By:_____
Bruce Bronson, Esq.

Oversight Committee

By:_____
Jonathan Bodner

By:_____
Jeremy S. Friedberg

By:_____
Bruce Bronson

**Exhibit B**

**Non-Exclusive List of Causes of Action**

Counterclaim in DCC Vigilant, LLC v. Nuovo Ciao-Di LLC et al., Index No. 850102/2020, Supreme Court of the State of New York, New York County.

This counterclaim was not scheduled by Debtor.